Steve W. Berman (*pro hac vice)*
Theodore Wojcik (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com

Rio S. Pierce (SBN 298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Attorneys for Plaintiffs*

Steven A. Marenberg (SBN. 101033)
James Pearl (SBN. 198481)
PAUL HASTINGS LLP
1999 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: (310) 553-6700
Fax: (310) 620-5899
Email: stevenmarenberg@paulhastings.com
jamespearl@paulhastings.com

*Attorneys for Defendant Align Technology, Inc.*

Additional counsel on Signature Page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MISTY SNOW, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ALIGN TECHNOLOGY, INC.,

Defendant.

No. 3:21-cv-03269-VC

CLASS ACTION

# JOINT RULE 26(f) REPORT AND INITIAL CASE MANAGEMENT CONFERENCE STATEMENT

Date: August 4, 2021
Time: 2:00 p.m.
Place: Via Videoconference
Judge: Hon. Vince Chhabria

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for all Judges of the Northern District of California, Counsel for Plaintiff Misty Snow et. al. ("Plaintiffs") and Defendant Align Technology, Inc. ("Defendant," and collectively with Plaintiff, "the Parties") in the above-referenced action submit this Joint Rule 26(f) Report and Initial Case Management Conference Statement in advance of the initial Case Management Conference scheduled for August 4, 2021. The Parties met and conferred as required by Rule 26(f) on July 30, 2021.

## I. JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1367. Plaintiff alleges that venue is proper in this District pursuant to 28 U.S.C. § 1391 and 15 U.S.C. §§ 15 and 22. Defendant does not dispute personal jurisdiction. Defendant has been served.

## II. FACTS

**Plaintiffs' Statement of Facts**

This is a case brought by Plaintiffs, individual consumers who purchased Invisalign aligners for personal use, for violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, as well as various state antitrust and consumer protection statutes. Plaintiffs bring their claims as a class action under Fed R. Civ. P. 23(b) on behalf of proposed classes of certain persons and entities that purchased Invisalign aligners for personal use during the period beginning May 4, 2017, until such time as the alleged anticompetitive conduct has ceased (the "Class").

Plaintiffs' First Amended Complaint ("FAC") alleges anticompetitive conduct by Align designed to monopolize the aligner and scanner markets. Plaintiffs seek to recover damages in the form of the difference between the supracompetitive prices they paid for aligners, and the competitive prices they would have paid for aligners, absent Align's anticompetitive conduct. Plaintiffs also seek injunctive relief preventing Align from continuing to engage in anticompetitive conduct.

Plaintiffs have alleged in detail how Align engaged in conduct to obtain and maintain monopolies in two markets – the market for digital intraoral scanners used to order aligners and the

market for clear, plastic aligners used for straightening teeth. Align has market power in both of these markets. Plaintiffs have further alleged in detail that Align's anticompetitive conduct, in particular, was used to obtain and maintain monopoly power in the product submarket of aligners sold through dental offices, which itself constitutes a definable, discrete product market.

As detailed in the complaint, Align engaged in a set of anticompetitive acts designed to maintain its monopoly power in the Aligner market and obtain monopoly power in the scanner market: (1) Align terminated its interoperability agreement with 3Shape, a competitor manufacturer of scanners, thus sacrificing short-term profits in order to gain long term profits from the antitcompetitive effects of its refusal to deal; (2) Align signed exclusive dealing contracts with dental service organizations that entrenched its monopoly power in the scanner and aligner markets; (3) Align launched bundled pricing for scanners and aligners through its Fusion program; (4) Align entered into a market allocation agreement with Smile Direct Club, an aligner competitor, that prevented Smile Direct Club from selling aligners through dental offices, foreclosing competition in Align's primary product submarket.

As a result of Align's conduct, there was substantial foreclosure of rivals in both the Aligner and Scanner markets. Align's conduct allowed it to charge supracompetitive prices for Aligners. Plaintiffs were injured as a result of paying supracompetitive prices for Aligners.

**Defendant's Statement of Facts**

Over twenty years ago, Align revolutionized the means for people to improve their smile with the introduction of a new product called "Invisalign." Invisalign is a set of removable, clear plastic aligners prescribed by a dentist or orthodontist and configured to correct a patient's particular tooth misalignment. Align also offers a hand-held digital intraoral scanner, the iTero Element ("iTero"), which provides an alternative to using trays and polyvinyl siloxane (PVS) molds to take physical impressions of patients' teeth. With Invisalign and then iTero, Align revolutionized cosmetic dentistry and orthodontics, providing alternatives to decades-old legacy products like wire-and-bracket braces and PVS molds.

Align secured patents protecting its innovations. Align has invested more than one billion dollars in innovation, including developing its state-of-the-art proprietary materials, impression

systems, predictive software and other research and development. Annually, Align spends more than $100 million on research and development to continue providing patients the best possible treatment options. It has obtained hundreds of patents for industry-changing technologies and collectively Align's products have transformed more than nine million smiles. Align is entitled to enforce its IP rights, and does so vigorously but fairly.

The FAC's Allegations of Market Defintion and Market Power Lack Merit: Plaintiffs' allegations regarding product markets and market share have only a passing connection to the realities of competition in orthodontics and digital dentistry. Competition to sell both scanners and aligners is robust and the entry of both large and small new entrants fatally undermines any claim of monopolization. In the aligner market, wire and bracket braces continue to exceed orthodontic treatment using clear aligners; providers often price braces similar to aligner treatment. New entrants are entering the market rapidly, and as they do competition further increases and consumers benefit from lower prices and fast-paced innovation. The scanner market has also seen a rapid increase in new entrants. Moreover, Plaintiffs' attempt to segment the scanner market into one for configuring aligners and one for restorative uses is without merit. Dentists can use Align's iTero scanner to send digital scans to Align for preparing a digital plan for clear aligner treatment. Dentists can and do also use the iTero to send scans to other aligner manufacturers. Notably, dentists can also use the iTero for purposes other than ordering clear aligners, such as for restorative purposes. [1] Other scanners in the market, including 3Shape's Trios scanner, can be and are routinely used for multiple purposes. Thus, the FAC's attempt to limit the market to just Align and 3Shape (and distort Align's market share) is fatuous.

The FAC's Allegations of Exclusionary Conduct Lack Merit: Plaintiffs' allegations of exclusionary conduct are meritless as the allegations boil down to complaints about four entirely lawful types of conduct:

[1] "Restorative" dental work includes treatment with implants, crowns, bridges, veneers, inlays, and onlays.

(1) Purportedly exclusive contracts that are not alleged to foreclose and do not actually foreclose any material (much less substantial) portion of the alleged market[2] from buying competitive scanner products;

(2) Align's above cost-discounting of scanner products that a primary competitor could match without pricing its own product below cost;

(3) Align's refusal to continue interoperability in the face of patent infringement by 3Shape that Align and 3Shape continue to litigate in other courts; and

(4) Settlement of patent infringement claims Align brought against the predecessor of SmileDirectClub.

The evidence will show that only a small portion of the total available market for the purchase of scanners even owns a scanner. The majority of dentists and orthodontists—even those who provide aligners—have not yet purchased a scanner. Of those who have, there are no restraints – neither exclusive contracts nor other restraints -- on those dentists that prohibit them from switching their scanner choice or using multiple companies' scanners, which many do. Moreover, the contracts referenced in Plaintiffs' FAC with two Dental Service Organizations (DSOs) are short-term contracts that affect only about 1,500 of approximately 200,000 U.S. dentists, an impossibly small percentage of any cognizable market. Align's competitors, including 3Shape, competed for those contracts and did not stop competing for DSO business. Indeed, in January 2021, 3Shape announced an agreement to supply Aspen Dental with scanners. https://www.3shape.com/en/press/2021/aspen-dental-management-partners-with-3shape. Then, in June, Aspen announced its own brand of aligner. https://www.aspendental.com/about/blog/introducing-motto-aligners. Align offers a desirable product and offers above-costs discounts that its competitors can match. *See, e.g.*, https://www.meetdandy.com/go-digital/ ("Partner with Dandy. Get a Free Scanner.").

[2] All references to the "market" by Align herein refer to the purported and/or alleged market alleged in the First Amended Complaint solely for purposes of presentation in this Report and should not be construed as an admission by Align that any such markets are appropriately defined.

Align's refusal to continue interoperability with a competitor (3Shape) who infringes its patents is neither exclusionary nor actionable. The law is well settled (and recently reaffirmed by the Ninth Circuit in *Qualcomm*) that even an entity with market power has no duty to help its competitors compete and certainly has no duty to aid competitors that infringe its intellectual property. For liability under *Aspen Skiing* to attach, it must be true that "the ***only conceivable rationale or purpose*** [of the termination] is 'to sacrifice short-term benefits in order to obtain higher profits in the long run from the exclusion of competition [.]'" *F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 993-94 (2020) (finding no liability under *Aspen Skiing* where defendant's conduct was more lucrative in both short-term and long-term) (emphasis added). The facts will show, among other things, that (i) Align terminated a fifteen-month agreement that made 3Shape's scanner interoperable with Align's Invisalign System only after suing 3Shape for patent infringement, as it was entitled to do, (ii) said agreement would have expired on December 31, 2018 absent termination; (iii) that 3Shape never purchased interoperability from Align; *cf. MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132-33 (9th Cir. 2004); and (iv) 3Shape is more than capable of competing for scanner sales whether or not its scanner is interoperable with Invisalign as there are countless other clear aligners offered by other companies that are now compatible with 3Shape's TRIOS scanner, including clear aligners from Aspen Dental. Align's termination of interoperability with 3Shape was an economically rational decision to help both its aligner business and its scanner business, which is not illegal. *See Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072-77 (10th Cir. 2013) (Gorsuch, J.) (no liability attached where defendant did not sacrifice profits across business lines; "the point… is to isolate conduct that has *no* possible efficiency justification").

There is nothing illegal about Align's bundled discount programs. The evidence will show that Align prices its scanners and aligners, even after discounts, above allocated cost and thus meets the test for legal (and encouraged) discounting in this Circuit. *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 903 (9th Cir. 2008). That Align's competitors may choose not to match its discounts does not make those contracts exclusive or exclusionary. 3Shape or other firms can match those discounts without pricing their products below cost. A rival having to yield some

margin (while remaining profitable) to compete is the essence of a well-functioning market that benefits consumers. And, independently and in any event, the number of dentists participating in either the Fusion Program, with its allegedly bundled discounts, or who have entered into actual or de facto exlusive contracts with Align is too small to constitute substantial foreclosure in any market as a matter of law.

Finally, Plaintiffs' allegations concerning SmileDirectClub ("SDC") are likewise without any basis in fact. Align did not conspire with SDC to divide or restrict access to any market. SDC has never been restricted from selling aligners through doctors or orthodontists by any agreement with Align. Indeed, last year SDC publicly announced a partner network whereby it works directly with multiple DSOs. Plaintiffs also misrepresent an Illinois Appellate Court decision concerning one of several litigations between Align and SDC. The opinion that Plaintiffs cite says nothing about SDC being in any way precluded from selling aligners through doctors. Align has never entered into an agreement with SDC that limits SDC's participation in the alleged clear aligner market. Nor has Align perpetrated a scheme to monopolize any product market, let alone engaged with SDC, a frequent adversary in litigation, in such a scheme.

None of this purely legal conduct becomes illegal simply when labeled a "scheme." The facts are that dentists and patients today enjoy more choices for configuring their teeth than ever before, reflecting the robust and dynamic competitive environment in cosmetic and digital dentistry and orthodontics.

## III. LEGAL ISSUES

The Parties anticipate the following issues, which are mixed questions of fact and law, that will depend on the developed record.

- Whether any named Plaintiff has standing under Article III of the U.S. Constitution or the antitrust laws to bring the Sherman Act or state law claims alleged in the First Amended Complaint;
- Whether Align has monopoly power in properly defined relevant markets for aligners and/or scanners;

- Whether the alleged anticompetitive conduct allowed Align to gain or maintain monopoly power in the alleged aligner and/or scanner markets;
- Whether the alleged anticompetitive conduct substantially foreclosed competition in the alleged aligner and/or scanner markets;
- Whether the termination of the interoperability agreement with 3Shape constituted an unlawful refusal to deal;
- Whether the agreements alleged between Align and SmileDirectClub exist, and if so, whether they constitute unlawful anticompetitive conduct;
- Whether Align's alleged conduct harmed competition in the alleged relevant markets for aligners and/or scanners;
- Whether the conduct alleged in the First Amended Complaint is encompassed by the California Cartwright Act or any other state statute referenced in the FAC;
- Whether 3Shape could have been a lawful competitor to Align in light of 3Shape infringing Align's patents (*see In re Wellbutrin XL Antitrust Litig. Indir. Purch. Class*, 868 F.3d 132, 152 (3d Cir. 2017) (no antitrust injury where patents, not defendant's conduct, prevented entry by competitors));
- Whether Plaintiffs and the proposed classes suffered antitrust injury caused by Align's conduct; and
- Whether Plaintiffs' proposed classes can satisfy the requirements of Fed. R. Civ. P. 23 so as to be certified.

## IV. MOTIONS

Plaintiffs filed their complaint on May 3, 2021. (Dkt. No. 1). Defendant filed a Motion to Dismiss (Dkt. No. 18) and a Motion to Strike (Dkt. No. 19) on July 9, 2021. Plaintiff filed an amended complaint on July 30, 2021 (Dkt. No. 28).

The parties propose the following schedule for anticipated briefing on the First Amended Complaint:

Defendant shall respond to the complaint by motion(s) or otherwise: August 17, 2021

Plaintiff shall file an opposition to Defendant's motion(s): September 3, 2021

Defendant shall file its reply in support thereof: September 16, 2021

Court hearing on Motion: September 30, 2021.

The Parties have jointly proposed a case schedule anticipating motions for class certification, expert-related (e.g., *Daubert*) motions, and summary judgment or partial summary judgment on schedules comparable to that adopted by the Court in *Simon and Simon, PC v. Align Technology, Inc.* No. 3:20-cv-03754-VC (N.D. Cal.). As in *Simon and Simon*, Align believes that certain discrete issues, (e.g., exclusive dealing, bundled discounts, substantial foreclosure) may be ripe and amenable to summary disposition earlier than the proposed dates for such motions and earlier motions may be effective to streamline the case for resolution. Hence, Align notes this fact for the Court here, and reserves the right to seek leave of court to file such motions at an appropriate time.

## V. AMENDMENT OF PLEADINGS

Plaintiffs have filed their FAC. No further amendments should be made to the pleadings absent either (a) written stipulation of the parties, or (b) a showing of good cause and by order of the Court.

## VI. EVIDENCE PRESERVATION

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and agree to take reasonable and necessary steps to preserve evidence relevant to the issues reasonably evident in this action. The parties are negotiating a proposed ESI Order, based on this District's model order which will identify electronically stored information that is not reasonably accessible.

## VII. DISCLOSURES

The parties will exchange initial disclosures within 10 court days of a decision on Align's Motion to Dismiss the FAC.

## VIII. DISCOVERY

The Parties met and conferred regarding case management and discovery issues on July 30, 2021, pursuant to Fed. R. Civ. P. 26(f).

### a. Status of Discovery

No discovery has been taken to date. The parties intend to coordinate discovery, to the extent practicable, with discovery in *Simon and Simon, PC v. Align Technology, Inc*. No. 3:20-cv-03754-VC (N.D. Cal.). Pursuant to that coordination, following execution of a protective order, Align will produce to Plaintiffs within fourteen days of the commencement of any discovery in this action the materials that have been produced so far in the *Simon and Simon* action. Align will provide contemporaneously to Plaintiffs future productions that it makes in the *Simon* and *Simon* action. Except for good cause shown, Plaintiffs will not seek discovery that is duplicative of discovery already sought in the *Simon and Simon* action.

### b. Protective Order

The parties intend to shortly enter into a protective order that follows the same format as the protective order entered in *Simon and Simon, PC v. Align Technology, Inc*. No. 3:20-cv-03754-VC (N.D. Cal.).

### c. Limitations or modifications of the Discovery Rules

Except as identified in the parties' proposals below—and ordered by the Court—discovery shall be conducted in accordance with the Federal Rules of Civil Procedure and this District's Civil Local Rules.

#### i. Depositions

The parties intend to coordinate depositions with the plaintiffs in the *Simon and Simon, PC v. Align Technology, Inc*. No. 3:20-cv-03754-VC (N.D. Cal.) matter. A deponent will not be subject to duplicative depositions in this action and the *Simon and Simon* action absent agreement of the parties and the deponent or good cause. The parties intend to continue to meet and confer to discuss coordination of depositions and limitations on depositions, including meet and confers with counsel for Plaintiffs in the *Simon and Simon* action. All in-person depositions shall take place at an agreed-upon location within reasonable proximity to the deponent's residence.

**ii. Requests for Admission**

The parties agree a maximum of 30 requests for admission are permitted for each side, except for requests related to the authentication and/or admissibility of documents.

**iii. Interrogatories.**

The parties agree a maximum of 30 interrogatories, including contention interrogatories, are permitted for each side.

**iv. Expert Discovery**

The parties intend to shortly submit a stipulation that would limit the discovery of expert materials, including drafts and communications. The parties propose that expert discovery according to the schedule set forth below.

## IX. CLASS ACTIONS

Plaintiff bring this case as a class action and will seek class certification pursuant to Rule 23(b)(3). The proposed class and subclasses are defined to include all persons in certain states that purchased, paid, and or provided reimbursement for some or all of the purchase price for Invisalign aligners acquired for personal use during the period beginning May 4, 2017 until such time as the anticompetitive conduct alleged herin has ceased. Plaintiffs' position is that class action is appropriate because the requirements of both Rule 23(a) and Rule 23(b)(3) are satisfied.

Align disputes Plaintiffs' assertions regarding the purported classes and anticipates opposing Plaintiffs' motion to certify the classes in accordance with the proposed litigation schedule.

## X. RELATED CASES

*Simon and Simon, PC v. Align Technology, Inc.* No. 3:20-cv-03754-VC (N.D. Cal.) is a case filed by direct purchaser dental offices of scanners and aligners. *3Shape Trios A/S v. Align Tech., Inc.*, No. 18-cv-1332-LPS (D. Del.) is a case filed by one of Defendant's Scanner competitors, 3Shape, involving related antitrust claims.

## XI. RELIEF

Plaintiffs seek damages caused by Align's violations of various state antitrust and consumer protection laws, subject to mandatory trebling. Plaintiffs also seek permanent injunctive relief preventing Align from continuing its unlawful acts in violation of the Sherman Act. 15 U.S.C. § 26. Plaintiffs also seek costs, expenses, reasonable attorney's fees, and post-judgment interest on all sums awarded. Align denies that Plaintiffs are entitled to any relief and requests dismissal of Plaintiffs' Amended Complaint with prejudice. Align may raise further requests for relief in its Answer should the Court deny Align's motion to dismiss.

## XII. SETTLEMENT AND ADR

The parties met and conferred regarding ADR on August 2, 2021. The parties have complied with ADR L.R. 3-5. The parties will promptly file their ADR certifications. The parties agree that this case is not ripe for settlement. In the event that mediation does occur, the parties intend to use private mediation.

## XIII. CONSENT TO MAGISTRATE FOR ALL PURPOSES

The Parties respectfully decline assignment to a Magistrate Judge for all purposes.

## XIV. OTHER REFERENCES

The Parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

## XV. NARROWING OF ISSUES

The Parties do not believe there are any issues that can be narrowed at this time. As discovery progresses, the Parties will consider whether any issues can be narrowed by agreement or motion.

## XVI. EXPEDITED TRIAL PROCEDURE

The Parties agree that this case is not suitable for the expedited trial procedure of General Order No. 64.

## XVII. SCHEDULING

The parties propose to generally use the same case schedule that has been entered in the *Simon and Simon*, set forth below. Pursuant to this schedule, following execution of a protective order, Align will provide within fourteen days of the commencement of any discovery in this action

to Plaintiffs the documents and data that has been produced in the *Simon & Simon* action up to this point. For subsequent, future productions, Align will produce materials in this action contemporaneously with the *Simon & Simon* action. The parties agree to reserve rights to seek modifications to this schedule in the event that the Court grants, in whole or in part, Align's anticipated motion to dismiss.

**Jointly Proposed Schedule**

| **Proposed Date** | **Event** |
|---|---|
| 8/17/2021 | Defendant shall respond to the complaint by motion(s) or otherwise |
| 9/3/2021 | Plaintiff shall file an opposition to Defendant's motion(s) |
| 9/16/2021 | Defendant shall file its reply in support thereof |
| 9/30/2021 | Hearing on Defendant's motion(s) |
| 1/12/2022 | Joint CMC Statement Due |
| 1/19/2022 | Case Management Conference |
| 2/13/2022 | Deadline to complete production of documents in response to Requests for Production |
| 3/11/2022 | Deadline to complete initial ADR |
| 5/11/2022 | Joint CMC Statement Due |
| 5/18/2022 | Case Management Conference |
| 7/15/2022 | Deadline to complete fact discovery |
| 8/12/2022 | Deadline to serve expert reports on all issues on which a party has the burden of proof |
| 9/14/2022 | Joint CMC Statement due |
| 9/21/2022 | Case Management Conference |
| 9/23/2022 | Deadline to serve opposing expert reports |
| 11/4/2022 | Deadline to serve rebuttal expert reports |
| 12/5/2022 | Deadline to complete expert discovery |

| | |
|---|---|
| 1/10/2023 | Deadline to file motion for class certification and any Daubert motion related to class certificatio |
| 1/18/2023 | Joint CMC Statement due |
| 1/25/2023 | Case Management Conference |
| 2/14/2023 | Deadline to file opposition to motion for class certification and opposition to any Daubert motion related to class certification |
| 3/14/2023 | Deadline to file reply in support of Daubert motion related to class certification |
| 3/21/2023 | Deadline to file reply in support of motion for class certification |
| 4/13/2023 | Hearing on motion for class certification |
| 5/11/2023 | Case Management Conference |
| 4 weeks after decision on Class Certification | Close of residual post-certification discovery period |
| 6/13/2023 | Deadline to file motion for summary judgment and any Daubert motions[3] |
| 7/15/2023 | Deadline to file opposition to motion for summary judgment and opposition to any Daubert motions[4] |
| 8/22/2023 | Deadline to file reply in support of motion for summary judgment and in support of any Daubert motions[5] |
| At the Court's convenience | Hearing on motion(s) for summary judgment and Daubert motions |

[3] Any party filing a motion for summary judgment and a Daubert motion must file them as a combined brief. Any motion as to the page limits for such briefing will be taken up in advance of this deadline.

[4] Deadline to file opposition to motion for summary judgment and opposition to any Daubert motions

[5] Any party filing a reply brief in support of a motion for summary judgment and a reply brief in support of a Daubert motion must file them as a combined brief. Any motion as to the page limits for such briefing will be taken up in advance of this deadline.

| | |
|---|---|
| | Final pretrial conference |
| 11/20/2023 | Trial Begins |

## XVIII. TRIAL

The parties anticipate a trial by jury.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Defendant has filed a Certification of Interested Entities pursuant to Fed. R. Civ. P. 7.1. Plaintiffs are not corporate parties and are not required to file a disclosure statement under Rule 7.

## XX. PROFESSIONAL CONDUCT

Counsel for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED: August 2, 2021 Respectfully Submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By *Steve W. Berman* .

Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com

Rio S. Pierce (SBN 298297)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: ( 510) 725-3001
Email: riop@hbsslaw.com

*Counsel for Plaintiffs*

PAUL HASTINGS LLP

By *Steven A. Marenberg*

Steven A. Marenberg (SB# 101033)
James M. Pearl (SB# 198481)
stevenmarenberg@paulhastings.com
jamespearl@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

Thomas A. Counts (SB# 148051)
Abigail H. Wald (SB# 309110)
tomcounts@paulhastings.com
abigailwald@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: 1(415) 856-7000
Facsimile: 1(415) 856-7100

Adam M. Reich (SB# 274235)
Michael C. Whalen (*pro hac vice*)
adamreich@paulhastings.com

michaelcwhalen@paulhastings.com
71 South Wacker Drive, 45th Floor
Chicago, Illinois 60606
Telephone: 1(312) 499-6000
Facsimile: 1(312) 499-6100

Noah Pinegar (*pro hac vice*)
noahpinegar@paulhastings.com
2050 M Street, N.W.
Washington, DC 20036
Telephone: 1(202) 551-1700
Facsimile: 1(202 551-1705

*Counsel for Defendant Align Technology, Inc.*

**E-FILING ATTESTATION**

I, Steven Marenberg, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Steven A. Marenberg*
STEVEN A. MARENBERG