1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6
7    MISTY SNOW, et al.,                      Case No.  21-cv-03269-VC   (TSH)
8                   Plaintiffs,
                                              **DISCOVERY ORDER**
9          v.
                                              Re: Dkt. Nos. 169, 176, 187, 197, 185, 199,
10   ALIGN TECHNOLOGY, INC.,                   201, 206, 204
11                  Defendant.
12
13          The Court held a hearing on the following matters on November 10, 2022 and now issues

14   this order.

15   **A.    ECF Nos. 169, 176, 187, 197, 201:  Ruling on the Order to Show Cause Concerning
           Certain Arbitration Materials**
16

17          The parties filed a joint discovery letter brief at ECF No. 169 concerning Plaintiffs'

18   requests for production to Align for discovery responses, deposition transcripts and filings in five

19   separate arbitrations between Align and SmileDirectClub Inc. ("SDC").  As you'll recall,

20   Plaintiffs' Section 1 claim alleges an unlawful restraint in an operating agreement between Align

21   and SDC.  Plaintiffs seek these arbitration materials as part of their Section 1 discovery.  Align

22   does not dispute the relevance of these arbitration materials.  In fact, as you'll see below, Align

23   contends that every issue that is relevant to Plaintiffs' Section 1 claim was so thoroughly vetted in

24   the arbitrations that Plaintiffs are entitled to no Align documents for their Section 1 discovery

25   other than what Align produced in the arbitrations.  The hold up with respect to Align's arbitration

26   pleadings and transcripts is SDC's confidentiality objections, which can be overridden by court

27   order.

28          To ensure that SDC had an adequate opportunity to brief its confidentiality objections, the

United States District Court
Northern District of California

1    Court issued an order to show cause ("OSC") at ECF No. 176 and ordered Align to serve the OSC

2    on SDC.  Specifically, the Court ordered SDC to show cause "why the Court should not order

3    Align to produce to Plaintiffs all deposition transcripts of Align executives in the arbitrations, all

4    transcripts of arbitration proceedings, all substantive pleadings filed by Align in the arbitrations,

5    and all Align expert reports in the arbitrations."  The Court also explained that "[i]f the Court

6    orders this production, its tentative thought is to order Align to produce these materials to

7    Plaintiffs and SDC within 14 days of the date of the order, and then order SDC to serve any

8    confidentiality designations pursuant to the protective order at ECF No. 34 on Plaintiffs and Align

9    within 14 days of that production.  SDC may comment on this tentative procedure in its response

10   to this OSC."

11          SDC purported to respond to the OSC at ECF No. 187, but the response was disappointing.

12   It really had nothing to do with the OSC.  Instead, SDC seems to have briefed the separate

13   question of Plaintiffs' document subpoena to SDC, which seeks the entirety of SDC's and Align's

14   arbitration materials.  SDC argued at length that its internal business documents concerning SDC's

15   operations, financing and treatment models are highly sensitive commercial information that are

16   not relevant to Plaintiffs' Section 1 claim.  SDC also submitted the declaration of its COO Steven

17   Katzman, who described categories of documents that SDC produced in the arbitrations that SDC

18   considers sensitive and highly confidential.  However, the OSC wasn't about SDC-produced

19   documents or depositions of SDC witnesses.

20          The point of the OSC was to give SDC an opportunity to explain if it had confidentiality

21   objections to Plaintiffs' receiving the deposition transcripts of Align's executives, transcripts of

22   arbitration proceedings, substantive pleadings filed by Align, and Align's expert reports.  There

23   wasn't a single sentence in SDC's brief that said anything about that.  SDC did not identify any

24   deposition transcripts of Align executives that contain sensitive information that is confidential to

25   SDC.  Nor did it identify any transcripts of arbitration proceedings, Align pleadings or Align

26   expert reports that contain such material.

27          At the hearing, the Court expressed the view that SDC seemed to have defaulted on the

28   OSC by providing no meaningful response.  Fortunately, SDC was able to present oral argument

                                             2

United States District Court
Northern District of California

1 concerning the OSC.  SDC stated that it had no objection to the Court ordering Align to produce to

2 Plaintiffs all deposition transcripts of Align executives in the arbitrations.  Accordingly, the Court

3 orders Align to produce those deposition transcripts to Plaintiffs.

4       The Court, the parties and SDC then discussed what to do about the transcripts of

5 arbitration proceedings, substantive pleadings filed by Align, and Align's expert reports.  SDC

6 maintains that many of these items have material that is too competitively sensitive to produce to

7 Plaintiffs and that is irrelevant to their Section 1 claim.  The Court is of the view that for relevant

8 materials, any concerns about competitive sensitivity can be addressed by the existing protective

9 order in this case.  But the Court is also of the view that a non-party should not have to suffer the

10 production of its competitively sensitive materials in the absence of a showing of relevance.

11 Because Plaintiffs are moving to compel the entirety of *every* transcript of arbitration proceedings,

12 *every* substantive pleading filed by Align, and *all* of Align's expert reports in all five arbitrations,

13 the Court cannot say that this is a request only for relevant information.

14       It seems to the Court that the best approach is to take this issue in stages.  Accordingly, the

15 Court orders SDC to produce to the parties all transcripts of arbitration proceedings, substantive

16 pleadings filed by Align, and Align's expert reports.  SDC may redact from these items any

17 material that SDC contends is both too competitively sensitive to produce to Plaintiffs and

18 irrelevant to their Section 1 claim.  SDC must make this production within 30 days.  Plaintiffs and

19 Align are then free to challenge any of these redactions.  They should do so by way of joint

20 discovery letter briefs with SDC.

21 **B.    ECF Nos. 185, 199, 206:  Plaintiffs' Motion to Compel Additional Section 1-Related**
**Discovery**

22

23       Align has taken the position that for Section 1-related discovery, Plaintiffs are entitled to

24 no Align-produced documents other than the 78,000 or so documents that Align produced to SDC

25 in the five arbitrations the two companies had together.  Plaintiffs now move to compel 31 search

26 terms to be used across 20 custodians for Align to supplement its arbitration document

27 productions.  There has been no meeting and conferring about search terms and custodians

28 because Align has stood its ground that it need produce nothing more in Section 1 discovery.

United States District Court
Northern District of California

1       The problem with Align's position is that Align has never told the Plaintiffs, and does not

2  now tell the Court, what it agreed to produce in the arbitrations.  Align's opposition brief spends

3  several pages discussing the arbitrations and what they were about, but that's different from saying

4  what documents it agreed to produce, and Align's description of the discovery that was produced

5  is high level and vague (e.g., "During the First Arbitration, Align and SDC took extensive

6  discovery into the negotiation and drafting of the Operating Agreement and Supply Agreement.").

7  Align's brief quotes many of SDC's document requests, emphasizing the breadth of discovery

8  SDC attempted to take.  However, litigants rarely produce everything their opponents ask for, and

9  Align does not say what it agreed to produce.

10      Align has provided Exhibit A to its opposition brief (ECF No. 200-4).  It is a 54-page

11 document that identifies, for each arbitration, each custodian, search term and date range.  At first

12 blush, that seems like a lot of information about the scope of Align's document production.  But

13 Exhibit A functions as a black list, not a white list.  Everything outside the searches listed in

14 Exhibit A was *not* produced.  However, the converse is not true.  As Align confirmed at the

15 hearing, it did not produce every non-privileged document for the listed custodians and listed time

16 frames that hit on one of the listed search terms.  Rather, Exhibit A describes the initial method of

17 collecting documents that were *then* reviewed to determine what to produce or not produce.  Align

18 did not provide much information about the nature of that review during the hearing, except to

19 state that for at least two of the arbitrations, there was probably manual review.  Whatever the

20 methods were, presumably the review method was designed to produce the things Align agreed to

21 produce and not produce the things Align did not agree to produce, but we don't know what those

22 agreements were.

23      The Court understands that life is full of mystery, and an adversary's document production

24 may have a certain level of mystery to it.  If your opponent includes manual review as an element

25 of document review, you're never going to see the review memo that tells people what to flag as

26 responsive because that's privileged.  Some litigants that use TAR don't disclose the

27 responsiveness calls they made on the seed set documents to their opponent, who is willing to live

28 with that in exchange for some opacity of their own.  But at least in these situations, you have

written RFP responses and written meet and confer communications in which your opponent has told you what they are going to produce, so you can assume they are aiming for that. This is precisely what Plaintiffs don't have here. From Plaintiffs' point of view, Align's document production from the arbitrations can be described as follows:

| Detailed list of custodians, search terms and date ranges to collect documents to review for responsiveness | → | Unknown decisions about what to produce and what not to produce | → | Document production |
|---|---|---|---|---|

This is an unacceptable level of mystery to hoist on Plaintiffs. Align's document production from the arbitrations is too much of a black box to say that Plaintiffs can get no more documents in their Section 1 discovery because they really don't know what they've gotten so far. Indeed, at the hearing Align acknowledged that its document production was a black box.

At the same time, the Court is not ready to rule on how many additional custodians and search terms there should be because the parties have not met and conferred about that. An important part of meeting and conferring about search terms, for example, is how many custodial documents hit on given term, and it looks like Align hasn't undertaken that analysis. (Align has done the hit analysis for Plaintiffs' proposed terms against its document productions to date in this litigation, but that's the wrong denominator. It ignores Plaintiffs' proposed additional custodians and for the existing custodians, doesn't measure the burden of reviewing documents that weren't reviewed before.) Further, the hit analysis is meant to be a back and forth discussion, leading to revised search terms. None of that discussion has taken place yet. Accordingly, the Court orders the parties to meet and confer about additional custodians and search terms for Plaintiffs' Section 1 discovery.

Further, the Court must express its exasperation that this dispute over custodians and search terms has arisen so late in the fact discovery period. Both sides are to blame for this. Foundational issues like these should be raised at the beginning of fact discovery, not toward the end. The Court expects the meet and confer it has ordered to take place promptly.

United States District Court
Northern District of California

United States District Court
Northern District of California

At the hearing Align argued that it had wanted to tell Plaintiffs what it had agreed to produce in the arbitrations, but it was prevented from doing so by confidentiality agreements, and Align feared that SDC would accuse it of violating those agreements if Align provided Plaintiffs more information about the nature of its document production. But the Court was not persuaded. In ECF No. 169, Align took the position that all of the confidentiality provisions that apply to the arbitration materials could be overridden by a court order. Despite maintaining for several months the position that Plaintiffs should get no Section 1 documents other than what Align produced in the arbitrations, Align never asked for a court order allowing it to describe what it had agreed to produce. Doing so wouldn't have been hard; Align could simply have filed a request with the Court and served it on SDC. A glance at the docket reveals no shortage of filings by Align in this case. It's the Court's experience that litigants ask for things they want, and they don't ask for things they don't want. Align defended its black box document production through lengthy meet and confer and a fully briefed motion to compel. During that entire time it would have been easy for Align to ask the Court to allow it to tell Plaintiffs what it had agreed to produce in the arbitrations. Actions speak louder than words, and the conclusion the Court comes to is that Align wanted the black box to be a black box.

When Align saw at the hearing that the Court did not find this black box to be appropriate, Align pivoted and stated that *now* it would like to ask for the Court's permission to be able to tell Plaintiffs what it agreed to produce in the arbitrations. That's fine, but the Court wants to make one thing clear: if Align wanted its document production in the arbitrations to do double duty as the entirety of its Section 1 document production, the burden was on Align to demonstrate the completeness and integrity of that document production, and the time to carry that burden was before losing a motion to compel. Align does not now get the opportunity to show that its arbitration production was good enough. That ship has sailed.

Discovery is not just about *what*; it's also about *when*. The time to be reasonable is when you are meeting and conferring with your opponent. You don't get to stake out an unreasonable position for months, bringing all meet and confer to a halt, fight the battle through a motion to compel, and then when you've lost get the opportunity to do what you should have done in the

6

first place.  That approach would reward bad behavior.  Here, Align did stake out an unreasonable

position:  that Plaintiffs should get no more Align documents as part of their Section 1 discovery

than what Align produced in the arbitrations *and* that Align would take no steps to enable it to tell

Plaintiffs what it had agreed to produce in the arbitrations.  Align clung to this position for

months, which had the effect of freezing any discussion about document discovery outside of the

arbitration production because Align simply refused to participate in that conversation.  At this

point Align does not get a second chance to show that its arbitration production was sufficient;

Align had that opportunity and blew it.  Align must produce documents from outside its arbitration

document production for Plaintiffs' Section 1 discovery.

Having said that, it will still be beneficial to get rid of the black box so Plaintiffs can

understand what was produced to them.  Accordingly, the Court orders Align to send to SDC the

materials it would like to produce to Plaintiffs to demonstrate what it agreed to produce in the

arbitrations by November 16, 2022.  (The parties discussed this deadline at the hearing, and Align

said it would do so.)  If SDC disputes that Align should produce any of those items to Plaintiffs,

SDC and Align shall file a joint discovery letter brief by November 21, 2022.  They should email

the documents in dispute to tshpo@cand.uscourts.gov for in camera review.

## C.      ECF No. 204:  Plaintiffs' Requests for Production to SDC

On March 10, 2022, Plaintiffs served a subpoena on SDC requesting 32 categories of

documents.  Thirty of them describe documents by subject matter.  Two of them ask for all

documents related to certain proceedings:  RFP 8 asks for all document concerning the Align-SDC

arbitrations, and RFP 9 asks for all documents relating to Align-SDC patent litigation.  SDC

objected, and Plaintiffs proposed as a compromise what they now move to compel, namely, that

SDC reproduce its document productions from the first, fourth and fifth arbitrations, as well as all

related arbitration materials (SDC deposition transcripts, substantive pleadings, and expert reports)

from all five arbitrations.  SDC opposes this request.

Plaintiffs did such a good job persuading the Court that they don't know what Align agreed

to produce in the arbitrations that they must now lose this motion to compel.  Plaintiffs do not

know what Align asked SDC to produce in the arbitrations, or what SDC agreed to produce.

United States District Court
Northern District of California

1    Plaintiffs have no knowledge who SDC's custodians were, whether search terms were run on their

2    documents, and if so, what they were.  All Plaintiffs know is the subject matter of the arbitrations.

3    The Court is not going to order SDC to wholesale turn over every document it produced in three

4    arbitrations just because it is likely that some of the documents will probably be relevant to this

5    lawsuit.  Plaintiffs have made no argument that the three arbitrations at issue were similar in scope

6    to the subject matter of this lawsuit, and SDC is adamant that they were broader.

7         The Court understands the appeal of Plaintiffs' motion, which is that it imposes minimal

8    burden on SDC.  But that appeal does not change the fact that this motion is not calibrated at

9    obtaining relevant discovery.  Plaintiffs don't even know what they are moving to compel.  Their

10   motion to compel is denied without prejudice.

11        The Court orders Plaintiffs and SDC to meet and confer further.  Plaintiffs' idea of

12   minimizing burden by sparing SDC the work of doing a recollection of documents wasn't a bad

13   idea.  But rather than demand that SDC produce everything, Plaintiffs could treat the arbitration

14   materials as the partial universe of available materials, and then ask for items defined by subject

15   matter from within that universe, plus perhaps from some additional custodians.  And SDC has not

16   shown that communications between it and Align are the only relevant documents.

17        The Court understands that there is a sharp difference in opinion between Plaintiffs and

18   SDC concerning what is relevant to Plaintiffs' Section 1 claim.  Plaintiffs and SDC should

19   promptly get joint discovery letter briefs on file to have that dispute resolved.

20   **D.    Conclusion**

21        The above motions are granted and denied as stated above.

22        **IT IS SO ORDERED.**

23

24   Dated: November 16, 2022

25

26   THOMAS S. HIXSON
     United States Magistrate Judge

27

28

8