UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY SNOW, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>Defendant. | Case No. 21-cv-03269-VC  (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 289 |

We are here on Align's motion to compel non-party subpoena recipient SmileDirectClub, Inc. ("SDC") to produce documents. As narrowed during meet and confer, Align seeks the following:

Request for Production No. 13:  Documents sufficient to show the basis of SDC's product pricing in the United States since January 1, 2015, including documents that show whether and how SDC's pricing was impacted by Align and other competitors in the clear aligner market.

Request for Production No. 19:  All documents involving SDC executives' analyses of its competition with Invisalign, including but not limited to Your "SDC vs. Invisalign" advertisements and "Challenger" campaign, including strategy, forecasts, and related analyses of consumers considering SDC aligners and Invisalign aligners.

Requests for Production Nos. 10, 15, and 16:  All documents involving SDC executives' analyses of the market for teeth straightening, including documents related to 1) actual or potential competition with other clear aligner companies, and 2) competition between direct-to-consumer and doctor-led clear aligner models.

1    In the joint discovery letter brief, SDC identifies a number of things it is willing to produce as a compromise, but SDC opposes producing the full scope of what Align now seeks. SDC also asks that Align be ordered to reimburse SDC's attorneys' fees and costs incurred in responding to Align's subpoena.

The Court held a hearing on April 6, 2023, and now issues this order.

SDC is not a party to this lawsuit, but it's hardly a stranger either. Plaintiffs' Fourth Amended Complaint ("FAC"), ECF No. 182, alleges as the second claim for relief that Align and SDC entered into a conspiracy to restrain trade in violation of Section 1 of the Sherman Act. The alleged conspiracy is that Align agreed not to compete in the market of aligners sold directly to consumers and in exchange SDC gave Align an interest in SDC's business. Plaintiffs allege that the effect of this agreement was to raise, maintain or stabilize prices of aligners sold directly to consumers by SDC and provide a portion of the resulting supracompetitive profits from the market allocation to Align through its ownership interest in SDC. FAC ¶ 248. Align says its document requests all seek information relevant to this Section 1 claim.

First, let's get the easy issue out of the way. Rule 45(d)(3)(B)(i) states that "[t]o protect a person subject to . . . a subpoena, the court . . . may, on motion, quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development or commercial information . . . ." Rule 45(d)(3)(C) further states: "In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order . . . production under specified conditions if the serving party: (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."

Here, the documents Align moves to compel (excluding what SDC has offered to produce as a compromise) seek confidential commercial information. RFP 13 seeks documents that show the basis for SDC's product pricing for the last eight years, including documents that show whether and how SDC's pricing was impacted by Align and other competitors in the clear aligner market. This is highly sensitive competitive information. The prices themselves are not sensitive information, and indeed one of SDC's compromise proposals is to produce transaction-level data

1  that will show exactly that. But how SDC determined to set its prices, including how its pricing
2  was affected by its competitors, is sensitive competitive information. Remember that although
3  Plaintiffs allege that Align and SDC conspired with each other to eliminate competition by
4  allocating the direct to consumer aligner market to SDC and the dentist aligner market to Align,
5  SDC and Align both sell aligners and consider themselves to be competitors.

6  Similarly, RFP 19 seeks all documents involving SDC executives' analyses of its competition with Invisalign, including strategy and related analyses of consumers considering SDC aligners and Invisalign aligners. SDC does not contend that all such documents are too sensitive to produce, and its compromise proposal describes some responsive documents it is willing to produce. But the Court agrees that RFP 19 does seek competitively sensitive information, especially since Align is the competitor that these analyses would be about.

Likewise, RFPs 10, 15 and 16 seek all documents involving SDC executives' analyses of the market for teeth straightening, including documents about competition with other aligner companies and competition between direct-to-consumer and doctor-led aligner models (which will principally be about competition with Align). This is highly sensitive material, especially when it is being sought by the competitor the documents are likely to be about.

So, let's consider whether Align has shown a substantial need for the material that cannot otherwise be met without undue burden. For RFP 13, the answer is yes. The requested material is relevant to whether Plaintiffs suffered an antitrust injury by paying supracompetitive prices for SDC aligners due to SDC's agreements with Align. It's not sufficient to produce objective evidence showing *what* SDC charged because we also need to know *why*. The factors that went into SDC's pricing decisions, including whether it would have been financially feasible for SDC to charge lower prices, are relevant to the existence of antitrust injury. And there is nowhere else Align can get this information. Only SDC has this information.

But the Court reaches a different conclusion with respect to RFPs 19, 10, 15 and 16. These RFPs seek SDC executives' analyses of competition with Invisalign and competition in the market for teeth straightening. SDC has no greater insight into those issues than Align does. Align is part of that competition too and is fully capable of analyzing that competition. Align probably spends

a lot of time, money and effort analyzing those competitive issues. Align can do its own analyses, commission its own surveys, higher its own experts, and so on. It might be interesting to learn what your competitor thinks about competition with you and others, but they don't really know anything more than you do.

At the hearing Align argued that these RFPs seek information about SDC's direct-to-consumer business model, which Align does not participate in, and contended that only SDC has information about that line of business. However, that is not what Align's RFPs seek. RFP 19 seeks documents "involving SDC executives' analyses of *its* competition *with Invisalign* . . ." (emphasis added). "Its" is a reference back to SDC, and Invisalign is Align's product. Thus, RFP 19 seeks documents concerning competition *between* SDC and Align. By definition, Align is a participant in that competition just as much as SDC is and can analyze that competition just as well as SDC can.

Likewise RFPs 10, 15 and 16 seek "documents involving SDC executives' analyses of the *market for teeth straightening*, including documents related to 1) actual or potential *competition with other clear aligner companies*, and 2) *competition between direct-to-consumer and doctor-led clear aligner models*." (emphasis added). Align is in the market for teeth straightening, and is a clear aligner company, and uses a doctor-led clear aligner model. Thus, Align is a participant in all of the fields of competition these RFPs seek SDC's analysis about, and Align can analyze those fields of competition just like its competitors can.

Accordingly, RFPs 19, 10, 15 and 16 seek confidential commercial information, but Align has not shown a substantial need for the material that cannot otherwise be met without undue burden.

With respect to RFP 13, the Court must "ensure[] that the subpoenaed person will be reasonably compensated." Rule 45(d)(3)(C)(ii). On the existing record that is impossible to do because SDC has not explained what costs are involved in producing documents sufficient to show the basis of its product pricing in the U.S. since 2015. Accordingly, once SDC has made that document production, it should tell Align how much that cost and provide documentation to support that. If the parties are unable to agree on the appropriate compensation, they should file a

4

1   joint discovery letter brief.  To be clear, the Court considers reasonable compensation to be
2   mandatory under Rule 45(d)(3)(C) *only* for the production of documents sufficient to show the
3   basis of SDC's product pricing since 2015.  That is the only category of documents the Court
4   orders SDC to produce pursuant to Rule 45(d)(3)(C), which contains the reasonable compensation
5   requirement.

6   For all of SDC's other expenses in responding to Align's subpoena, Rule 45(d)(2)(B)(ii)
7   applies, which requires protecting SDC from "significant expense resulting from compliance."
8   SDC has provided zero information about what its expenses were in response to the subpoena, so
9   the Court is unable to determine if they were significant or not.  Accordingly, the Court denies
10  SDC's request for cost shifting under that provision without prejudice.  Once SDC has finished its
11  production in response to the subpoena, it should document to Align what its subpoena expenses
12  are.  If the parties disagree about whether they are significant or not, they should file another joint
13  discovery letter brief on that issue.

14  In the meantime, the Court **ORDERS** SDC to produce its compromise proposal set forth in
15  the joint discovery letter brief, **GRANTS** Align's motion to compel as to RFP 13, and **DENIES**
16  the balance of Align's motion to compel as to RFPs 19, 10, 15 and 16.

17  **IT IS SO ORDERED.**

19  Dated: April 6, 2023

THOMAS S. HIXSON
United States Magistrate Judge

5