UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY SNOW, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>    Defendant. | Case No. 21-cv-03269-VC (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 307 |

    The Court previously ordered Plaintiffs and non-party SmileDirectClub ("SDC") to meet and confer concerning Plaintiffs' subpoena to SDC. ECF No. 231 at 8. On December 6, 2022, SDC proposed to search the materials from its five prior arbitrations with Align for 11 categories of information. ECF No. 307-1. Plaintiffs responded on December 15, 2022, generally accepting this proposal but adding some conditions, once of which was "SDC will review all documents produced in the arbitrations for materials responsive to SDC's December 6 proposal. Plaintiffs are amenable to SDC's use of document review protocols like TAR in reviewing the arbitration materials for responsive documents." ECF No. 307-2. The parties memorialized their agreement in a signed February 2, 2023 agreement. ECF No. 307-5. It stated that "SDC will search and produce documents consistent with the terms of Plaintiffs' December 15, 2022 letter and SDC's proposal in its December 6, 2022 letter," and that Plaintiffs will bear $85,000 of SDC's fees and costs.

    SDC then produced 779 documents pursuant to the parties' agreement. (This is in addition to 1,834 documents SDC produced that it has represented to be exhibits to SDC depositions or Align-SDC arbitration proceedings.) In response to a March 14, 2023 email from Plaintiffs complaining about deficiencies in SDC's document production, SDC revealed on March 17 that it

had used six search strings that it ran against the universe of documents produced in the arbitrations. Those terms hit on more than 8,000 documents, and SDC reviewed only those to find the responsive ones.

In the current joint discovery letter brief, Plaintiffs cry foul. ECF No. 307. They say the use of search terms is contrary to their agreement with SDC, which required SDC to review all documents produced in the arbitrations. They say they would never have agreed to these narrow search terms. Plaintiffs assert, correctly, that agreeing for SDC to limit its search to arbitration documents and not searching any new custodians for documents was a significant concession on their part. Plaintiffs also say that the search terms were not well designed to capture the 11 topics SDC agreed to produce on, and that the resulting document production is suspiciously lacking in types of documents Plaintiffs would have expected to find.

Not having seen the document production, the Court cannot comment on whether it is missing things that should be there. However, the Court finds that SDC's use of search terms was a breach of the parties' agreement. The agreement stated: "SDC will search and produce documents consistent with the terms of Plaintiffs' December 15, 2022 letter and SDC's proposal in its December 6, 2022 letter." ECF No. 307-5. One of the terms in Plaintiffs' December 15 letter was: "SDC will review all documents produced in the arbitrations for materials responsive to SDC's December 6 proposal." ECF No. 307-2. The review did not have to be manual, as Plaintiffs added that they were "amenable to SDC's use of document review protocols like TAR in reviewing the arbitration materials for responsive documents." *Id.*

Search terms are not "like TAR." When TAR is performed on a corpus of documents, it considers every document in the corpus to score it for likelihood of relevance. Search terms, by contrast, are a somewhat arbitrary way of limiting document review by guessing in advance what combinations of words will yield documents that are worth reviewing. TAR *determines* that certain documents are not likely relevant by analyzing the content of the documents. Search terms simply *assume* that. Here, SDC did not review all documents produced in the arbitrations for materials responsive to SDC's December 6 proposal, and it did not use a document review protocol like TAR to do so. Therefore, SDC breached its agreement.

SDC's breach of its agreement was significant, not technical. This was a highly negotiated agreement that the parties worked out over the course of about two and a half months, and SDC did not mention that it planned to use search terms in the course of those negotiations, nor did it disclose what search terms it planned to use. This was a significant, unilateral change in the deal, imposed in secret by SDC that Plaintiffs learned of only after the document production had occurred and SDC's production looked incomplete.

SDC's arguments to the contrary have no merit. Using bold and italics, SDC states that "[t]he Agreement provided that SDC would '*search* and produce documents consistent with the *terms*,' including 'produc[ing] to Plaintiffs all nonprivileged, *responsive* documents that are *identified in the search* in the electronic form by which those documents were originally produced.'" To the extent that bolding and italicizing the word "terms" is meant to imply that this was a reference to search terms, the Court can see that this is not true. The "terms" referred to in the agreement are the one spelled out in the parties' December 6 and 15 letters, one of which was that SDC would review all documents produced in the arbitrations for responsive material. Incredibly, SDC also argues that it provided its search terms to Plaintiffs in a September 12, 2022 letter. But the February 2 agreement memorialized the deal struck in the December 6 and 15 letters and said nothing about a September 12 letter. Oh, and the search terms in the September 12 letter *are not the ones SDC ran*.

So, the breach of the agreement is clear. The next question is what to do about it. Plaintiffs ask the Court to order SDC to produce all documents dated between October 1, 2015 and August 1, 2016 from its productions in the first, fourth and fifth arbitrations. Plaintiffs say this would be more productive and efficient than re-negotiating and rerunning search terms, especially given the May 1, 2023 close of fact discovery on their Section 1 claim, and given SDC's conduct, which has been lacking in transparency. Plaintiffs say they anticipate that documents from this time period will generally contain relevant and responsive information related to the negotiation of the Operating and Supply Agreement. Plaintiffs also ask the Court to order only $25,000 in reimbursement, not the $85,000 provided for in the agreement, given SDC's breach of the same.

The Court discussed the issue of remedies at the hearing. SDC was fine with Plaintiffs'

proposal if SDC would be given the opportunity to redact information from the documents that is both competitively sensitive and irrelevant, an option the Court has given SDC in the past. Plaintiffs didn't love the idea of redactions but recognized the Court has allowed SDC to do this before, and Plaintiffs reserve the right to challenge any redactions SDC makes. The Court then discussed the issue of timing. SDC requested several weeks to make this production, but the Court explained that wasn't feasible given the May 1, 2023 close of fact discovery on Plaintiffs' Section 1 claim. Plaintiffs requested a production deadline of April 21, 2023. SDC said that deadline was difficult, but when pressed at the hearing, said it was possible to complete the production by that date. The Court thinks that an April 21 production deadline is important given the May 1 fact discovery cutoff on the Section 1 claim.

As for money, Plaintiffs agreed to reimburse SDC $85,000 in costs in the agreement that SDC breached. The agreement required SDC to review all documents produced in the arbitrations, which SDC did not do and still will not be doing. Thus, Plaintiffs will not receive the full benefit of their bargain, and SDC will end up doing less work that it agreed to do. Under the circumstances, the Court agrees with Plaintiffs that they should be ordered to pay SDC no more than $25,000 in costs.

Accordingly, the Court **ORDERS** SDC to produce all documents dated between October 1, 2015 and August 1, 2016 from its productions in the first, fourth and fifth arbitrations by April 21, 2023. SDC may redact information that is both competitively sensitive and irrelevant, and Plaintiffs may challenge those redactions. The Court **ORDERS** Plaintiffs to pay SDC $25,000 once SDC has made that document production.

**IT IS SO ORDERED.**

Dated: April 13, 2023

THOMAS S. HIXSON
United States Magistrate Judge