UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MISTY SNOW, et al.,<br><br>           Plaintiffs,<br><br>    v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>           Defendant. | Case No. 21-cv-03269-VC   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 316 |

The Court has issued several orders requiring SmileDirectClub ("SDC") to produce materials from the multiple Align-SDC arbitrations. ECF Nos. 231, 265, 273. These orders allowed SDC to redact information that is competitively sensitive and irrelevant to the Section 1 claim. The Court's view is "that for relevant materials, any concerns about competitive sensitivity can be addressed by the existing protective order in this case. But the Court is also of the view that a non-party should not have to suffer the production of its competitively sensitive materials in the absence of a showing of relevance." ECF No. 231 at 3. The Court also stated that Plaintiffs and Align are free to challenge any of these redactions.

By way of background, Align has all these materials already in unredacted form from the arbitrations. The effects of a redaction are to prevent Align from using the redacted information in this lawsuit and to prevent Plaintiffs' counsel from having that information. And, therefore, the consequence of the Court striking a redaction is to reverse those effects. Please note that striking a redaction does *not* make the information public; SDC may still designate the documents under the protective order. Also, to be clear, the redactions at issue are in documents that SDC produced in discovery in this lawsuit. We're not talking about redactions in documents filed in court, which is what motions to seal are about.

In the joint discovery letter brief at ECF No. 316, Align challenges some of SDC's redactions. Align says that "[b]ecause it is impossible (and impractical) to specifically identify every redaction that remains in dispute, Align instead identifies categories of redactions and why each category is improper." Without conceding that the information is competitively sensitive, Align focuses its challenges on relevance. The Court held a hearing on April 20, 2023, and now issues this order.

Align challenges four categories of redactions. The first is SDC's redactions of information showing the amount of damages awarded to Align for its several claims (relating to various Supply Agreement provisions) in the Supply arbitration, along with Align's monetary demands for other claims on which Align did not prevail. Align says it must be able to show the economic value it derived from the Supply Agreement. The Court agrees that the various different ways in which the Supply Agreement had economic value to Align are relevant. That includes any damages that were awarded for the Supply Agreement's breach and the reasons for such damages. On the flip side, it also includes Align's monetary demands on which Align did not prevail, and the reasons given for not prevailing, as they show the limits of the value of the Supply Agreement. Accordingly, the Court **ORDERS** that SDC may not redact such information.

Second, SDC has redacted information regarding its business model and corporate organization. Align has two theories of relevance for this information. First, Align says that information about SDC's business model is relevant because Plaintiffs claim that, but for the Restrictive Covenant in the Operating Agreement, Align would have entered the direct-to-consumer ("DTC") distribution channel for clear aligners. Align points to allegations in the proposed Fifth Amended Complaint that Align would have used the same business model as SDC in entering this channel. However, the Court has a hard time understanding why confidential information that was unknown to Align, and that even today Align can use only for litigation and not for business planning purposes, is relevant evidence of what Align would have done in the absence of the restrictive covenant. Align would have made decisions based on the information available to it, which this was not. To the extent Align was planning to use the same model as SDC, that could only have meant it was going to follow what it understood SDC's business model

1   to be.

2   But Align also has a second relevance argument, which is better.  Align wants to take
3   discovery into whether SDC made supracompetitive profits.  You may recall that the Section 1
4   claim in this case is that Align and SDC allocated the DTC market to SDC so that it could earn
5   supracompetitive profits, which Align would reap the benefit of through its ownership stake in
6   SDC.  Align says it wants to have evidence about SDC's business model to show if it actually did
7   make supracompetitive profits.  SDC opposes, observing that the Court has already ordered it to
8   produce documents that show the basis for its product pricing.  *See* ECF No. 308.

9   The Court agrees with Align's second relevance argument.  Documents that show the basis
10  for product pricing tend to assume the existence of a business – how it is run, how it is structured,
11  what it sells, what its expenses are, what pressures there are to reduce expenses, and so on.  That's
12  the stuff Align needs to have to be able to develop any sort of argument that SDC was trying very
13  hard to sell a low cost product (if that is what the evidence shows), not to earn supracompetitive
14  profits.  To shroud SDC's internal business operations in redactions threatens to kneecap Align's
15  ability to argue (if the evidence will support it) that the antitrust injury is made up.  The Court
16  understands SDC's confidentiality concerns with this material, but even though SDC is not a party
17  to this case, it is Align's alleged co-conspirator.  All of the alleged antitrust injury occurred
18  through SDC's business operations and pricing.  Further, Align is not speculating about what
19  information unseen documents might contain because Align already has all of these documents
20  from the arbitrations.  In challenging SDC's redactions, Align is just seeking permission to use in
21  this lawsuit materials it already has.  To be sure, removing the redactions means that Plaintiffs'
22  counsel will now have access to these materials, but there is a protective order in this case, and
23  that is sufficient protection.  Accordingly, the Court **GRANTS** Align's request to remove
24  redactions concerning SDC's business model.

25  Third, Align challenges redactions concerning how SDC uses doctors in its business
26  model.  However, this is just a repetition of the second category concerning business operations.
27  (Align also has a specific theory that the manner in which SDC uses doctors is inconsistent with
28  earning supracompetitive profits.)  The Court **GRANTS** Align's request for this category of

United States District Court
Northern District of California

redactions.

Fourth, Align challenges redactions to information from the Swift arbitration showing alleged similarities between its and SDC's business model. Align's argument is a bit confusing. The gist of the argument is that SDC attempted to enforce the restrictive covenant in various ways, arguing that Align's conduct caused irreparable harm, and the arbitrator disagreed. The Court finds that information concerning attempts to enforce the restrictive covenant, how those attempts turned out, and why, go to the scope of the restrictive covenant and what conduct it did or didn't restrict, which is relevant. The Court **ORDERS** that such information be unredacted.

Finally, the Court observes that Align has moved on categories of redactions but not on specific documents. At the hearing on April 20, the Court discussed this issue with the parties. The Court **ORDERS** the parties to meet and confer regarding the application of this order to specific documents. If the parties are not able to reach an agreement on that, they must file a joint discovery letter brief within seven days of the date of this order.

**IT IS SO ORDERED.**

Dated: April 24, 2023

THOMAS S. HIXSON
United States Magistrate Judge