PAUL HASTINGS LLP
James M. Pearl (SB# 198481)
jamespearl@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, California 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

*Attorneys for Defendant Align Technology, Inc.*

Additional counsel on Signature Page

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MISTY SNOW, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>        Defendant. | CASE NO. 3:21-cv-03269-VC<br><br>**DEFENDANT ALIGN TECHNOLOGY, INC.'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO PRECLUDE EXPERT TESTIMONY**<br><br>Date:    November 13, 2023<br>Time:   2:00 p.m.<br>Place:   Courtroom 4, 17th Floor<br>Judge:  Hon. Vince Chhabria |

The economic model that Plaintiffs' expert offers to support impact and damages does not attempt to account for the three separate theories of exclusionary conduct Plaintiffs allege. It fails under *Comcast v. Behrend,* 569 U.S. 27 (2013) because at least some conduct treated as exclusionary—short-duration volume discount programs—cannot be aggregated. It is well-settled that such programs are not exclusionary. *See, e.g.*, *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP* ("*Allied Orthopedic*"), 592 F.3d 991, 997 (9th Cir. 2010). The Court confirmed this in the related case in an order Plaintiffs cite three times, ruling that a short-duration volume discount program was "too innocuous to add *anything* to the plaintiffs' section 2 claim."[1]

Faced with this, Plaintiffs ask the Court to ignore its prior ruling that short-duration volume discount programs add nothing to this Case, the Supreme Court's direction to consider merits issues at the class certification stage, and *Comcast's* clear ruling that "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to that theory." 569 U.S. at 35. Plaintiffs also ask the Court to ignore that Dr. Vogt simply did not assess (and has no expertise to assess) whether the patents that expired in the implant space are of similar significance to those that related to Invisalign that expired, and that he did not even know of anticompetitive conduct in the implant space. Dr. Vogt did not even consider those factors in summarily concluding that implants equal not just aligners, but Invisalign.

Dr. Vogt's sur-rebuttal report is equally unpersuasive and fails to prevent exclusion, as it fails to demonstrate that his use of averages and data aggregation can reliably establish pass-on.

## I.   DR. VOGT'S MODELS AND OPINIONS SHOULD BE EXCLUDED

Courts evaluate proffers of expert testimony at class certification under *Daubert*. *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018), as amended (citation omitted); it is not enough that the testimony is not "junk science." The district court "must perform a gatekeeping function." *U.S. v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010).

---

[1] Order denying Mot. to Dismiss, ECF No. 91 ("*Simon* MTD Order") at 11.

### A. Dr. Vogt's Benchmark Model Fails to Disaggregate Conduct for Which No Damages Can Be Attributed

Dr. Vogt's opinions should be excluded because his benchmark model treats as exclusionary acts to which no damages can be attributed. At the class-certification stage, "any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation," and "must measure only those damages attributable to that theory." *Comcast*, 569 U.S. at 35. A plaintiff "cannot recover damages for an antitrust violation if she cannot 'segregate the losses caused by acts which were not antitrust violations from those that were.'" *Stiles v. Walmart, Inc.*, 639 F. Supp. 3d 1029, 1047 (E.D. Cal. 2022) (citation omitted). Dr. Vogt cannot disaggregate from his common impact model (the benchmark) conduct that the Ninth Circuit and the Court have held are not anticompetitive.

In the related *Simon* case, the Court wrote that a short-duration volume discount program alleged is "too innocuous to add anything" to the case. *Simon* MTD Order at 11. That is because "'the short duration and easy terminability of [] agreements negate substantially their potential to foreclose competition' because 'a competing manufacturer need only offer a better product or a better deal' to get its own contracts." *Id.* at 16 (quoting *Omega Env't v Gilbarco, Inc.*, 127 F.3d 1157, 1163-64 (9th Cir. 1997)). This topples the entire model under *Comcast*.

Against this straightforward argument, Plaintiffs first offer that Align's claim that certain discount programs are "not illegal" should not be considered now because it is a "merits argument."[2] But *Comcast* explicitly rejected that argument: "By refusing to entertain arguments against respondents' damages model that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the Court of Appeals ran afoul of our precedents requiring precisely that inquiry." 569 U.S. at 34; *see also Sanchez v. Hearst Commc'ns, Inc.*, No. 20-CV-05147-VC, 2022 WL 1400853 (N.D. Cal. May 4, 2022).

Next, Plaintiffs assert that Dr. Vogt is correct to include the alleged exclusive dealing

---

[2] Pls.' Reply ISO Mot. for Class Certification, ECF No. 449-2 ("Reply") at 6.

practices "holistically along with the rest of Align's scheme."[3] But this Court already held, relying on well-established law, that these practices are "too innocuous to add *anything*." *Simon* MTD Order at 11 (emphasis added).[4] It might be different if they could have contributed *something*; it is incompatible with the law to include them as they add *nothing*.[5] *See In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (excluding expert whose opinion was based on a "standard that is incompatible with that set forth by the Ninth Circuit").

Finally, Plaintiffs backpedal to contrived readings of *Comcast*. They posit that *Comcast* does not require Vogt to distinguish between "lawful" and "unlawful" because those words "appear nowhere in *Comcast*." Instead, they say, *Comcast* forbids a model that includes a "mix of cognizable and non-cognizable conduct."[6] This is word play: Dr. Vogt's model includes conduct that *this Court in the related case involving the same theory* held non-cognizable. Plaintiffs next posit that "any yardstick" fails to disaggregate cognizable and non-cognizable conduct because it compares two markets, implying that yardsticks do not raise *Comcast* problems. Plaintiffs muster no support for a yardstick exception to *Comcast*. Yardsticks raise *Comcast* problems when they compare a market that is not anticompetitive to one that is allegedly anticompetitive due to several practices, at least one of which is, in Plaintiffs' words, non-cognizable, or, in plain English, lawful.

### B. Dr. Vogt's Benchmark Model Should Be Excluded

Benchmarks can sometimes be used to calculate damages resulting from antitrust injuries, but Dr. Vogt's benchmark fails because the analogy between implants and Invisalign is too crude. For a benchmark to be sound, the comparison must be *logical, reliable, and nearly identical*. *See Shannon v. Crowley*, 538 F. Supp. 476, 481–82 (N.D. Cal. 1981) (citation omitted). Specifically,

---

[3] Reply at 7.
[4] *Cf.* Align's Opp'n to Mot. for Class Certification, ECF No. 425-3 at App. B-1 (showing 6-month programs Dr. Vogt treated as exclusionary in his analysis).
[5] Plaintiffs argue, against precedent, that intent supports Dr. Vogt finding foreclosure. This mirrors a losing argument from *In re EpiPen Mktg., Sales Pracs. and Antitrust Litig.*, 44 F.4th 959, 990-91 (10th Cir. 2022). Reference to intent is premature absent an inference of exclusionary effect. *Id*. "Intent evidence is too easily misleading" and so cannot itself establish foreclosure. *Id.* at 991
[6] Reply at 8.

Plaintiffs do not meet their burden to establish that a benchmark comparison of Invisalign post-2018 to an entire implant market from 2012-2016 is reliable or helpful. Align established that implants are different in multiple ways, that Dr. Vogt lacks expertise to opine on whether the "key" patents are in any way similar, and that he did not even know about anticompetitive conduct clouding the implant market. *See Flintkote Co. v. Lysfjord,* 246 F.2d 368, 393 (9th Cir. 1957) ("Where no basis for comparison was shown, such evidence has been rejected."); *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 974–76 (C.D. Cal. 2012) (failure to consider key differentiating factors renders a benchmark unreliable).

Plaintiffs rest their response on a draft third-party report commissioned by one of Align's 20,000 employees and completed in three weeks. Dr. Vogt's "analysis" is little more than copying, pasting, and interpreting a third party "draft" report and internal Align documents.[7] Plaintiffs' argument that this goes to weight not admissibility is wrong; an expert's model built on a fundamentally inappropriate premise should be excluded. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 545 (N.D. Cal. 2012). Plaintiffs' patent arguments are misdirection. Dr. Vogt claims that patent expiration links implants and Invisalign, despite having no patent expertise.[8] Plaintiffs try to elide his lack of expertise as him merely assuming a "basic proposition"—that patent expiration precedes price decline.[9] But that does not justify the generalization that patent expiration in implants followed by lower prices should repeat in Invisalign, as it merely assumes all patents are the same.[10]

Plaintiffs' reliance on *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1221 (9th Cir. 1997), is misplaced. That yardstick included other brands of the at-issue product over the

---

[7] *See Otto v. LeMahieu*, No. 4:19-CV-00054-YGR, 2021 WL 1615311, at *5 (N.D. Cal. Apr. 26, 2021) (striking expert testimony that "merely regurgitates information").
[8] Expert Report of William B. Vogt, ECF No. 390-4 ¶¶ 27(e), 587-589; Rebuttal Report of William B. Vogt, ECF No. 390-6 ¶ 287
[9] Reply at 4-5.
[10] The implant market was clouded by anticompetitive conduct and alleged anticompetitive theories. Plaintiffs attempt to explain, but this fails a criteria for selecting the benchmark. *See Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 632 F. Supp. 3d 1108, 1167 (S.D. Cal. 2022).

at-issue time-period, rather than an entire product market in a different period and a single branded product. *Id.* Further, the Ninth Circuit acknowledged that if a benchmark has "no meaningful economic similarity" then the court "would have cause to overturn the damages." *See id.* at 1222.

### C. Dr. Vogt's Sur-Rebuttal Does Not Save His Model From Exclusion

Plaintiffs' sur-rebuttal report again misses the mark. Almost all end purchasers bought Invisalign only once, so common impact requires showing that pass-on would occur in every sale.[11] Dr. Vogt's analysis of average price and average costs do not show this. In contrast, Dr. Snyder identified practices that saw a large change in the price paid for Invisalign and investigated whether their patients saw prices change.[12] He identified 10 dental practices that had a 10% or greater change in the cost of Invisalign.[13] For eight of these practices, there was no statistically significant corresponding change in the prices charged to patients.[14]

Dr. Vogt obtains the same results: for eight of the ten practices with a large increase or decrease in the price they paid for Invisalign, there is no statistically significant corresponding difference in price to patients.[15] For the two practices where he admits the data "could plausibly indicate a lack of pass-through,"[16] he is reduced to speculating that there may have been some unspecified, offsetting increase in costs at the same time as the decrease in Invisalign costs that would explain the dental practices' patient prices to patients remain unchanged.[17] Dr. Vogt's just-so story cannot obscure the flaws in his analyses that merit exclusion.

## II. CONCLUSION

The Court should exclude the Expert Reports and opinions of Dr. Vogt.

DATED: October 31, 2023                         PAUL HASTINGS LLP

                                                By: */s/ James M. Pearl*
                                                         James M. Pearl

---

[11] Expert Report of Edward A. Snyder, ECF No. 431-4 ¶¶ 275-276.
[12] Expert Sur-Reply Report of Edward A. Snyder, ECF No. 431-6 § IV.
[13] *Id.* ¶ 30.
[14] *Id.* ¶ 34, Figure 7; *See also* Sur-Rebuttal Report of William B. Vogt, ECF No. 449-3 ¶ 46.
[15] ECF No. 449-3 ¶ 8.
[16] *Id.* ¶ 46.
[17] *Id.* ¶ 66.

James M. Pearl (SB# 198481)
jamespearl@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: 1(310) 620-5700
Facsimile: 1(310) 620-5899

Thomas A. Counts (SB# 148051)
Abigail H. Wald (SB# 309110)
tomcounts@paulhastings.com
abigailwald@paulhastings.com
101 California Street
Forty-Eighth Floor
San Francisco, CA 94111
Telephone: 1(415) 856-7000
Facsimile: 1(415) 856-7100

Adam M. Reich (SB# 274235)
Michael C. Whalen (*pro hac vice*)
adamreich@paulhastings.com
michaelcwhalen@paulhastings.com
71 South Wacker Drive, 45th Floor
Chicago, IL 60606
Telephone: 1(312) 499-6000
Facsimile: 1(312) 499-6100

Michael F. Murray (*pro hac vice*)
michaelmurray@paulhastings.com
2050 M Street, N.W.
Washington, DC 20036
Telephone: 1(202) 551-1700
Facsimile: 1(202) 551-1705

Noah B. Pinegar (*pro hac vice*)
noahpinegar@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: 1(212) 318-6000
Facsimile: 1(212) 319-4090

Attorneys for Defendant
Align Technology, Inc.