Joshua P. Davis (SBN 193254)
**BERGER MONTAGUE PC**
505 Montgomery St., Suite 625
San Francisco, CA 94911
Telephone: (415) 906-0684
Email: jdavis@bm.net

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

*Attorneys for Plaintiffs and the Direct
& Indirect Purchaser Classes*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| SIMON AND SIMON, PC d/b/a CITY SMILES and VIP DENTAL SPAS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>*Defendant*. | Case No. 3:20-CV-03754-VC<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANT ALIGN TECHNOLOGY, INC.'S BILL OF COSTS** |
| MISTY SNOW et al., individually and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>*Defendant*. | Case No. 3:21-CV-03269-VC |

# TABLE OF CONTENTS

**Page**

I.   GENERAL OBJECTIONS TO TAXING COSTS............................................................2

    A.   Costs should be denied given the circumstances of the case. .................................2

    B.   Awarding costs is premature.................................................................................5

II.  SPECIFIC OBJECTIONS TO ALIGN'S COST DEMANDS ...........................................6

    A.   Electronic discovery costs.....................................................................................6

        1.   Almost all of Align's electronic discovery costs do not concern "making copies."............................................................................7

        2.   Align's electronic discovery costs do not concern copies that were "necessarily obtained for use in the case.".................................11

        3.   Align failed to describe its electronic discovery costs with the requisite specificity, particularity, and clarity. .......................................13

    B.   Other, non-document production costs ................................................................15

        1.   Visual Aids.....................................................................................16

        2.   Deposition Transcript/Video Recording .......................................18

        3.   Witness Fees ...................................................................................19

        4.   Trial Exhibits.................................................................................20

        5.   Service of Process..........................................................................21

        6.   Transcripts for Appeal ...................................................................22

III. CONCLUSION.........................................................................................................23

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*,
    2018 WL 783930 (N.D. Cal. Feb. 8, 2018) ................................................................21

*Aceves v. Allstate Ins. Co.*,
    68 F.3d 1160 (9th Cir. 1995) ....................................................................................20

*Affymetrix, inc. v. Multilyte Ltd.*,
    2005 U.S. Dist. LEXIS 41177 (N.D. Cal. Aug. 26, 2005) ........................................18

*Aflex Corp v. Underwriters Labs, Inc.*,
    914 F.2d 175 (9th Cir. 1990) ....................................................................................21

*Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*,
    2 F. Supp. 3d 1306 (N.D. Ga. 2014) .........................................................................10

*Ali v. Sanofi-Aventis U.S. LLC*,
    2023 WL 7283913 (N.D. Cal. Nov. 3, 2023) ...............................................................2

*AliveCor, Inc. v. Apple, Inc.*,
    2024 WL 1354446 (N.D. Cal. Mar. 28, 2024) .............................................................1

*Allison v. Bank One–Denver*,
    289 F.3d 1223 (10th Cir. 2002) .................................................................................13

*Apple Inc. v. Samsung Elecs. Co.*,
    2015 U.S. Dist. LEXIS 111276 (N.D. Cal. Aug. 20. 2015) ......................................17

*Ass'n of Mexican-American Educ. v. State of Cal.*,
    231 F.3d 572 (9th Cir. 2000) ...................................................................................2, 4

*Atari Interactive, Inc. v. Redbubble, Inc.*,
    2022 U.S. Dist. LEXIS 243433 (N.D. Cal. Apr. 8, 2022) .........................................17

*Avila v. Willits Env't*,
    2009 WL 4254367 (N.D. Cal. Nov. 24, 2009) ...........................................................21

*Ayala v. Pac. Mar. Ass'n*,
    2011 WL 6217298 (N.D. Cal. Dec. 14, 2011) .............................................................3

*Berg for C.K.M. v. Bethel Sch. Dist.*,
    2022 WL 4182642 (W.D. Wash. Sept. 13, 2022) ........................................................6

*Cal. Retail Liquor Dealers, Ass'n v. Midcal Aluminum, Inc.*,
    445 U.S. 97 (1980) .....................................................................................................3

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986) ....................................................................................................3

*Carlson v. Century Sur. Co.*,
2012 U.S. Dist. LEXIS 93194 (N.D. Cal. July 5, 2012) ...........................................21

*CBT Flint Partners, LLC v. Return Path, Inc.*,
737 F.3d 1320 (Fed. Cir. 2013) ......................................................................................8

*Champion Produce, Inc. v. Ruby Robinson Co.*,
342 F.3d 1016 (9th Cir. 2003) .......................................................................................4

*Chavez v. Converse, Inc.*,
2017 WL 6620877 (N.D. Cal. Dec. 22, 2017) .............................................................19

*City of Alameda v. Nuveen Mun. High Income Opportunity Fund*,
2012 WL 177566 (N.D. Cal. Jan. 23, 2012) ................................................................13

*Computer Cache Coherency Corp. v. Intel Corp.*,
2009 WL 5114002 (N.D. Cal. Dec. 18, 2009)..............................................................17

*Cont'l Pac., LLC v. DuBuclet*,
2022 WL 3328595 (D. Haw. July 15, 2022) ..................................................................5

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
482 U.S. 437 (1987) ........................................................................................................7

*Draper v. Rosario*,
836 F.3d 1072 (9th Cir. 2016) ........................................................................................2

*eBay Inc. v. Kelora Sys., LLC*,
2013 WL 1402736 (N.D. Cal. Apr. 5, 2013)................................................................12

*Escriba v. Foster Poultry Farms, Inc.*,
743 F.3d 1236 (9th Cir. 2014) ....................................................................................2, 5

*Fed. Trade Comm'n v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) .........................................................................................4

*Finley v. Hartford Life & Acc. Ins. Co.*,
2010 WL 2762737 (N.D. Cal. July 13, 2010) ...............................................................6

*Fonseca v. Secor Int'l, Inc.*,
2005 WL 1587065 (D. Or. June 13, 2005)......................................................................5

*Herrera v. Command Sec. Corp.*,
2014 WL 12626337 (C.D. Cal. Aug. 6, 2014) ............................................................12

*In re Flash Memory Antitrust Litig.*,
643 F. Supp. 2d 1133 (N.D. Cal. 2009)...........................................................................2

*In re Nexium (Esomeprazole) Prod. Liab. Litig.*,
2015 WL 12745083 (C.D. Cal. Aug. 26, 2015) .............................................................9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 914 (9th Cir. 2015) .............................................................................. *passim*

*In re Ricoh Co., Ltd. Pat. Litig.*,
 661 F.3d 1361 (Fed. Cir. 2011) ........................................................................13, 15

*In re Tesla Inc, Secs. Litig.*,
 2023 WL 4032010 (N.D. Cal. June 14, 2023) ..............................................................2, 5

*Jack v. Pearson*,
 2020 WL 5257605 (E.D. Cal. Sept. 3, 2020) ..............................................................3

*Johnson v. Allstate Ins. Co.*,
 2012 WL 4936598 (S.D. Ill. Oct. 16, 2012) ..............................................................12

*Juno Therapeutics, Inc. v. Kite Pharma, Inc.*,
 2020 U.S. Dist. LEXIS 83012 (C.D. Cal. Apr. 2, 2020) ..............................................17

*Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*,
 741 F.3d 955 (9th Cir. 2013) ..............................................................................19

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
 884 F.2d 504 (9th Cir. 1989) ..............................................................................2

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
 52 F. Supp. 3d 893 (N.D. Ill. 2014) ....................................................................11

*Makaneole v. Solarworld Indus. Am., Inc.*,
 2017 WL 2345706 (D. Or. May 10, 2017) ..............................................................4

*McCalmont v. Fed. Nat'l Mortg. Ass'n*,
 2019 WL 3816710 (D. Ariz. Aug. 14, 2019) ..............................................................3, 5

*Medina v. Cath. Health Initiatives*,
 2017 WL 219314 (D. Colo. Jan. 17, 2017) ..............................................................9

*Miller v. Hedlund*,
 813 F.2d 1344 (9th Cir. 1987) ..............................................................................3

*Oracle Am., Inc. v. Google Inc.*,
 2012 WL 3822129 (N.D. Cal. Sept. 4, 2012) ..............................................................14

*Pixion, Inc. v. Citrix Sys., Inc.*,
 2013 WL 1164909 (N.D. Cal. Mar. 20, 2013) ..............................................................21

*Plantronics, Inc. v. Aliph, Inc.*,
 2012 WL 6761576 (N.D. Cal. Oct. 23, 2012) ..............................................................

*PNY Techs., Inc. v. Miller, Kaplan, Arase & Co., LLP*,
 2017 WL 3712107 (N.D. Cal. Aug. 29, 2017) ..............................................................19

*Pulse Elecs., Inc. v. U.D. Elec. Corp.*,
 2021 WL 2826076 (S.D. Cal. July 6, 2021) ..............................................................5

*Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*,
 674 F.3d 158 (3d Cir. 2012) ...................................................................... *passim*

*Raiser v. San Diego Cnty.*,
    2021 WL 5234410 (S.D. Cal. Nov. 10, 2021)....................................................................5

*Save Our Valley v. Sound Transit*,
    335 F.3d 932 (9th Cir. 2003) ..........................................................................................4

*Slaight v. Tata Consultancy Servs., Ltd*,
    2019 WL 3934934 (N.D. Cal. Aug. 20, 2019) ..........................................................11, 19

*Steffens v. Regus Grp., PLC*,
    2012 WL 628235 (S.D. Cal. Feb. 24, 2012)....................................................................6

*Sullivan v. City of Berkeley*,
    2019 WL 4394399 (N.D. Cal. Sept. 13, 2019)..............................................................18

*Sumotext Corp. v. Zoove, Inc.*,
    2021 WL 3727078 (N.D. Cal. Aug. 23, 2021) ..............................................................10

*Supernus Pharms., Inc. v. Twi Pharms., Inc.*,
    2018 WL 2175765 (D.N.J. May 11, 2018)......................................................................9

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ................................................................................................7, 9, 10

*Thomas A. Shields, et al. v. Federation Internationale de Natation*,
    2023 WL 8360169 (N.D. Cal. Nov. 17, 2023) ...............................................................1

*TransPerfect Global, Inc. v. Motion Point Corp*,
    2014 U.S. Dist. LEXIS 47179 (N.D. Cal. Apr. 4, 2014).............................................22

*United States v. Blue Cross Blue Shield of Michigan*,
    2012 WL 4838987 (E.D. Mich. Oct. 11, 2012)..............................................................2

*United States v. Bohn*,
    956 F.2d 208 (9th Cir. 1992) ..........................................................................................6

*Vectren Communs. Servs. V. City of Alameda*,
    2014 U.S. Dist. LEXIS 100227 (N.D. Cal. July 22, 2014) .........................................20

*Warner Chilcott Laboratories Ireland Ltd. v. Impax Laboratories, Inc.*,
    2013 WL 1876441 (D.N.J. Apr. 18, 2013)......................................................................9

*Williamson v. Nat'l City*,
    2022 WL 3109586 (S.D. Cal. Aug. 4, 2022)..................................................................5

*Zarco v. VWR Int'l, LLC*,
    2021 WL 5918399 (N.D. Cal. Dec. 15, 2021)........................................................3, 4, 5

*Zuill v. Shanahan*,
    80 F.3d 1366 (9th Cir. 1996) ..........................................................................................8

**Statutes**

28 U.S.C. § 1821 ..........................................................................................................20

28 U.S.C. § 1821(b) ....................................................................................................20

28 U.S.C. § 1920 ....................................................................................................*passim*

28 U.S.C. § 1920(4) ..................................................................................8, 9, 11, 12

28 U.S.C. § 1920(d)(4) ................................................................................................7

**Rules**

N.D. Cal. Civ. R. 54 ..............................................................................................18, 22

N.D. Cal. Civ. R. 54-1 ................................................................................................13

N.D. Cal. Civ. R. 54-2 ..................................................................................................1

N.D. Cal. Civ. R. 54-3 ..............................................................................7, 17, 19, 21

Federal Rule of Civil Procedure 54 ..............................................................................2

Federal Rule of Civil Procedure 54(d) ..........................................................7, 16, 20

Federal Rule of Civil Procedure 62(a) ..........................................................................5

Federal Rule of Civil Procedure 62(h) ..........................................................................6

Pursuant to Civil Local Rule 54-2, Plaintiffs Misty Snow et al. and Simon and Simon, PC et al. (together, "Plaintiffs"), hereby submit these objections to Plaintiff Align Technology Inc.'s ("Align") Bill of Costs, ECF No. 451 in *Simon* and 573 in *Snow*.

Counsel for Plaintiffs met and conferred in good faith with counsel for Align on April 26, 2024, regarding the objections stated herein, in accordance with Civil Local Rule 54-2(b).

Align has submitted two bill of costs applications in this case, one to each plaintiff class, asking for a total of **$809,503.** ($400,149 from the *Simon* Plaintiffs and $409,353 from the *Snow* Plaintiffs). This amount far exceeds recent requests in similar cases in this District. For example, in *In re Qualcomm Antitrust Litig.*—a lawsuit filed three years before the instant case and in which the court similarly entered judgment after defendants prevailed on a motion for summary judgment—Qualcomm sought just $62,614.[1] This amount included no costs for document discovery and is less than a tenth of what Align seeks here. In *AliveCor, Inc. v. Apple, Inc.*, 2024 WL 1354446, at *1 (N.D. Cal. Mar. 28, 2024), the court awarded only about two-thirds of the $132,000 in costs that Apple sought in "hard fought" antitrust litigation."[2] Align's request here is unreasonable and should be denied given the circumstances of this case. Even if the Court does not deny the entirety of Align's costs, many of the requests are improper under governing law and should be significantly limited.

Although Align's request for costs should be denied in whole, consideration of the requested costs may also be postponed until after resolution of the appeal now pending before the Ninth Circuit. As this Court has recognized,[3] this was a close case and Plaintiffs might prevail on appeal. This would mean Align was never entitled to any of the costs it now seeks to recover.

---

[1] Bill of Costs, *In re Qualcomm Antitrust Litig.*, 3:17-md-02773-JSC, ECF No. 1010 (Oct. 19, 2023).

[2] *See also Thomas A. Shields, et al. v. Federation Internationale de Natation*, 2023 WL 8360169, at *10 (N.D. Cal. Nov. 17, 2023) (awarding just $143,000 in recent antitrust class action that concluded after summary judgment was granted to defendants).

[3] *See* Tr. of Summ. J. Argument Jan. 25, 2024, at 111:6-9. (ECF No. 420 in Case No. 20-cv-03754) ("This has been very helpful, but I'll be perfectly honest with you. I came into the hearing undecided and I walk out of it undecided, and I have to think about it a lot more.").

## I.      GENERAL OBJECTIONS TO TAXING COSTS

### A.      Costs should be denied given the circumstances of the case.

Federal Rule of Civil Procedure 54 provides "the district court discretion to refuse to award costs." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247 (9th Cir. 2014) (quoting *Ass'n of Mexican-American Educ. V. State of Cal.*, 231 F.3d 572, 592 (9th Cir. 2000)). Appropriate reasons for denying costs include: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Id.* At 1247-48. These factors are only a "starting point" for the analysis and a party "need not demonstrate that all five factors weigh against imposing costs" in order for costs to be permissibly denied. *See Ali v. Sanofi-Aventis U.S. LLC*, 2023 WL 7283913, at *1 (N.D. Cal. Nov. 3, 2023) (citing *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016)); *see also In re Tesla Inc, Secs. Litig.*, 2023 WL 4032010, at *13 (N.D. Cal. June 14, 2023).

Here, the *Escriba* factors are all present and strongly support the denial of costs.

**Substantial Public Importance**. This case is of substantial importance to the public. The products at issue are used by tens of thousands of dentists and orthodontists to treat hundreds of thousands of consumers for medical treatment and have generated billions of dollars in sales for Align. *See United States v. Blue Cross Blue Shield of Michigan*, 2012 WL 4838987, at *4 (E.D. Mich. Oct. 11, 2012) (recognizing that case alleging the defendant "violated antitrust laws in a manner that led to higher hea[l]th-care costs to citizens throughout the State of Michigan" was "a matter of public importance").

At stake in this lawsuit were monopolization claims under the Sherman Act, "an important federal policy in preventing excessive concentration in relevant markets." *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1144 (N.D. Cal. 2009) (quoting *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n,* 884 F.2d 504, 510 (9th Cir. 1989)). The Supreme Court has underscored "the importance of the [Sherman] Act's procompetition policy" and has stated "[t]he federal interest in enforcing the national policy in favor of competition is both familiar and

substantial." *Cal. Retail Liquor Dealers, Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110–11 (1980). The Ninth Circuit has likewise held "[t]he federal interest embodied in the Sherman Act is well-recognized and substantial." *Miller v. Hedlund*, 813 F.2d 1344, 1352 (9th Cir. 1987). Since the interpretation of the Act was undeniably central to the outcome of this litigation, this case advanced an important public interest. Plaintiffs' willingness to vigorously prosecute this litigation—recognized by the Court in certifying the proposed classes—is similarly important, given the significance of private suits in the proper functioning of antitrust laws. *See, e.g.*, *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 129 (1986) ("Effective enforcement of the antitrust laws has always depended largely on the work of private attorney generals[.]").

**Closeness and Difficulty of the Issues**. The issues involved in this case were close and difficult. Plaintiffs amassed sufficient evidence to certify the proposed classes and survive Align's Motion to Dismiss. And the Court's order granting Align's Motions for Summary Judgment explicitly recognized the closeness and difficulty of the questions presented. Order at 1 (ECF 432/548) ("Although it's a close case, Align's motions for summary judgment are granted."); *id.* at 3 ("That's what makes this a difficult case.").

Even where a party prevails at summary judgment, courts may still find this factor weighs in favor of denying costs. *Zarco v. VWR Int'l, LLC*, 2021 WL 5918399, at *3 (N.D. Cal. Dec. 15, 2021) (finding it "key," in denying costs, that "the Court did not find Plaintiff's claims to be frivolous" and noting "[t]he failure to achieve success on a claim does not mean that the suit was frivolous or without merit."); *Jack v. Pearson*, 2020 WL 5257605, at *4 (E.D. Cal. Sept. 3, 2020); *McCalmont v. Fed. Nat'l Mortg. Ass'n*, 2019 WL 3816710, at *3 (D. Ariz. Aug. 14, 2019); *see Ayala v. Pac. Mar. Ass'n*, 2011 WL 6217298, at *3 (N.D. Cal. Dec. 14, 2011) ("[D]eterminations of a case's complexity are generally made by looking to the record for indications that the question involved in the case presented some difficulty and involved significant effort to resolve.").

**Chilling Effect on Future Actions**. Align seeks to tax the *Simon* Plaintiffs $400,149.81 and the *Snow* Plaintiffs $409,353.88. Combined, Align seeks a staggering $809,503.69 (which is in addition to Plaintiffs' own substantial costs and fees in developing and presenting this case).

The direct-purchaser plaintiffs are small business owners, and the representatives of the indirect-purchaser classes are individuals of relatively modest means. Having to pay even a portion of the costs sought by Align would be devastating and could easily discourage them or others from serving as a class representative in future antitrust class actions. *See Makaneole v. Solarworld Indus. Am., Inc.*, 2017 WL 2345706, at *3 (D. Or. May 10, 2017) (finding that the prospect of a potential class representative being taxed with a defendant's costs could "be expected to have a chilling effect on the potential representative's interest in representing the putative class").

As discussed above, at the core of Plaintiffs' suit is an effort to ensure the proper functioning of the Sherman Act and "the freedom guaranteed each and every business . . . to compete—to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster." *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 988 (9th Cir. 2020) (internal citations omitted). The prospect of facing such an astounding costs bill in the event of an unsuccessful claim, especially one where the issues were this difficult and close, would be enough to discourage any prospective antitrust plaintiff from pursuing a claim that involves challenging issues. This weighs strongly against awarding any costs to Align.

**<u>Plaintiffs' Limited Financial Resources and Economic Disparity</u>**. There is a final factor courts may consider when deciding to refuse to award costs to a prevailing party: "the degree of economic disparity between the parties." *Zarco*, 2021 WL 5918399, at *3 (noting "the large economic disparity between the parties weighs heavily against awarding costs"); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (finding that the Ninth Circuit has previously noted "a losing party's limited financial resources" as an appropriate reason to deny costs); *Ass'n of Mexican-Am. Educators*, 231 F.3d at 593 (approving the district court's rejection of defendant's bill of costs in part because "[t]he record demonstrates that [the plaintiffs'] resources are limited").

Compared to Align, a multinational corporation with a market capitalization of more than $20 billion, the Plaintiffs possess limited financial resources and there is unquestionably an economic disparity between the parties.

If the Court reaches a different conclusion as to some of these factors, it is still not necessary for a party opposing costs to demonstrate that every *Escriba* factor weighs in their favor. Courts have denied costs where only the "public importance" and "close and [] difficult issues" factors support a denial of costs. *Tesla*, 2023 WL 4032010, at *14-15. And even where a party seeking costs prevails at summary judgment, courts can—and commonly do—deny costs. *See, e.g.*, *Zarco*, 2021 WL 5918399, at *4; *Raiser v. San Diego Cnty.*, 2021 WL 5234410, at *3 (S.D. Cal. Nov. 10, 2021) (declining to award costs after granting defendant summary judgment "because two of the five *Escriba* factors weigh heavily against awarding costs to the County."); *McCalmont*, 2019 WL 3816710, at *3; *Williamson v. Nat'l City*, 2022 WL 3109586, at *3 (S.D. Cal. Aug. 4, 2022). Plaintiffs respectfully submit that this case warrants a similar ruling.

**B.      Awarding costs is premature.**

Costs should not be awarded, if at all, until after Plaintiffs' appeal of the Court's order on the motion for summary judgement has been decided, and then only if the Align prevails and no open issues remain in the case. Given that the Ninth Circuit could reverse this Court's ruling and remand the case for further action, awarding costs now would be inefficient and premature because Align may not prove to be the prevailing party in the long run. *See, e.g.*, *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 2021 WL 2826076, at *4 (S.D. Cal. July 6, 2021) (staying enforcement of bill of costs pending appeal); *Fonseca v. Secor Int'l, Inc.*, 2005 WL 1587065, at *1 (D. Or. June 13, 2005) ("It makes little sense to require Fonseca to pay costs to Secor now which Secor conceivably may later have to repay.").

Under Fed. R. Civ. P. 62(a), the Court may stay execution of any judgment, including one for costs. *Cont'l Pac., LLC v. DuBuclet*, 2022 WL 3328595, at *2 (D. Haw. July 15, 2022), *report and recommendation adopted as modified*, 2022 WL 3311511 (D. Haw. Aug. 11, 2022) ("The Court, however, has discretion to entertain motions for fees and costs, defer ruling, or deny the motions without prejudice to refile after the conclusion of the appeal."); *see also* Fed. R. Civ. P. 62(h) (permitting court to stay enforcement of a final judgment under Rule 54(b) "until it enters a

later judgment").[4] Cases that were "hard-fought" and brought in good faith, such as this one, further warrant staying execution of any costs judgment pending an appeal. *Steffens v. Regus Grp., PLC*, 2012 WL 628235, at *3 (S.D. Cal. Feb. 24, 2012) (staying execution of costs judgment pending appeal without requiring bond).

## II.    SPECIFIC OBJECTIONS TO ALIGN'S COST DEMANDS

Without waiving any of the above-stated general objections, Plaintiffs advance the following specific objections to the expenses claimed in Align's Bill of Costs. Even though Align provides some argument and documentary support for its requests, many fail to meet the required standard. Align should not get the opportunity to cure these failures after Plaintiffs pointed them out during the meet and confer and do so again here. Align has simply missed its chance. *See Berg for C.K.M. v. Bethel Sch. Dist.*, 2022 WL 4182642, at *2 (W.D. Wash. Sept. 13, 2022) (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992)) (refusing to award any costs and preventing the prevailing party from filing a supplemental Bill of Costs to address legitimate objections raised by opposing party).

## A.    Electronic discovery costs

Align demands $569,009, split equally between the two plaintiff classes, in costs associated with various electronic discovery-related expenses. Plaintiffs object to $556,187 of these costs—specifically, Align's demand for costs associated with (1) Technical Time; (2) Questio Consulting; (3) Project Management; (4) Predictive Coding Engineer; (5) eDiscovery Consulting or Consulting; (6) Ingestion; (7) Media HD; (8) Data Collection; (9) Preservation Manager; (10) Native Promotion; and (11) Shipping and Handling.[5]

---

[4] A bond is not required. *Finley v. Hartford Life & Acc. Ins. Co.*, 2010 WL 2762737, at *1 (N.D. Cal. July 13, 2010) ("Courts have discretion to stay execution of a judgment without requiring a bond.").

[5] Without waiving their general objections to Align's demand for costs, Plaintiffs do not object (in the event an award of costs is determined to be proper) to the costs Align seeks for "All-In Production," "Image Branding," "Native Files to TIFF/PDF," "Native Redaction Tool," and "Optical Character Recognition to TIFF/PDF." Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573).

Align's demand is based on Civil Local Rule 54-3(d)(2), which permits as a type of "reproduction and exemplification" cost: "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case[.]" This rule is derived from 28 U.S.C. § 1920(d)(4), which permits taxing of costs associated with "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" Section 1920 "defines the term 'costs' as used in Rule 54(d) and enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)," *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 437 (1987), and "a district court's discretion to award costs is limited to particular types of costs enumerated in 28 U. S. C. § 1920." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 926 (9th Cir. 2015) ("*Online DVD*").

The Ninth Circuit narrowly construes the electronic discovery costs allowable under § 1920(d)(4) to include only those costs incurred "for the physical preparation and duplication of documents, not the intellectual effort involved in their production." *Online DVD,* 779 F.3d at 927. Both the Supreme Court and Ninth Circuit have noted the law's "limited reach" underscored "the narrow scope of taxable costs," and reminded litigants that "[t]axable costs are limited to relatively minor, incidental expenses as is evident from § 1920." *Id.* At 926 (quoting *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 570 (2012)).

The electronic discovery costs Align seeks to recover do not meet these requirements for at least three reasons. *First*, Align seeks to recover far more than the "costs of making copies." *Second*, Align does not show that it incurred these expenses to produce documents "necessarily obtained for use in the case." *Third,* Align does not adequately describe the costs and services for which it is seeking reimbursement.

## 1.    Almost all of Align's electronic discovery costs do not concern "making copies."

District courts "cannot award costs not enumerated under § 1920 . . . [n]or may the courts invoke equitable concerns . . . to justify an award of costs for services that Congress has not made taxable." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 170 (3d Cir. 2012)

(internal citations omitted).[6] And "[s]ection 1920(4) speaks narrowly of '[f]ees for exemplification and copies of papers,'" so these "fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." *Online DVD*, 779 F.3d at 927 (citations omitted); *see Zuill v. Shanahan,* 80 F.3d 1366, 1371 (9th Cir. 1996). Indeed, "[i]t may be that extensive 'processing' of [electronically stored information] is essential. But that does not mean that the services leading up to the actual production constitute 'making copies.'" *Online DVD,* 779 F.3d 914, 925 (quoting *Race Tires,*, 674 F.3d at 169) (cleaned up). Accordingly, without exception, "[o]nly the costs of creating the produced duplicates are included [as recoverable], not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication." *Online DVD*, 779 F.3d at 928 (quoting *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320, 1328 (Fed. Cir. 2013)).

Here, Align seeks to recover the electronic discovery costs associated with a number of the preliminary and peripheral tasks the Ninth Circuit has deemed to be non-taxable. *See* Pearl Decl., Sched. D-4 (ECF 451/573). As a matter of fact, the words "making copies" do not appear in the explanation of any of the electronic discovery work that its vendor performed. *Id.* And a closer look at these expenses confirms they are akin to unrecoverable intellectual effort, rather than the recoverable costs of making copies.

**Consulting and Management Fees**. The largest bucket of costs that Align seeks to tax—consulting and management fees—are wholly improper. Align seeks to tax Plaintiffs with several costs that are associated with the supervision of its document production, identified as "Technical Time" ($238,776) "Questio Consulting" ($127,375), "Project Management or Sr. Project Management" ($87,891), "eDiscovery Consulting or Consulting" ($43,922), and "Preservation Manager" ($70). Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573). The corresponding explanation for each of these expenses makes clear that they had nothing to do with making copies, but rather,

---

[6] In analyzing the scope of 28 U.S.C. § 1920(4), the Ninth Circuit found "persuasive the reasoning of the Third Circuit in *Race Tires*, the Fourth Circuit in *Country Vintner*, and the Federal Circuit in *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320 (Fed. Cir. 2013)." *Online DVD,* 779 F.3d at 925-26 (cleaned up).

they concerned "consulting," "coordinating/managing document collection," "facilitating all aspects of the technical litigation lifecycle," "coordinating/managing document ingestion" and "technical support time." *Id.* Thus, by their very definition, these tasks were related to "intellectual effort," not the "physical preparation and duplication of documents." *See Online DVD,* 779 F.3d at 927.

Courts routinely deny similar requests for costs associated with these tasks. *Supernus Pharms., Inc. v. Twi Pharms., Inc.*, 2018 WL 2175765, at *15 (D.N.J. May 11, 2018) ("The Clerk certainly does not view the services of FTI Consulting, Inc. as that of copying within the parameters of the *Race Tires* decision."); *In re Nexium (Esomeprazole) Prod. Liab. Litig.*, 2015 WL 12745083, at *3 (C.D. Cal. Aug. 26, 2015) (denying costs associated with "consulting/technical support related to defense counsel's review of documents"); *Medina v. Cath. Health Initiatives*, 2017 WL 219314, at *3 (D. Colo. Jan. 17, 2017) ("As the data processing fees challenged here were not attributable to any process that might be thought to constitute the making of copies, plaintiff's motion will be granted as to these costs, and they are disallowed."); *Warner Chilcott Laboratories Ireland Ltd. v. Impax Laboratories, Inc.*, 2013 WL 1876441, at *12 (D.N.J. Apr. 18, 2013) ("[O]n the basis of the *Race Tires* case," denying costs associated with "Tech Time"); *see Taniguchi*, 566 U.S. at 574 n.8 ("[E]xpenses for experts and consultants are generally not taxable as costs.").

Moreover, Section 1920(4) does not provide that all work leading to the production of copies is taxable. There is no provision in the statute that allows costs to be taxed because modern document production often requires technical expertise that is not ordinarily possessed by legal professionals. Nor is there a provision in the statute that allows costs to be taxed because they encourage cost savings or are consistent with "best practices." *See* Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573). The fact remains, "decisions that allow taxation of all, or essentially all, electronic discovery consultant charges . . . are untethered from the statutory mooring." *Race Tires,* 674 F.3d at 169. Consequently, Plaintiffs should not be taxed with these expenses.

Based on the foregoing, Plaintiffs request that Align's demand for **$498,035** in costs associated with consulting and managing fees be denied.

**Gathering and Processing Costs**. Align seeks to further tax Plaintiffs with costs for "Predictive Coding Engineer" ($48,262), "Data Collection" ($562), "Ingestion" ($2,273), and "Shipping and Handling" ($39). Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573). Align's provided explanations for these costs establishes they should not be taxed because "courts have not allowed recovery of costs for . . . e-gathering and e-processing costs akin to the intellectual effort involved in the production of documents or the research, analysis, and distillation of data." *Sumotext Corp. v. Zoove, Inc.*, 2021 WL 3727078, at *3 (N.D. Cal. Aug. 23, 2021); *see Plantronics, Inc. v. Aliph, Inc.*, 2012 WL 6761576, at *16 (N.D. Cal. Oct. 23, 2012) ("[G]iven ESI processing costs that exceed $200,000, the case law, the recent Supreme Court decision [in *Taniguchi*], and the lack of a discussion about the costs in the ESI agreement, the court declines to award the processing costs."); *Akanthos Cap. Mgmt., LLC v. CompuCredit Holdings Corp.*, 2 F. Supp. 3d 1306, 1318 (N.D. Ga. 2014) ("[T]he cost of creating a dynamic, indexed and searchable database is nothing more than an efficient, convenient, modern-day version of paper document review. It cannot be taxed."); *Race Tires*, 674 F.3d at 170 (approving of cases "recogniz[ing] that gathering, preserving, processing, searching, culling, and extracting ESI simply do not amount to 'making copies'").

This entire category of expenses is exactly the type of gathering and processing costs the Ninth Circuit has found to be non-taxable. For instance, the "Predictive Coding Engineer" work was performed to filter the documents that would ultimately be produced. *See* Pearl Decl., Sched. D-4 at 8 (ECF 451/573). This work has explicitly been held to be not taxable. *Online DVD*, 779 F.3d at 931 ("[T]he application of automated software filtering processes to identify which documents to copy and which documents to not copy is not taxable."); *Plantronics,*, 2012 WL 6761576, at *14 ("[I]t is easy to conclude that search terms and strategies geared to production of ESI are not taxable costs under 1920(4)."). "Shipping and Handling" is similarly unrecoverable because this work was performed in support of data collection and ingestion. Pearl Decl., Sched.

D-4 at 9 (ECF 451/573). Finally, "Data Collection" and "Ingestion" are the sort of e-gathering and e-processing costs that are not recoverable. *See Slaight v. Tata Consultancy Servs., Ltd*, 2019 WL 3934934, at *4 (N.D. Cal. Aug. 20, 2019) (finding Section 1920(4) allows a party to recover the cost of "duplication of documents, not the efforts incurred in assembling, collecting, or processing those documents"); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 902 (N.D. Ill. 2014) ("[I]n line with the prevailing approach in this circuit and among appellate courts . . . . Security may not recover the $117,755.58 incurred for data loading, data processing, and de-duplication and culling.").

Based on the foregoing, Plaintiffs request that Align's demand for **$51,137** in costs associated with gathering and processing be denied.

### 2. Align's electronic discovery costs do not concern copies that were "necessarily obtained for use in the case."

"Section 1920(4) further defines the awarding of costs for making copies, requiring that recoverable costs be restricted to the making of copies 'necessarily obtained for use in the case.'" *Online DVD,* 779 F.3d at 927 (quoting 28 U.S.C. § 1920). This means "Congress recognized that costs can also be incurred in litigation for making copies that are not necessarily obtained for use in the case, and that such costs are not taxable." *Id.* at 927. Align seeks to further tax Plaintiffs with costs for "Native Promotion" ($16,263) and "Media HD" ($1,500) that are not taxable under this standard. Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573).

**"Native Promotion" Costs**. Align seeks $16,263 in costs for "Native Promotion (GB)," which it describes as "[p]romotion of native files from ingested database to review database for production." Pearl Decl., Sched. D-4 at 8 (ECF 451/573). That is, this process takes native files—the original file for a document—and copies them from an ingestion database to a review database. *See generally Terminology Hub*, Everlaw, https://www.everlaw.com/training/resources/terminology-hub/ (last visited May 7, 2024). Documents are subsequently "produced" when they are sent from a review database to another party. *Id.*

These costs are a prime example of charges incurred for making copies, but not copies "necessarily obtained for use in the case." Indeed, Align's lawyers could have viewed all the produced documents in their native form—that is, on the computers where they were originally stored. Or, as they chose to do so here, they could gather and upload the native files to an ingestion database. Then, the files in the ingestion database would be copied to the review database so the lawyers could evaluate them. This certainly constitutes making a copy, but "the ability to conduct the review by looking at the original document establishes that the uploaded copy was not necessarily obtained for use in the case." *Online DVD,* 779 F.3d at 930. In addition, Align's provided explanation for this charge only establishes the copies were required for the document production process employed by Align's e-discovery vendor. It does nothing to establish the copies were necessarily obtained for use in the case. *Id.* As such, these charges are not taxable.

**"Media HD" Costs.** Align seeks $1,500 in costs for "Media HD," which it describes as "[c]osts of media used for work relating to backing up ingested data, including provision of drives to counsel, inventory, code tracking, auditing, and evidence storage." Pearl Decl., Sched. D-4 at 8 (ECF 451/573). This charge likewise cannot be taxed. If a hard drive is solely used for *storage* then this cost is not compensable under § 1920(4), but if it is used for *delivery* of discovery then it is. *Compare Johnson v. Allstate Ins. Co.,* 2012 WL 4936598, at *7 (S.D. Ill. Oct. 16, 2012) (holding that the cost of data storage on a hard drive is not taxable), *with eBay Inc. v. Kelora Sys., LLC,* 2013 WL 1402736, at *8 (N.D. Cal. Apr. 5, 2013); (granting costs for hard drives that were used as a means of delivering discovery). Here, Align has not described the purpose of the storage media for which it seeks to recover costs. Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573). In other similar instances where the prevailing party does not make the storage/delivery distinction in its Bill of Costs, courts have declined to award the requested charge. *Herrera v. Command Sec. Corp.,* 2014 WL 12626337, at *3 (C.D. Cal. Aug. 6, 2014) ("Here, the Invoices introduced by Defendant do not specify whether the hard drives and USB flash drives in question were used for storage, the delivery of discovery to Plaintiffs, or some other purpose. As a result, the Court declines to grant costs for 'hard drives' or the 'USB flash drive.'").

Based on the foregoing, Plaintiffs request that Align's demand for **$17,763** in costs associated with "Native Promotion" and "Media HD" be denied.

### 3.    Align failed to describe its electronic discovery costs with the requisite specificity, particularity, and clarity.

Align's electronic discovery costs are not recoverable because Align has failed to describe them with sufficient detail. Consistent with the limited reach of 28 U.S.C. § 1920, "tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *Online DVD*, 779 F.3d at 928; Civ. L.R. 54-1(a) ("The [Bill of Costs] must state separately and specifically each item of taxable costs claimed."). "'Document production' and other similarly generic statements on the invoices are unhelpful in determining whether those costs are taxable." *In re Ricoh Co., Ltd. Pat. Litig.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011) (interpreting Ninth Circuit law) (internal citations and quotations omitted). The party seeking costs must also support its claim with an affidavit that the costs "are correctly stated, were necessarily incurred, and are allowable by law." Civ. L.R. 54-1(a). "Appropriate documentation to support each item claimed must be attached to the bill of costs." Civ. L.R. 54-1(a). Finally, "the burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled." *City of Alameda v. Nuveen Mun. High Income Opportunity Fund,* 2012 WL 177566, at *1 (N.D. Cal. Jan. 23, 2012) (quoting *Allison v. Bank One–Denver,* 289 F.3d 1223, 1248–49 (10th Cir. 2002).

Align's Bill of Costs does not comply with these requirements. Align only provides unhelpful generic descriptions of the costs and services that it seeks to recover. As an example, Align's only explanation of the $87,891 in costs incurred for "Project Management or Sr. Project Management" is "Time billed for facilitating all aspects of the technical litigation lifecycle relating to data ingestion and production of formal discovery." Pearl Decl., Sched. D-4 at 8 (ECF

451/573).[7] This explanation gives no insight into what work was actually performed to "facilitate[e] all aspects or the technical litigation lifecycle." Nor does it explain how this time was related to "making copies" or that the copies were "necessarily obtained for use in the case." *See* 28 U.S.C. § 1920. Align's explanation for the other "service items" are similarly notable for their lack of specificity and clarity—in fact, none is longer than a sentence. *See* Pearl Decl., Sched. D-4 at 8-9 (ECF 451/573).

These boilerplate descriptions are uninformative and do not detail the work that was performed, how this work effectuated the "making of copies," or why the copies the work produced were "necessarily obtained for use in the case." As a result, Align has not met its burden and has failed to adequately describe its electronic discovery costs; this is a separate and independent reason for denying these costs. *See Plantronics*, 2012 WL 6761576, at *17 ("[T]he court exercises its discretion and holds that Aliph did not itemize the e-discovery processing costs with enough detail to establish that the court should award it any of the ESI processing costs."); *Oracle Am., Inc. v. Google Inc.*, 2012 WL 3822129, at *3 (N.D. Cal. Sept. 4, 2012) ("[T]he Federal Circuit, applying Ninth Circuit precedent, has held that the party seeking costs has the burden of providing an itemized list with sufficient specificity . . . Google has not done so here because many of its line-item descriptions are of non-taxable intellectual efforts. Therefore, Google's request for fees incurred by its e-discovery vendor is denied.") (internal citations omitted).

Moreover, Align's billing invoices do not show that the electronic discovery costs it seeks to recover were correctly attributed to the present litigation. The Vice President of Align's e-discovery vendor swore under oath that from March to June 2021,[8] some of the costs Align seeks to recover here were lumped in with costs Align incurred in its litigation against 3Shape "because, at that time, the document collection and ingestion from Align was also required for production in

---

[7] Schedule D-4 includes a list of and "corresponding explanation" for services provided by UnitedLex, its e-discovery vendor, including the various services (e.g., "Questio Consulting," "Predictive Coding Engineer") addressed above.

[8] To add additional confusion, the declaration elsewhere claims this billing practice was in effect "[p]rior to September 28, 2021." Pearl Decl., Sched. D-4 at 3 (ECF 451/573).

the antitrust action filed by 3Shape." Pearl Decl., Sched. D-4 at 3 (ECF 451/573). But the vendor

does not explain how it was able to track and differentiate those expenses necessarily incurred in

the present litigation and those incurred in the 3Shape litigation. *See id.* At 3-9. Nor does Align's

vendor claim that the expenses it incurred here are solely attributable to the *Simon* and *Snow*

litigation. *See id.* This accounting discrepancy further militates against awarding the costs Align

seeks to recover. *See In re Ricoh*, 661 F.3d at 1368 (applying Ninth Circuit law and finding the

district court abused its discretion in awarding reproduction and exemplification costs that were

inadequately documented).

Align's Bill of Costs is further inadequate because it does not account for Align's document

production the Court deemed unacceptable. Early in this litigation, Align insisted on including

geographic limiters in the search strings it would run. *See* Disc. Order at 1-2 (ECF 140/140). But

Plaintiffs took issue with these limiters and sought relief from the Court. *Id.* At 1. The Court

ultimately agreed with the Plaintiffs and ordered Align to re-run the search strings without the

geographic limiters, despite the fact Align already "produced more than 250,000 documents and

millions of lines of data, and that Plaintiffs' demand would require Align to review an additional

570,000 documents." *Id.* At 6. "A factor in a case that weighs against cost-sharing is unilaterally

producing in an expensive format that the receiving party did not ask for." *Plantronics*, 2012 WL

6761576, at *15. That is precisely what happened here. Yet Align never mentions its deficient

production in its Bill of Costs, and it seeks to recover costs arising from its own error. This is yet

another way in which Align has failed to describe its electronic discovery costs with specificity,

particularity, and clarity.

## B.   Other, non-document production costs

In addition to the costs associated with document production and review, Align also seeks

to tax costs for (1) Visual Aids ($119,554), (2) Depositions Transcripts and Video Recording

($77,660), (3) Witness Fees ($21,019), (4) Trial Exhibits ($8,304), (5) Service of Process Costs

($7,651), and (6) Transcripts for Appeal ($4,354). Each of these costs is either not taxable at all or should be greatly reduced.[9]

### 1.   Visual Aids

Align seeks $63,270 from *Simon* and $56,284.67 from *Snow* for "visual aids" under Civil LR 54(d)(5), which provides that "The cost of preparing charts, diagrams, videotapes, and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues *at the trial*."[10] Align has broken these costs down into subcategories, as follows:

| For Use At | Description | Amount Taxed |
|---|---|---|
| Class Certification Hearing | Demonstratives | $28,808 |
| Class Certification Hearing | "Hot Seat Operator Costs" | $4,566 |
| SJ Hearing | Demonstratives | $11,108 |
| Trial | Graphics | $67,338 |
| Trial | Deposition Video Clips | $7,733 |

*See* Pearl Decl. Schedule D-3 (ECF 451/573).

First, the Rule explicitly applies to visual aids prepared "*for trial*." So, all the costs Align claims for visual aids used at the class certification or summary judgment hearings should be rejected. The rule is not ambiguous about which costs are taxable; only those prepared "to assist the jury or the Court in understanding the issues at the trial." If the rule read "the issues *for* trial," perhaps there would be some leeway, but "*at trial*" clearly means that the visual aids that are taxable are those meant to be used *at trial*—which never occurred here. Thus, the visual aid costs associated with the class certification hearing and summary judgment hearing are not taxable.

Further, even if non-trial visual aid costs were taxable, as with the limits on costs for e-discovery, Align can only recover the costs of the actual creation of the visual aids—not the intellectual effort that was involved in creating them. "Only the cost of physical preparation of demonstratives are recoverable under Civ. L.R. 54-3(d)(5); costs associated with the intellectual

---

[9] Align also seeks $600 in filing fees from each party and de minimis amount for the costs associated with copying exhibits for depositions. While no costs should be taxable for the reasons outlined above, Plaintiffs have no specific objections to these costs.

[10] Emphasis added.

effort involved in creating the content of demonstratives are not recoverable." *Computer Cache Coherency Corp. v. Intel Corp.*, 2009 WL 5114002, at *2 (N.D. Cal. Dec. 18, 2009); *see also Atari Interactive, Inc. v. Redbubble, Inc.*, 2022 U.S. Dist. LEXIS 243433, at *3 (N.D. Cal. Apr. 8, 2022). The same logic applies to those costs that Align claims were for visual aids prepared for the planned trial.

Align "bears the burden of demonstrating the amount of taxable costs." *Atari Interactive, Inc.*, 2022 U.S. Dist. LEXIS 243433, at * 3 (citing *Apple Inc. v. Samsung Elecs. Co.*, 2015 U.S. Dist. LEXIS 111276 (N.D. Cal. Aug. 20. 2015)). Most of the task descriptions Align has provided for the preparation of visual aids are either simply the title of the project ("Class cert and daubert hearing presentation"), a broad vague description ("graphics prep"), or reference only "edits" or "work on" particular graphics. *See* Pearl Decl. Ex. D-3 (ECF 451/573). These descriptions fail to differentiate between physical preparation and intellectual effort, as required. In *Atari Interactive*, the Court rejected descriptions such as "developed graphics," noting that it was unclear whether "develop" referred solely to the physical preparation of graphics. 2022 U.S. Dist. LEXIS 243433, at *3-4. Even when Redbubble, the prevailing party in *Atari*, attempted to provide more description and argued that visual aids often require "successive iteration" and "rejection of possible alternatives", the Court denied these costs. *Id.* at *4. Align's most detailed descriptions for its visual aid costs—"edits" or "work on specific graphics"—fail to distinguish between intellectual work and physical work and are like the Redbubble descriptions rejected by the *Atari* court. Similarly, these costs should be rejected here.

The "Hot Seat Operator Costs" should also be denied in their entirety. This type of cost, for an operator in the courtroom, has been explicitly rejected by this Court. *Id.* at *2 (noting the clerk rejected the cost for an in-court operator even before the bill of costs was argued before the presiding judge); *see also Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2020 U.S. Dist. LEXIS 83012, *9 (C.D. Cal. Apr. 2, 2020) ("The Court agrees that a hot seat operator does not fall within the guidelines of the physical preparation and duplication of documents.").

Align next claims nearly $70,000 from the Plaintiffs collectively for "Preparation of graphics for trial in May 2024." Pearl Decl. Schedule D-3 (ECF 451/573). In addition to the foregoing arguments about the impossibility of determining physical from intellectual effort, it was unreasonable for Align to spend that much on trial graphics in February 2024 given the posture of the case and the fact that trial would not have begun for three more months. Align knew that its summary judgment motion was pending and that the Court would issue an opinion as quickly as possible given the case schedule. Knowing that the Court's opinion could result in narrowing of issues or cancellation or postponement of the trial, it was unreasonable to spend so much on trial graphics months in advance. In fact, Plaintiffs—who would have borne the burden of proof at trial and who would have gone first—did not spend anything on trial graphics in advance of the issuance of the summary judgment opinion. Even if the summary judgment opinion did not result in eliminating or postponing the May trial, (1) there was plenty of time before May to work on graphics and (2) the summary judgment opinion would have inevitably provided significant direction to the parties as to the issues that would be most relevant at trial. Further, "the method of exemplification must itself be reasonably necessary to the presentation." *Affymetrix, Inc. v. Multilyte Ltd.*, 2005 U.S. Dist. LEXIS 41177, *12 (N.D. Cal. Aug. 26, 2005) (rejecting the costs of PowerPoint presentations where poster boards would have sufficed). Whether the visual aids created by Align's vendor were "reasonably necessary" cannot be determined as they were never used.

### 2.    Deposition Transcript/Video Recording

Align further seeks $77,660 "Deposition Transcript/Video Recording," in addition to the nearly $8,000 it seeks from the Plaintiffs collectively for the "Creation of deposition video clips for use at trial." Align is entitled to, at most, "cost of an original and one copy of any deposition." Civ. LR 54-3(c)(1). This Court has held that the local rule excludes the costs of video recording when only a print transcript is needed. *See Sullivan v. City of Berkeley*, 2019 WL 4394399, at *1 (N.D. Cal. Sept. 13, 2019) (citing Civil Local Rule 54-3(c)(1) and finding that "defendant here cannot recover costs incurred in videotaping depositions because a transcribed deposition was all

that was needed"); *Slaight*, 2019 WL 3934934, at *6 (denying costs for videography services that "constitute[d] a *third* copy [of the deposition] and therefore exceed[ed] the costs allowed under Local Rule 54-3(c)(1)".

Costs for "Real Time" services are also not taxable. *Chavez v. Converse, Inc.*, 2017 WL 6620877, at *2 (N.D. Cal. Dec. 22, 2017) (sustaining objection to costs for "Realtime Services" where invoices indicated that party also received a physical copy of the deposition and a video copy); *PNY Techs., Inc. v. Miller, Kaplan, Arase & Co., LLP*, 2017 WL 3712107, at *2 (N.D. Cal. Aug. 29, 2017) (explaining that district courts have found that certain deposition-related costs, such as "Realtime fees" and rough copies of deposition transcripts, "ordinarily are not recoverable").

Also not taxable are costs for transcript/video synchronization. *See Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) ("[T]he costs of deposition editing and synchronizing are not authorized by § 1920[.]"); *Slaight*, 2019 WL 3934934, at *5 (striking costs for video "synchronization fees"). Thus, the "Video synch" and "DVD Synch" costs associated with each witness should be rejected.

Lastly, the Rule provides that a "copy" of a deposition transcript is taxable, not all costs associated with a deposition. Costs such as the court reporter's appearance fee or the videographer's time does not fall under the Rule. Each of those expenses should be rejected.

Align's itemization of costs at Schedule C-1 lists costs for a "Transcript" or "Original Transcript" for each witness; if any costs are recoverable in this category, only these should be recoverable. Every other itemized cost is either for unallowed additional copies, expedited delivery, video synching, or staff time—not the copies of the transcripts themselves.

### 3. Witness Fees

Civil L.R. 54(e) provides that "Per diem, subsistence, and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821. No other witness expenses, including fees for expert witnesses, are allowable." 28 U.S.C. § 1821 provides for a $40 per diem, yet Align is asking for several thousand dollars for each of its expert witnesses.

This cost is for their "Deposition Appearance" beyond any actual expense for travel or subsistence. This is clearly not allowed. Federal law allows the defendant to recover forty dollars per day per witness. 28 U.S.C. § 1821(b). "A federal court may not exceed this limit without explicit statutory or contractual authorization. The court may not use other cost provisions like 28 U.S.C. § 1920 or Federal Rule of Civil Procedure 54(d) to circumvent section 1821(b)." *Vectren Communs. Servs. v. City of Alameda*, 2014 U.S. Dist. LEXIS 100227, *23-24 (N.D. Cal. July 22, 2014) (quoting *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995)) (internal citations omitted).

The "Deposition Appearance" costs claimed by Align are more akin to expert witness fees than those fees allowed under the Rule. For example, for Edward Snyder (its expert economist), Align seeks $6,580 for "Prep for Deposition; Deposition." Pearl Decl. Exhibit E-1 (ECF 451/573). Align is seeking payment for its expert's time, not for the costs expended to physically appear at a deposition, which is specifically precluded under the Rule. Align also lists a "Deposition Appearance" fee for another expert, Dr. Babak Cohanim, of $2,457. Pearl Decl. Schedule E-1 (ECF 451/573). Dr. Cohanim was deposed in Seattle, where he resides, and so had no travel expenses or costly subsistence expenses. In fact, the invoice for Mr. Babak's deposition lists no expenses other than the cost of his "appearance" in quarter-hour increments. Pearl Decl. Exhibit E-1 (ECF 451/573). This is clearly an expert fee specifically excluded by the Rule. Align makes similar claims for the time of its other experts, Lauren Stiroh and Robert Stoll. All claims for an expert's time, and not their expenses, should be rejected as non-taxable.

### 4.    Trial Exhibits

Despite the fact there has been no trial in this matter, Align still seeks $8,304 for the costs associated with what it labels "Trial Exhibits." While Local Rule 54-3(d)(4) provides that a claimant may recover "The cost of reproducing trial exhibits . . . to the extent that a Judge requires copies to be provided," Align has cited no caselaw that supports their claims they can recover the cost of exhibits for hearings or other non-trial court appearances. Plaintiffs have also not located any caselaw that discusses this Rule in a non-trial context. District courts "cannot award costs not

enumerated under § 1920 . . . [n]or may the courts invoke equitable concerns . . . to justify an award of costs for services that Congress has not made taxable." *Race Tires,*, 674 F.3d at 170 (internal citations omitted). Thus, Local Rule 54-3(d)(4) should be read as it is written—to apply only to *trial exhibits.* Instead of trial exhibits, Align seeks the costs for exhibits prepared for the evidentiary hearing related to class certification. These do not fit within the rule and should not be awarded.

### 5.     Service of Process

Align requests $12,241 for "Service of Process, Civil LR 54-3(a)(2)." Align details expenses for service of subpoenas on 13 non-parties to the litigation. *See* Pearl Decl. Schedule A-2 and Exhibit A-2 (ECF 451/573). While Align's Schedule lists these as "Service of Summons," they are in fact the expenses for serving **subpoenas**, **not** summonses. None of the 13 entities identified in Align's Schedule were ever parties to the litigation. Civil L.R. 54-3(a) specifically relates to "Fees for Filing and Service of Process." Again, the Local Rule must be interpreted in light of what Congress has made taxable under § 1920. Given the literal reading of the rule, this does not include fees for serving subpoenas on third parties. *Carlson v. Century Sur. Co.*, 2012 U.S. Dist. LEXIS 93194, *5-6 (N.D. Cal. July 5, 2012) (holding that Century could not "tax costs related to the deposition and trial subpoenas"); *see also Avila v. Willits Env't*, 2009 WL 4254367, *2 (N.D. Cal. Nov. 24, 2009), *rev'd on other grounds*, 633 F.3d 828 (9th Cir. 2011) ("[T]he Court reads this Rule to only award fees for service of process, which may be in the form of a summons or a writ."). Thus, Align's expenses for service of third-party subpoenas are not taxable.[11]

---

[11] The cases cited by Align (*see* Pearl Decl. ¶ 13 (ECF 451/573)) do not change this. *Aflex Corp v. Underwriters Labs, Inc.*, 914 F.2d 175, 178 (9th Cir. 1990), was not decided under the Northern District of California's local rules. In the other two cases, *Pixion, Inc. v. Citrix Sys., Inc.*, 2013 WL 1164909 (N.D. Cal. Mar. 20, 2013) and *700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*, 2018 WL 783930 (N.D. Cal. Feb. 8, 2018), the objecting parties did not challenge whether the claiming party was entitled to the costs of service of a subpoena at all, but rather challenged only the reasonableness of the expense. *Avila*, decided more recently than *Aflex*, specifically considers this issue and holds that subpoena service fees are not taxable.

6.      **Transcripts for Appeal**

Align seeks $4,354 for "transcripts for Appeal." Align may recover only the costs for transcripts for appeal that are necessary for the appeal, not for other events in the case such as multi-day hearings or imminent briefing deadlines. *TransPerfect Global, Inc. v. Motion Point Corp*, 2014 U.S. Dist. LEXIS 47179, *13-15 (N.D. Cal. Apr. 4, 2014) (denying costs for expedited transcripts, "Real Time," and costs for multiple copies of transcripts, noting that the need for transcripts on appeal would not occur for months afterwards)*; see also Plantronics*, 2012 WL 6761576, at *6(denying fees for expedited delivery of deposition transcripts.).

Given that the only permissible taxable cost is for one copy of a transcript in a non-expedited time frame, there are several issues with Align's claimed costs. For example, Align seeks $217.50 for the transcript of the motion to dismiss hearing on December 14, 2020. Pearl Decl. Schedule B-1 (ECF 451/573). The invoice for this request states that $163.50 of that cost is for "expedited" service of an original copy, and the rest is for copies. *Id.* It is impossible to determine from the invoice what a non-expedited copy of the transcript would have cost, so Align is not entitled to anything for this.

Align next seeks $1,360.00 for day 1 and $1,800.00 for day 2 of the evidentiary hearing related to class certification on November 13-14, 2023. The invoices do not break down the cost of expedited service versus regular service but both invoices indicate same-day delivery, which is necessarily expedited service. Unless Align can determine what the cost of these transcripts would have been without expedited service, it is not entitled to these costs.

Align also seeks $156.55 for the transcript of the class certification hearing on November 20, 2023, $191.90 for case management conferences on December 14 and 18, 2023, and the summary judgment hearing on January 25, 2024. *Id.* However, each invoice states only, "Daily as per order" as the time to turn around the transcript. Daily is inherently expedited, especially if one compares this cost with the request for the cost of the transcript for the March 1, 2024 case management conference—"3 Day as per order." *Id.* As with the costs for the evidentiary

hearing transcripts, because Align cannot isolate the cost of non-expedited service, it is not entitled to these costs.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Clerk deny, or reduce as set forth above (and summarized below), the recovery Align seeks in its Bill of Costs.

| Cost Item | Party[12] | Align's claimed amount | Adjusted amount |
|---|---|---|---|
| Filing Fees and Docket Fees | *Simon* | $600 | $600 |
| | *Snow* | $600 | $600 |
| Service of Process | *Simon* | $3,061.75 | $0 |
| | *Snow* | $4,589.65 | $0 |
| Transcripts for appeal | *Simon* | $2,255.50 | $28.93[13] |
| | *Snow* | $2,098.95 | $28.93 |
| Deposition transcript/video recording | *Simon* | $31,946.08 | $17,441.77[14] |
| | *Snow* | $45,714.28 | $24,324.77[15] |
| Deposition exhibits | *Simon* | $655 | $655 |
| | *Snow* | $93.88 | $93.88 |
| Disclosure/formal discovery documents | *Simon* | $284,504.75 | $6,411.07 |
| | *Snow* | $284,504.75 | $6,411.07 |
| Trial exhibits | *Simon* | $3,346.75 | $0 |
| | *Snow* | $4,957.91 | $0 |
| Visual aids | *Simon* | $63,270.18 | $0 |
| | *Snow* | $56,284.67 | $0 |

[12] This Chart breaks the amounts out by party because Align does not always seek equal amounts from each.

[13] For the 3-day transcript of the March 1, 2024, case management conference. See Pearl Decl. Ex. B-1.

[14] For one non-expedited transcript for Patel, Matian, Simon, and Singer, and half the cost of one non-expedited transcript for each joint witness.

[15] For one non-expedited transcript for Snow (deposed twice), Hansen, Ezzio, Hamilton, Vo, Rickenbaker, Carnaghi, Skibba, Mound, Gooch, Garay, Strong, and Campbell, and half the cost of one non-expedited transcript for each joint witness.

| Witness Fees | *Simon* | $10,509.80 | $275.65[16] |
| | *Snow* | $10,509.80 | $275.65 |
| **Total** | *Simon* | $400,149.81 | **$25,412.42** |
| | *Snow* | $409,353.88 | **$31,734.30** |

DATED:  May 20, 2024

Respectfully submitted,
By:  */s/ Joshua P. Davis*
Joshua P. Davis (SBN 193254)
Hope Brinn (SBN 338508)
**BERGER MONTAGUE PC**
505 Montgomery Street, Suite 625
San Francisco, 94111
Telephone: (415) 689-9292
Email: jdavis@bm.net
hbrinn@bm.net

Eric L. Cramer (*pro hac vice*)
Michael Kane (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4604
Email: ecramer@bm.net
mkane@bm.net

Daniel J. Walker (*pro hac vice*)
**BERGER MONTAGUE PC**
2001 Pennsylvania Avenue, NW Suite 300
Washington, DC 20006
Telephone: (202) 559-9745
Email: dwalker@bm.net

John Radice (*pro hac vice*)
April Lambert (*pro hac vice*)
Daniel Rubenstein (*pro hac vice*)
**RADICE LAW FIRM, P.C.**
475 Wall Street
Princeton, New Jersey 08540
Telephone: (646) 245-8502
Email: jradice@radicelawfirm.com
alambert@radicelawfirm.com
drubenstein@radicelawfirm.com

---

[16] For the itemized subsistence and travel fees and $40 per diem for each of the four witnesses.

*Interim Co-Lead Counsel*

Joseph R. Saveri (SBN 130064)
Kevin E. Rayhill (SBN 267496)
**JOSEPH SAVERI LAW FIRM, INC.**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
krayhill@saverilawfirm.com

Daniel J. Mogin (SBN 95624)
Timothy Z. LaComb (SBN 314244)
**MOGINRUBIN LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
Email: dmogin@moginrubin.com
tlacomb@moginrubin.com

Kevin Landau (pro hac vice)
Miles Greaves (*pro hac vice*)
**TAUS, CEBULASH & LANDAU, LLP**
123 William St, Suite 1900A
New York, NY 10038
Telephone: (212) 931-0704
Facsimile: (212) 931-0703
Email: klandau@tcllaw.com
mgreaves@tcllaw.com

*Attorneys for Plaintiffs and the Direct
Purchaser Class*

By:  */s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
Joseph M. Kingerski (*pro hac vice*)
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Email: steve@hbsslaw.com
tedw@hbsslaw.com

Rio S. Pierce (SBN 298297)
**HAGENS BERMAN SOBOL
SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Lead Counsel for Plaintiffs and the Indirect
Purchaser Plaintiff Classes in Snow, et al. v.
Align Tech., Inc.*

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)(3)

I, Steve W. Berman, am the ECF User whose identification and password are being used to file Plaintiffs' Objections to Defendant's Bill of Costs. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that all signatories have concurred in this filing.


Dated: May 20, 2024                              By: _____*/s/ Steve W. Berman*_____
                                                          STEVE W. BERMAN