Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
Joseph M. Kingerski (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: joeyk@hbsslaw.com

Rio Pierce (SBN 298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MISTY SNOW, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>　　　　　　　　　　　　　　Defendant. | Case No. 3:21-cv-03269-VC<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH ALIGN TECHNOLOGY, INC.**<br><br>Date:　　　September 19, 2024<br>Time:　　　10:00 AM<br>Judge:　　Hon. Vince Chhabria<br>Location: Courtroom 4 – 17th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 19, 2024, at 10:00 AM or as soon thereafter as the matter may be heard by the Honorable Vince Chhabria of the United States District Court for the Northern District of California, located in Courtroom 4, at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for an order:

1) preliminarily approving the proposed class action settlement with Align Technology, Inc.;

2) certifying the settlement class;

3) appointing Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel; and

4) approving the manner and form of notice and proposed plan of allocation to class members.

This motion is based on this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement with Align Technology Inc., the following memorandum of points and authorities, the accompanying settlement agreement, the pleadings and the papers on file in this action, and such other matters as the Court may consider.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   BACKGROUND ............................................................................................... 2

    A.    Proceedings to Date ............................................................................... 2

    B.    The Settlement ....................................................................................... 3

        1.    The Settlement Negotiations................................................... 3

        2.    The Settlement Consideration and Release of Claims................... 4

            a.    Monetary Relief ........................................................... 4

            b.    Coupon Relief............................................................... 4

            c.    Settlement Release ....................................................... 4

        3.    Plan of Allocation ................................................................. 5

        4.    Notice and Implementation of Settlement .................................. 6

III.  LEGAL STANDARD ....................................................................................... 8

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL...................... 9

    A.    The Settlement is Fair, Reasonable, and Adequate. .................................. 9

        1.    The Class Has Been Zealously Represented. ................................ 9

        2.    The Settlement Agreement Resulted from Arm's-Length
            Negotiations. ........................................................................ 9

        3.    The Settlement Represents Substantial Relief for the Class.......... 9

        4.    The Settlement Treats Class Members Equitably........................ 11

        5.    The Settlement Satisfies the Remaining Factors Set Forth in
            the Northern District's Procedural Guidance ............................ 12

            a.    There are no differences between the Settlement Class
               and the Class Pleaded in the Complaint. ........................ 12

            b.    The Settlement Release Tracks the Claims Alleged in
               the Complaint................................................................ 13

            c.    Epiq Was Selected as Settlement Administrator
               Through a Competitive Bidding Process.......................... 13

            d.    Plaintiffs anticipate an above average claims rate. ........... 13

e.    Counsel Will Request Reasonable Attorneys' Fees and Reimbursement of Costs. ........................................... 14

f.    The attorneys' fees sought in connection with the coupon portion of the Settlement Fund fully comply with the Class Action Fairness Act.................................. 16

g.    Class Action Fairness Act notice is required and will be provided by Align. ....................................... 16

h.    Plaintiffs Intend to Request Reasonable Service Awards for Named Plaintiffs. ........................................... 17

i.    Plaintiffs have addressed each point in the Court's Standing Order related to Preliminary Approval............................. 17

B.    The Settlement Class Merits Certification................................................. 18

1.    Rule 23(a)(1): Numerosity................................................................ 18

2.    Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class....................................... 19

3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class................................................. 19

4.    Rule 23(a)(4): Plaintiffs Will Fairly Represent the Interests of the Class.............................................. 19

5.    Rule 23(b)(3): Common Questions of Fact or Law Predominate. ......................................... 20

6.    Rule 23(b)(3): A Class Action is the Superior Method for Resolving this Litigation.................................. 20

C.    The Proposed Notice Program Satisfies Rule 23.................................. 21

D.    The Court Should Appoint Interim Co-Lead Counsel as Settlement Counsel. ........................................... 22

E.    Proposed Schedule for Notice and Final Approval ................................ 22

V.    CONCLUSION.......................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) .............................................................................20

*Amador v. Baca*,
  2020 WL 5628938 (C.D. Cal. Aug. 11, 2020) ......................................................15

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................20, 21

*In re Apple Pod iTunes Antitrust Litig.*,
  2008 WL 5574487 (N.D. Cal. Dec. 22, 2008)......................................................20

*B.K. by next Friend Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ...............................................................................19

*Bolton v. U.S. Nursing Corp.*,
  2013 WL 5700403 (N.D. Cal. Oct. 18, 2013) ......................................................17

*Browning v. Yahoo! Inc.*,
  2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ......................................................11

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2015 WL 9266493 (N.D. Cal. Dec. 17, 2015)......................................................11

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ...............................................................................21

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ..................................................................8

*de Mira v. Heartland Emp. Serv., LLC*,
  2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) ......................................................14

*In re Easysaver Rewards Litig.*,
  906 F.3d 747 (9th Cir. 2018) ...............................................................................16

*Eddings v. DS Services of America, Inc.*,
  2016 WL 3390477 (N.D. Cal. May 20, 2016)........................................................8

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................19

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ...............................................................................13

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .......................................................10

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................19

*Hubbard v. RCM Techs. (USA), Inc.*,
   2020 WL 6149694 (N.D. Cal. Oct. 20, 2020) .......................................................19

*Hunt v. VEP Healthcare, Inc.*,
   2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) .........................................................8

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................18

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir.
   Nov. 16, 2022) ..................................................................................................10, 11

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ............................................................8

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................14

*Rieckborn v. Velti PLC*,
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ............................................................11

*In re Static Random Access (SRAM) Antitrust Litig.*,
   2008 WL 4447592 (N. D. Cal. Sept. 29, 2008) ......................................................21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab.
   Litig.*,
   2013 WL 12327929 (C.D. Cal. July 24, 2013) ......................................................10

*Vasquez v. USM Inc.*,
   2015 WL 12857082 (N.D. Cal. Apr. 13, 2015) ........................................................8

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. 2017) ..............................................................9, 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................................................19

**Statutes**

15 U.S.C. § 1 .............................................................................................2, 9, 15, 19

28 U.S.C. § 1332 ....................................................................................................16

28 U.S.C. § 1712............................................................................................................16

28 U.S.C. § 1715(b)......................................................................................................17

**Rules**

Fed. R. Civ. P. 23.....................................................................................................*passim*

**Other Authorities**

Joshua P. Davis and Rose Kohles, *2022 Antitrust Annual Report: Class Action Filings in Federal Court* (2023),
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586022 ...........................................14

*Procedural Guidance for Class Action Settlements* (Aug. 4, 2022),
    https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ ......................................................................................................*passim*

## **STATEMENT OF ISSUES**

1. Whether the proposed $27,500,000 million cash and coupon settlement is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2. Whether a Settlement Class will likely be able to be certified.

3. Whether the proposed settlement notice, claim form, and manner for dissemination to the Settlement Class should be approved.

4. Whether Hagens Berman Sobol Shapiro LLP should be appointed Settlement Class Counsel.

5. Whether and, if so, when the Court should set a date for a hearing on final approval of the proposed Settlement.

## I.    PRELIMINARY STATEMENT

Plaintiffs bring this Motion for preliminary approval of a proposed Settlement with Align Technology, Inc. ("Align"). The Settlement, if approved, would resolve the claims of a Settlement Class consisting of nearly 1.45 million class members who purchased SmileDirectClub clear aligners during the Settlement Class Period.[1] Under the proposed Settlement, these purchasers stand to receive monetary payments and coupon relief that, going forward, will improve access to dental treatment for patients that (1) were unable to complete their course of treatment due to SmileDirectClub LLC's ("SDC") bankruptcy and/or quality issues or (2) wish to choose more comprehensive teeth straightening treatment than could be accomplished with SDC's limited aligner systems.

The proposed Settlement establishes a $27.5 million non- reversionary fund from which Settlement Class Members will receive distributions. All purchasers of SDC clear aligners during the Settlement Class Period will be entitled to a portion of these cash benefits. The $27.5 million Settlement Fund represents up to 15.2 percent of estimated single damages, an excellent recovery for an antitrust class action settlement considering the significant risks of ongoing litigation, including the risk that the class would not get certified or that damages would be reduced on summary judgment or otherwise.

As a form of further, additional relief, Align has offered each class member a $300 coupon for Invisalign treatment. The value of this relief cannot be precisely quantified before Plaintiffs understand the number of class members that seek to redeem their coupons, but the coupons are undoubtedly beneficial to the Settlement Class. Even if only five percent of the Settlement Class takes advantage of these coupons, they would provide up to $21.8 million in further relief. The coupons are also additive to the monetary recovery for each class member. Under the allocation plan proposed by Plaintiffs, a class member who claims the coupon will not receive any less monetary compensation than a class member who does not claim the coupon.

The Settlement follows over two years of contentious litigation, including extensive discovery, numerous depositions, multiple expert reports, and voluminous class certification briefing accompanied by multiple expert reports. The proposed Settlement is the product of arm's-length negotiations among

---

[1] The "Settlement Class Period" refers to the period October 22, 2017 to August 18, 2022. *See* Berman Decl., Ex. A ¶ 12.

experienced counsel with the assistance of one of the nation's most trusted mediators, Greg Lindstrom and his team.

Antitrust cases are inherently risky and, while Plaintiffs believe their claims are sound, recovery is far from certain. This is particularly true here, where the Court opined in its Motion to Dismiss ruling that Plaintiffs' allegations "somewhat teeter[] on the edge of plausibility." Order Denying in Part and Granting in Part Motion to Dismiss at 7, ECF No 96. And the Court also told Plaintiffs, "[y]our claims as it relates to the SmileDirectClub/Align arrangement seemed weak at the outset to me, and it seems like you're now just grasping, like you've come to the realization that in fact it is a very weak claim and you're trying to assert another claim that also seems on the surface quite weak." Transcript of Hearing on Motion for Leave to File Fifth Amended Class Action Complaint, ECF No. 375 at 4:4-9. Further, at class certification, Align argued that the claims of class members from certain states were subject to binding arbitration and/or class action waivers. While Plaintiffs have answers to this argument and believe that the class proposed in their complaint would be certified, nothing is certain in litigation. The proposed Settlement ensures that all class members nationwide will receive relief and even those that are subject to waivers (should they be found to be valid and enforceable) will benefit without the need for costly arbitration.

If approved, the Settlement will deliver assured, substantial relief to a Settlement Class that could receive less value—or nothing at all—from a litigated outcome.

Plaintiffs respectfully request an Order that: (1) preliminarily approves the proposed Settlement; (2) certifies the Settlement Class; (3) appoints Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel; and (4) approves the manner and form of notice and proposed plan of distribution to Settlement Class Members.

## II.    BACKGROUND

The Court is well-versed in the history of this case. Plaintiffs therefore only briefly summarize the proceedings to date before describing the proposed Settlement.

## A.    Proceedings to Date

Plaintiffs filed an initial complaint against Align in May 2021 and the operative Fifth Amended Class Action Complaint on May 22, 2023. ECF Nos. 1, 371. Asserting claims under Section 1 of the

- 2 -

Sherman Act, Plaintiffs contend that Align and SDC schemed to allocate the direct-to-consumer clear aligner market and that, as a result of this scheme, they were overcharged for the clear aligners they purchased from SDC. Plaintiffs successfully defended against Align's motions to dismiss and strike. *See* ECF Nos. 96, 97. Plaintiffs were also successful in opposing Align's motion to join SDC as a necessary party (ECF Nos. 124, 142, 147), and in moving for leave to file their Fifth Amended Complaint over Align's objection (ECF Nos. 290, 324, 331).

Plaintiffs' case was coordinated for pretrial purposes with another action brought by direct-purchasers of Align's (not SDC's) aligners, *Simon and Simon, P.C. v. Align Technology Inc.*, Case No. 3:20-cv-03754. *See* ECF No. 31. As a result, case management has been complex and the parties negotiated scores of protocols and joint status submissions, including with respect to discovery coordination, protective orders, depositions, and experts. *See* Berman Decl., ¶ 2. In fact, coordinated discovery yielded a massive discovery record and required enormous effort. The parties propounded more than 674 document requests and Interrogatories, leading to the production of more than 2.5 million pages of documents. *Id.*

The Parties also fully briefed the issue of class certification. *See* ECF Nos. 540, 563, 583. Plaintiffs worked closely with economic, business, and marketing experts to build their case. After analyzing the record, these experts prepared four expert reports—the opening and rebuttal reports of Dr. William Vogt, Plaintiffs' expert economist, as well as rebuttal reports by Dr. Simha Mummalaneni, a marketing expert, and Max Holmes, an expert on corporate transactions. Due to the schedule of the case, these were comprehensive expert reports that covered both merits and class certification related issues.

**B.    The Settlement**

**1.    The Settlement Negotiations**

The parties engaged in extensive settlement negotiations over a period of more than six months with the assistance of an experienced mediator, Greg Lindstrom, and his team. The parties engaged in an in-person mediation session on January 10, 2024. *See* Berman Decl., ¶ 4. The parties at that point were not able to reach agreement on financial terms of a settlement. The parties engaged in extensive negotiations, again with the assistance of Greg Lindstrom and his team, in a several week period prior to the class certification hearing that was set for June 6, 2024. *See id.* ¶ 4.  The parties reached agreement

- 3 -

on the principal terms of the Settlement on June 5, 2024. The parties continued to negotiate certain aspects of the settlement, ultimately finalizing all terms of the agreement on August 8, 2024. *See id.* ¶ 4.

  **2.**  **The Settlement Consideration and Release of Claims**

  The proposed Settlement provides monetary and coupon relief in exchange for a release of claims. These elements of the Settlement are addressed in turn below.

   **a.**  **Monetary Relief**

  Align has committed to pay $27,500,000 into a Settlement Fund for the benefit of the Settlement Class. *See id.*, Ex. A ¶ 16. The Settlement Fund is non-reversionary, meaning that no portion of the fund will ever return to Align. *See id.*, Ex. A ¶ 34. The Settlement Fund represents up to 15.2% of the estimated single damages for the Settlement Class. *See infra* Section IV.A.3.

   **b.**  **Coupon Relief**

  The Settlement also provides additional valuable coupon relief. Align will offer a $300 coupon for Invisalign treatment to Class Members. Each coupon shall be combinable with any other coupon that Align offers to patients or potential patients. These coupons will be available to and redeemable by class members that have already begun Invisalign treatment for future charges by Align in connection with Invisalign treatment (but with no payment of refunds by Align). The coupons are also available to those who have not started Invisalign treatment but want to, and are usable by class members for payment for the treatment of immediate family members who were previously treated with SDC aligners during the class period. For the avoidance of doubt, class members who have received any other coupon previously offered by Align specifically to SDC patients are eligible to redeem the settlement coupon for future charges by Align, regardless of whether or not they have already started treatment. The coupon shall be redeemable for two years from the date of Final Approval of the Settlement, as long as the class member claims the coupon within one year from the date of Final Approval of the Settlement. The coupon will be eligible for class members to claim during the class notice process, although the coupon cannot be redeemed until after Final Approval of the Settlement.

   **c.**  **Settlement Release**

  In exchange for the monetary and coupon relief just described, the Settlement Class would release Align from "all manner of federal and state claims regardless of the cause of action arising from or

- 4 -

relating to conduct that was alleged or could have been alleged" in this case. *See* Berman Decl., Ex. A ¶ 8. That being so, the class members are only releasing claims based on this case's "identical factual predicate," and the proposed Release does not relinquish the claims of any SDC purchaser not within the Settlement Class. *See* Standing Order for Civil Cases Before J. Vince Chhabria at 14.

### 3. Plan of Allocation

Plaintiffs propose using a claims form and direct payments to distribute funds to the Settlement Class, with the Settlement fund being divided equally among the Settlement Class Members. Coupon relief will likewise be available for all eligible Settlement Class Members. Class members who claim the coupon will not receive any diminishment in monetary funds as compared to Class members who do not claim the coupon.

Plaintiffs believe the Settlement lends itself best to Settlement Class members filing claims, as opposed to simply receiving checks. *See* Standing Order for Civil Cases Before J. Vince Chhabria at 15. In circumstances such as this—where Settlement Class Member contact information is being gathered from a third-party source that may have outdated or unreliable information—automatic distributions are impractical. Azari Decl., ¶ 44. Plaintiffs are concerned that if digital payments are sent automatically, many non-class members may derive an improper benefit from the Settlement Fund. *Id.* This may also invite fraud and reduce the payments that are available to individuals that are actually members of the Settlement Class. *Id.* In contrast, the claims process will allow the Settlement Administrator to confirm only Settlement Class members receive payment from the Settlement Fund. *Id.* The claims process will also allow class members to elect to receive the coupon portion of the Settlement. *Id.* at ¶ 46. In addition, automatic distributions still often require a class member to specify their digital method of payment, which mimics the claims process (that is, class members must fill out a form and provide the claims administrator with certain information before they will receive a payment). These factors all militated in favor of adopting the claims process Plaintiffs have elected to employ here.

When Settlement Class members fill out a claims form, either online or by mail, they will be able to elect whether they wish to claim the coupon portion of the Settlement. *Id.* at ¶ 48. The claims form will similarly allow Settlement Class members to choose how they would like to receive their monetary portion of the Settlement Fund, either by check or electronic deposit in a bank account. *Id.*

- 5 -

After the Settlement receives Final Approval, an email will be sent to Settlement Class members. The email will explain to Settlement Class members how they can redeem their coupon and receive their monetary portion of the Settlement Fund. *Id.*

The proposed distribution reflects that the most equitable way of dividing the fund is to treat the claims equally, and this method of distribution accepts that all Settlement Class Members were alleging the same harm. The allocation plan further recognizes that every Settlement Class member suffered similar overcharges. *See* ECF No. 540, Ex. 5 at Table 8. Given these considerations, Plaintiffs submit that this allocation plan is fair, adequate, and reasonable.

If funds remain after the first round of distribution, Plaintiffs will submit a plan for Court approval to make additional distributions to Settlement Class Members that submitted a valid claim. *See* Berman Decl., Ex. A ¶ 36. Under no circumstances will unclaimed funds revert to Align. *See id.*, Ex. A ¶ 34.

**4.    Notice and Implementation of Settlement**

Plaintiffs have attached to this motion a declaration from the Settlement Administrator, Epiq LLC ("Epiq"), that proposes a comprehensive notice program and includes a proposed Long Form Notice and Summary Notice (both email and postcard). *See* Azari Decl., ¶¶ 25-26, Exs. B-D. The proposed notice program provides direct notice to all reasonably identifiable Settlement Class Members via email and mail, combined with a state-of-the-art digital notice campaign, and the implementation of a dedicated website and a toll-free telephone line where Settlement Class Members can learn more about the Settlement and their options. *See id.* ¶¶ 24-43.

Plaintiffs are currently negotiating with the Bankruptcy trustee for the estate of SmileDirectClub and a third-party, Salesforce, Inc., to obtain class member contact information. Plaintiffs will, as soon as practicable, file a motion to approve the notice plan once they have finished obtaining the class member contact information that is still available.

To the extent that Plaintiffs obtain contact information for class members, Epiq—through direct notice—will send individual direct notice by email to all of the nearly 1.45 million members of the proposed Settlement Class for whom contact information can be obtained. Epiq will also engage in an email updating process to help ensure the accuracy of recipient email addresses and to identify email addresses for Settlement Class Members without one on record. *See id*. ¶¶ 25-30.

- 6 -

The content of the direct notice emails will be the Email Summary Notice attached to the Azari Declaration. *See id.*, Ex. C. Epiq will also send Summary Postcard Notices to each Settlement Class Member with an address on record. Epiq will again employ best practices to maximize the deliverability of the Summary Postcard Notice. *See id.* ¶¶ 28-30. The proposed Summary Postcard Notice is attached to the Azari Declaration as Exhibit D.

In addition, the proposed notices will provide general information about the lawsuit and Settlement, while informing Settlement Class Members of the options available to them, including the options of objecting to, or opting out of, the Settlement. *See id.*, Exs. B, C, D. The notice will instruct class members who wish to opt out of the settlement to send a letter to Epiq, setting forth their name and information needed to be properly identified. *Id.*, Ex. B. There will also be an opt out form on the case-specific website that will allow class members to opt out of the Settlement Class. *Id.*, Ex. B. The notice clearly advises class members of the deadline, methods to opt out, and the consequences of opting out. *Id.*, Ex. B. Plaintiffs are also evaluating the possibility of updating the proposed notice forms to provide class members with information about the cash payment that they are guaranteed to receive if they do make a claim. Plaintiffs will make a final determination on whether this approach is feasible after they review the class member contact information that they are in the process of obtaining.

Epiq will establish a case-specific toll-free hotline and a case-specific website, with the domain reserved as www.SDCAlignerSettlement.com. *See id.* ¶¶ 41-43. On the settlement website, Settlement Class members will be able to view general information about this class action, read relevant Court documents, and review important dates and deadlines pertinent to the Settlement. For example, the detailed Long Form Notice will be available for download on the website. *See id.* ¶ 41. The settlement website will be designed to be user-friendly and enable Settlement Class Members to easily find information about the Settlement.

The direct notice campaign will be supplemented with a robust digital campaign to ensure that all potential Settlement Class Members receive notice. Epiq will utilize a form of internet advertising known as targeted digital advertising. Digital notice will be targeted to selected audiences and are designed to encourage participation by Settlement Class members. *Id.* ¶ 32. The digital notice campaign will also include a social media campaign utilizing Facebook and Reddit. *Id.* ¶ 33. The plan will likewise include

- 7 -

a paid search campaign on Google, Yahoo!, and Bing to help drive Class Members who are actively searching for information about the Settlement to the settlement website. *Id.* ¶ 38. The digital notice campaign will target a nationwide audience and run for approximately six weeks. *Id.* ¶ 37. The costs of notice and administration will be paid from the Settlement Fund. *See* Berman Decl., Ex. A ¶ 31.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(c) requires judicial approval of any compromise or settlement of class action claims. Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval assesses only whether the proposed settlement falls within the "range of possible approval." *Vasquez v. USM Inc.*, 2015 WL 12857082, at *2 (N.D. Cal. Apr. 13, 2015). Preliminary approval establishes an "initial presumption of fairness, such that notice may be given to the class and the class may have a full and fair opportunity to consider the proposed [settlement] and develop a response." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 399221, at *1 (N.D. Cal. Jan. 19, 2017). A settlement may preliminarily be approved upon a "showing that the court will likely be able to (i) approve the proposal under Rule 23(c)(2); and (ii) certify the class for purposes of judgement on the proposal." Fed. R. Civ. P. 23(c)(1). Factors courts consider under Rule 23(c)(2) include whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
(D) the costs, risks, and delay of trial and appeal;
(E) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(F) the terms of any proposed award of attorney's fees, including timing of payment; and
(G) any agreement required to be identified under Rule 23(c)(3); and
(H) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(c)(2). Even though "[t]he Court's scrutiny of the proposed settlement will be as rigorous at the preliminary approval stage as at the final approval stage[,]" all preliminary approval requirements are met here. Standing Order for Civil Cases Before J. Vince Chhabria at 13 (requiring that "[a]ny motion for preliminary approval should explain why the settlement survives this level of scrutiny"); *see Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016); *see also Hunt v. VEP Healthcare, Inc.*, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017); *Eddings v. DS Services of America, Inc.*, 2016 WL 3390477 (N.D. Cal. May 20, 2016).

- 8 -

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

**A.    The Settlement is Fair, Reasonable, and Adequate.**

### 1.    The Class Has Been Zealously Represented.

Plaintiffs' counsel has aggressively pursued this case. Counsel prepared multiple thorough complaints, defended Align's Motion to Dismiss, and fully briefed the question of class certification. *See* ECF Nos. 71, 80, 81, 95, 371. After devoting enormous resources to negotiate discovery parameters and protocols, Counsel also obtained and analyzed a massive discovery record, which includes more than 500,000 documents and over 2.5 million pages, and participated in extensive third-party discovery. Counsel likewise conducted and/or defended 22 depositions specific to their Section 1 claim. Berman Decl., ¶ 3. Plaintiffs brought multiple motions to compel, including robust motion practice to obtain discovery from SDC itself. To prepare for class certification and merits proceedings, Counsel retained prominent economic, marketing, and business experts who prepared four reports, spanning hundreds of pages that covered both merits and class certification issues. *See* Berman Decl., ¶ 5. As their accompanying declarations attest, Named Plaintiffs likewise have furthered the interests of the class by reviewing submissions, conferring with Counsel, producing documents, and sitting for depositions. *See* Bozian Decl., ¶ 4; Casad Decl., ¶ 4; Eaton Decl., ¶ 4. The Settlement Class has been adequately represented.

### 2.    The Settlement Agreement Resulted from Arm's-Length Negotiations.

Counsel's determination that the settlement is fair and reasonable is afforded "great weight" in the approval analysis. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017).

This Settlement is the product of sustained negotiations between experienced counsel with a track record of success in antitrust and class-action matters. Negotiations occurred at arm's length, over several sessions, before one of the nation's leading mediators. Having worked on this case for years, as well as parallel litigation against Align, Counsel understands both the risks and potential recovery of further litigation.

### 3.    The Settlement Represents Substantial Relief for the Class.

Preliminary approval requires consideration of whether the "relief provided for the class is

- 9 -

adequate." Fed. R. Civ. P. 23(2). It is here.

The $27.5 million Settlement Fund is itself substantial and adequate relief. For context, if the Settlement Class were to obtain class certification, survive summary judgment, and prevail at trial, its members would stand to recover between approximately $181 million and $485 million in single damages. *See* ECF No. 540, Ex. 5 at 380-82. Thus, the Settlement Fund represents between 5.7 and 15.2 percent of these single damages. This is consistent with the recovery in other large antitrust settlements in this district. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (approving a settlement fund that comprised 11.7 percent of single damages); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving of a settlement fund that comprised 14.2 percent of single damages).

Moreover, the relief afforded by this Settlement is not limited to the Settlement Fund. The Settlement's coupon element confers additional economic and practical benefits on the Settlement Class. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2013 WL 12327929, at *29. N.7 (C.D. Cal. July 24, 2013) (in valuing a settlement, "Plaintiffs' experts appropriately have included the non-monetary benefits"). As set forth above, Align has made a substantial commitment to provide Settlement Class members with a $300 coupon towards Invisalign treatment. This consideration is particularly valuable in light of the fact that SDC has filed for bankruptcy and Settlement Class members—all of whom were necessarily SDC clear aligner purchasers—may need additional treatment because they either (1) did not receive sufficient treatment through the SDC aligners or (2) did not get the chance to complete their teeth straightening with SDC aligners. If even just five percent of the Settlement Class takes advantage of this benefit, that would provide a further $21.8 million recovery to class members.

The value of the Settlement must also be weighed against the risks of further litigation. Plaintiffs believe their claims are meritorious, but the path forward is not without peril. "Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *Batteries*, 2020 WL 7264559, at *15. "The best case can be lost and the worst case can be won, and juries may find liability but no damages. None of these risks should be underestimated." *Id.*

- 10 -

These risks are particularly heightened here for four reasons. *First*, in its Motion to Dismiss order, the Court expressed skepticism of Plaintiffs' allegations, characterizing them as "somewhat teeter[ing] on the edge of plausibility." Order Denying in Part and Granting in Part Motion to Dismiss at 7, ECF No 96. *Second*, Plaintiffs have not yet passed the crucial class certification hurdle. *See, e.g.*, *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). *Third*, at class certification Align argued that the claims of class members from certain states were subject to binding arbitration and/or class action waivers; while Plaintiffs have answers to this argument, and believe that the class proposed in their complaint could be certified, Align's argument—had it been successful—could have significantly reduced the size of the certified class. *Fourth*, Plaintiffs faced substantial risks that even if a class was certified and Defendant's motion for summary judgment denied, damages would be materially reduced. Plaintiffs put forward multiple damages methodologies, each of which faced significant attacks by Align's experts.[2]

The Settlement eliminates these risks and ensures that the Settlement Class receives meaningful and immediate relief.

### 4. The Settlement Treats Class Members Equitably.

In addition to evaluating the overall adequacy of the Settlement, the Court must consider whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(c)(2)(D). That is, a plan of allocation is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015). And, "[a] plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *Id.* at *21. Therefore, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (quoting *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D.

---

[2] Among other things, Align's experts claimed that there was no change in SDC's pricing trend at the time of the challenged agreement and that the increasing pricing trend continued even after the expiration of the agreement. Both of these arguments created significant hurdles for a showing that there was an overcharge *because* of the agreement, and at a minimum, created a material risk that damages would have been reduced before or during trial.

- 11 -

Cal. May 6, 2014)).

Here, the Settlement Class's counsel has recommended equally dividing the cash portion of the settlement fund. This is fair, reasonable and adequate for several reasons. For one thing, all Settlement Class members allege the same economic injury—overpaying for their clear aligners from SDC. Similarly, all Settlement Class members allege their injury arises from the same course of conduct—Align and SDC's scheme to allocate the direct-to-consumer clear aligner market. This likewise means that all Settlement Class members have equally strong claims on the merits. Finally, this is not an instance where there was a gross disparity in injury among class members. Indeed, the maximum difference in overcharge paid between Settlement Class members was less than $150. ECF No. 540, Ex. 5 at Table 2.  Because the extent of the injury suffered by Settlement Class members was relatively small and similar, this factor further militates in favor of equally apportioning the Settlement Fund.

Accordingly, the allocation is reasonable, aligns with Plaintiffs' theory of damages, and treats all Settlement Class members equitably.

### 5.    The Settlement Satisfies the Remaining Factors Set Forth in the Northern District's Procedural Guidance

This District's Procedural Guidance for Class Action Settlements ("Procedural Guidance") instructs parties to address certain additional factors in any motion to preliminarily approve a class settlement. A number of these factors are addressed throughout this submission and the remaining applicable factors are addressed below.[3]

### a.    There are no differences between the Settlement Class and the Class Pleaded in the Complaint.

The Procedural Guidance requires that where, as here, a litigation class has not been certified, a motion for preliminary approval must address "any differences between the settlement class and the class proposed in the operative complaint and [provide] an explanation as to why the differences are appropriate in the instant case." Procedural Guidance for Class Action Settlements §1(a) (Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

---

[3] However, Plaintiffs "need not discuss 'the lead class counsel's firms' history of engagements with the settlement administrator over the last two years'" and "'at least one of their past comparable class settlements.'" Standing Order for Civil Cases Before J. Vince Chhabria at 15.

Here, the Settlement Class definition is the same as the proposed class definition in the operative complaint.

> **b.    The Settlement Release Tracks the Claims Alleged in the Complaint.**

The Procedural Guidance also requires identification of "any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case." Procedural Guidance for Class Action Settlements §1(c) (Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

The Settlement release here extends beyond the specific claims asserted in the Fifth Amended Consolidated Complaint, but only to encompass potential claims "based on any or all of the same factual predicates for the claims alleged" here. Berman Decl., Ex. A ¶ 8. As the Ninth Circuit has recognized, a release may properly extend to "claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). Thus, this is an appropriate release that tracks the release in other approved settlements.

> **c.    Epiq Was Selected as Settlement Administrator Through a Competitive Bidding Process.**

Prior to engaging Epiq as the notice and claims administrator, interim Class Counsel sent a Request for Proposal ("RFP") to four leading settlement administrators. The RFP included a carefully drafted outline requiring the respondents to make the same fixed assumptions about notice and administration of the settlements, ensuring an apples-to-apples comparison. All respondents provided comprehensive responses, and comparable bids. Epiq offered competitive pricing and Plaintiffs ultimately concluded that Epiq would provide the best value for the Settlement Class. *See* Berman Decl., ¶ 6.

Epiq estimates total administration costs will be approximately $234,331 or around 0.85% of the Settlement Fund. *See* Berman Decl., ¶ 7.

> **d.    Plaintiffs anticipate an above average claims rate.**

Epiq estimates up to a 10% claims filing rate. That estimate is based on comparisons to similar settlements, as well as considerations that include the comprehensive direct notice efforts via email and mail to Settlement Class Members; the simplicity of the Claim Form and claim submission process; and

the anticipated earned media that this Settlement will garner. *See* Azari Decl., ¶ 37. This estimation also assumes that Plaintiffs are able to obtain contact information for Settlement Class Members and that Plaintiffs will be able to provide the class with direct notice. Plaintiffs are continuing to pursue class member contact information, including the filing of a discovery motion aimed at obtaining data from the estate of SDC. *See* ECF No. 611.

### e.    Counsel Will Request Reasonable Attorneys' Fees and Reimbursement of Costs.

In evaluating the adequacy of a proposed settlement, the Court also looks to the potentially requested attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); *see also* Procedural Guidance for Class Action Settlements § 6 (Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Here, the Settlement Agreement provides that any Court-awarded fees will be paid from the Settlement Fund. *See* Berman Decl., Ex. A ¶ 16. Plaintiffs will make a request for attorneys' fees of up to $6.875 million, which represents 25% of the sum of the cash Settlement Fund ($27.5 million). Plaintiffs will additionally request 25% of the value of the reimbursed coupons in attorneys' fees, but the combined value of the attorneys' fees sought will be capped at 30% of the cash settlement fund ($8.25 million). *See* Berman Decl., ¶ 8. The proposed notice advises the Settlement Class of counsel's potential fee request and Align reserves all rights to oppose any fee application made. *See* Azari Decl., Ex. B.

Counsel's potential fee request is reasonable. When applying the percentage-of-the fund method, the Ninth Circuit has established a benchmark percentage of 25 percent to be used as the "starting point" for analysis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949, 955 (9th Cir. 2015). "That percentage amount can then be adjusted upward or downward depending on the circumstances of the case." *de Mira v. Heartland Emp. Serv., LLC*, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014). Courts in this district have recognized that "in most common fund cases, the award *exceeds* the benchmark." *Id.* (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)). And in the 2022 Antitrust Annual Report, scholars from UC Law San Francisco found that among antitrust class action settlements surveyed between 2009 and 2022, the median fee awarded for

settlements between $10 and $49 million was 30 percent.[4]

The *maximum* fee award—$8.25 million—would likewise represent 30 percent of the $27.5 million cash Settlement Fund. This is well within the range of approved amounts. Moreover, as explained above, the Settlement also provides additional non-monetary relief to the Class. This includes coupon relief that improves plaintiffs' access to dental care—particularly now that SDC has filed for Chapter 7 bankruptcy. Align's commitment to provide plaintiffs with a $300 coupon for Invisalign treatment delivers significant additional relief to the class. Even if just five percent of the Settlement Class avails itself of this benefit, this would provide a further $21.8 million recovery. This, and all other forms of non-monetary relief, should be considered in awarding fees. *See Amador v. Baca*, 2020 WL 5628938, at *12 (C.D. Cal. Aug. 11, 2020); *Staton v. Boeing Co.*, 327 F.3d 938, 972-74 (9th Cir. 2003).

Through the end of July 2024, Plaintiffs have invested approximately 9,520 hours and $4.23 million in attorneys' fees in this litigation specifically for the Section 1 claim. *See* Berman Decl., ¶ 8. A $8.25 million attorneys' fee award—the maximum amount requested—would therefore result in a lodestar multiplier of 1.95 (not counting hours after July 2024). That is well within the range of awards in other class action settlements. The Ninth Circuit has affirmed a 6.85 multiplier, holding that it "falls within the range of multipliers that courts have allowed." In *Vizcaino v. Microsoft Corporation*, a leading Ninth Circuit case on attorneys' fees, the Court affirmed a fee award with a 3.66 multiplier. *See* 290 F.3d 1043, 1050-51 (9th Cir. 2002); *see id.* at 1051 n.6 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)) (cleaned up).

Apart from the costs of class notice, Plaintiffs will also request reimbursement of certain costs and expenses, not to exceed $3 million. *See* Procedural Guidance for Class Action Settlements § 6 (Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (instructing class counsel to state "whether and in what amounts they seek payment of costs and expenses, including expert fees"). Those expenses are primarily driven by approximately $2.7 million in expert costs. *See* Berman Decl., ¶ 9. The funds spent on experts were critical to achieving the

---

[4] *See* 2022 Antitrust Annual Report: Class Action Filings in Federal Court at 32 (September 2023), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586022.

Settlement, which came after Plaintiffs' experts filed four reports supporting class certification. Each was also deposed. Plaintiffs have also excluded all costs solely associated with the Section 2 claim (such as expert fees for experts solely on that claim) and equally divided costs shared between the two claims (such as costs associated with document storage). *Id.*

> **f.    The attorneys' fees sought in connection with the coupon portion of the Settlement Fund fully comply with the Class Action Fairness Act.**

The Class Action Fairness Act (CAFA) imposes certain restrictions on attorneys' fees awards where the settlement provides class members relief in the form of coupons. *See* 28 U.S.C. § 1712 (2024). In particular, "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed." 28 U.S.C. § 1712(a) (2024). As a result, "CAFA requires district courts to consider the value of only those coupons 'that were actually redeemed' when calculating the relief awarded to a class." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (quoting *Online DVD*, 779 F.3d at 950).

Counsel's requested attorneys' fees fulfill all of these requirements. For the cash portion of the Settlement Fund, counsel has requested a percentage of the recovery—25% of the $27.5 million in cash. For the coupon portion of the Settlement Fund, counsel has requested only a percentage of the dollar value of the *redeemed* coupons—25% of whatever this amount may be. Standing alone, this would fully comply with CAFA. *Cf. In re Easysaver.*, 906 F.3d at 758. Moreover—in an effort to ensure "the settlement is fair, reasonable, and adequate for class members"—counsel's requested fees will be capped at a maximum of 30% of the cash portion of the Settlement Fund. *See* 28 U.S.C. § 1712(e) (2024).

> **g.    Class Action Fairness Act notice is required and will be provided by Align.**

Section 10 of the Procedural Guidance next asks the parties to address the issue of whether CAFA notice is required. Procedural Guidance for Class Action Settlements § 10 (Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.    CAFA requires that "each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b) (2024).

In order to satisfy this requirement, Epiq will mail notice of the proposed Settlement and Release

to the United States Attorney General, all 50 States' Attorney General, the Attorney General of the District of Columbia, and the Attorney General of all five major U.S. Territories, within ten days of the filing of this proposed Settlement. Berman Decl., ¶ 10; *see* 28 U.S.C. § 1715(b) (2024); *Volkswagen*, 229 F. Supp. 3d at 1063.

### h.    Plaintiffs Intend to Request Reasonable Service Awards for Named Plaintiffs.

Pursuant to § 7 of the Procedural Guidance, Plaintiffs intend to request Service Awards of $7,500 for each of the three Named Plaintiffs. These service awards are warranted.

The Named Plaintiffs have been actively involved in the litigation. Each Named Plaintiff reviewed pleadings and consulted with Counsel regarding case developments. The Named Plaintiffs responded to 168 document requests each, and two responded to an additional nineteen interrogatories while the third responded to twenty. *See id*. ¶ 3. All were deposed and devoted numerous hours to preparing for deposition. All conducted document searches and collected materials, producing hundreds of documents in total. *See* Berman Decl., ¶ 11; Casad Decl., ¶ 4; Eaton Decl., ¶ 4; Bozian Decl., ¶ 4. No Named Plaintiff derived a personal benefit beyond any recovery to the Settlement Class. In addition, a $7,500 service award represents just 0.03 percent of the Settlement Fund, such that Named Plaintiffs do not stand to recover substantially more than other Settlement Class Members. *See Bolton v. U.S. Nursing Corp*., 2013 WL 5700403, at *6 (N.D. Cal. Oct. 18, 2013).

### i.    Plaintiffs have addressed each point in the Court's Standing Order related to Preliminary Approval.

This Court's Standing Order has specific instructions on several points to be addressed in any Preliminary Approval motion, including regarding class notice. These points are generally addressed throughout the motion. For convenience, Plaintiffs briefly summarize them here.

*First*, as discussed in Section IV.A.3, this settlement survives rigorous scrutiny. Plaintiffs faced significant risks in continuing to litigate, settled on favorable financial terms, and ensured monetary recovery for all class members.

*Second*, the release language clearly states that class members are only releasing claims based on the factual predicate that gave rise to the litigation. Class members are not releasing any claims against SDC, not named as a defendant in this litigation, nor does the settlement release any claims that Class

- 17 -

members may have related to the ongoing Section 2 claim against Align.

*Third*, Plaintiffs are not asking the Court to enjoin current or future litigation in other courts based on the conduct covered by the release.

Plaintiffs have also prepared proposed notices, claims forms, and other documents that are mindful of the Court's standing order. Plaintiffs have included a proposed opt-out form in the documents provided to the Court. Plaintiffs' notice campaign will include both notice by e-mail and a social media campaign. Azari Decl., ¶¶ 26, 31-38. Plaintiffs will have a website associated with the settlement, and both claims and opt-out forms will be able to be filed online. *Id.* at ¶ 41. Class members will also be able to submit objections either through mail or electronically. The long and short form notice states that Class members who do not timely object will still be able to attend the Final Approval Hearing to object, provided that they show good cause for their failure to timely object. As discussed above, Plaintiffs proposed allocation plan will have unclaimed funds redistributed to all class members who have claimed their share. Plaintiffs have also proposed a claim process that requires class members to file claims for two principal reasons. First, Plaintiffs do not have complete contact information for all class members and therefore could not accurately disburse checks to all class members. *Id.* at ¶ 44-45. Second, a claims process is beneficial in order to allow class members the opportunity to claim their optional coupon as well. *Id.* at ¶ 46.

## B.    The Settlement Class Merits Certification.

Preliminary approval also requires the Court to determine whether it is likely to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). While the Court must assess all applicable requirements of Rule 23, they are "applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). A critical distinction is that, in the settlement context, the Court need not be concerned with the manageability at trial because "by definition, there will be no trial." *See id.* at 557. This means that "[a] class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *See id.* at 558.

### 1.    Rule 23(a)(1): Numerosity

The numerosity requirement is generally satisfied if the class contains 40 members. *See Hubbard*

- 18 -

*v. RCM Techs. (USA), Inc.,* 2020 WL 6149694, at *1 (N.D. Cal. Oct. 20, 2020). The Settlement Class here has nearly 1.45 million members. *See* ECF No. 540, Ex. 5 at Table 12. This satisfies the numerosity requirement.

### 2.    Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class.

To satisfy the commonality requirement, "[e]ven a single [common] question will do," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). "Antitrust liability alone constitutes a common question that will resolve an issue that is central to the validity of each class member's claim in one stroke." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013). Here, there are a number of common questions: whether the agreement between Align and SDC violated Section 1 of the Sherman Act under either the *per se* rule or the rule of reason; whether the agreement artificially raised prices and reduced competition in the direct-to-consumer market for clear aligners; and whether the agreement caused damages to the members of the Settlement Class in the form of overcharges paid for clear aligner treatment. These questions establish commonality.

### 3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class.

Typicality requires that the Named Plaintiffs' claims be "reasonably coextensive with those of absent class members; they need not be substantially identical." *B.K. by next Friend Tinsley v. Snyder*, 922 F.3d 957, 969-70 (9th Cir. 2019). "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *High-Tech,* 985 F. Supp. 2d at 1181. Here, the Named Plaintiffs challenge the same antitrust conspiracy, advance the same legal theories, and assert the same antitrust injury as the members of the Settlement Class. This renders their claims typical of the Settlement Class they seek to represent.

### 4.    Rule 23(a)(4): Plaintiffs Will Fairly Represent the Interests of the Class.

The adequacy requirement of Rule 23(a) tests (a) whether the class representatives have interests that are antagonistic to or in conflict with the interests of the class and (b) whether the representatives are represented by counsel of sufficient diligence and competence to fully litigate the case. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Both requirements are met here.

*First*, Named Plaintiffs have been actively involved at each step of this litigation, as already addressed. *See supra* at Section IV.A.5.h. They have no conceivable conflict of interest with the

Settlement Class. Named Plaintiffs have suffered the same alleged injury as all Settlement Class Members. To the extent Named Plaintiffs would have prevailed on their claims, they would have established liability and antitrust injury for the entire Settlement Class.

*Second,* Class Counsel have extensive experience in antitrust and complex litigation, including in this Court, and have leveraged that experience to zealously advance the Settlement Class's interests. Counsel is committed to prosecuting this action to maximize the Settlement Class's recovery and have a proven track record of litigating efficiently and strategically to achieve that outcome. Rule 23(a)(4)'s requirements are met.

### 5.    Rule 23(b)(3): Common Questions of Fact or Law Predominate.

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This "is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Id.* at 625.

Establishing liability in this action requires resolution of a series of threshold issues that are common to the Settlement Class. The Court must determine whether Plaintiffs have identified a relevant market, a common question. *See In re Apple Pod iTunes Antitrust Litig.,* 2008 WL 5574487, at *4 (N.D. Cal. Dec. 22, 2008). The Court must determine whether Align and SDC entered an agreement to allocate the direct-to-consumer aligner market, and whether this agreement constituted *a per se* unreasonable restraint on trade or whether it should be evaluated under the rule of reason. *See id.*; *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). Finally, the impact of Align's conduct on the Settlement Class can likewise be established with common proof, including expert analysis based on a common methodology. The predominance requirement is met.

### 6.    Rule 23(b)(3): A Class Action is the Superior Method for Resolving this Litigation.

The superiority inquiry requires assessment of whether a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This requires assessment of whether the settlement will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated without sacrificing procedural fairness or

bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Here, it would be inefficient to litigate the common issues in countless individual proceedings because the Settlement Class is comprised only of SDC clear aligner purchasers with damages that are too small to justify individual litigation. Class treatment is superior to ensure that these Settlement Class Members have "the opportunity of meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig.*, 2008 WL 4447592, at *7 (N. D. Cal. Sept. 29, 2008).

**C.    The Proposed Notice Program Satisfies Rule 23.**

Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." In addition, for a Rule 23(b)(3) class, the court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The notice plan proposed here is the best practicable plan under the circumstances and, given the contact information available, should reach an unusually large segment of the Settlement Class. As set forth in the accompanying declaration of Cameron Azari, Epiq will use contact information provided by Align and SDC to direct email and/or mail notice to all or virtually all Settlement Class Members. Epiq will employ email verification tools to facilitate delivery, and further notice will be provided pursuant to a robust digital notice campaign. *See* Azari Decl., ¶¶ 31-38.

Notice will be provided in plain terms and easy-to-understand language. To encourage engagement, Epiq's initial Summary Notice (email and postcard) will be short-form versions of the Long Form Notice, which will be accessible on a settlement website. *See id.* at ¶ 41. All forms of notice will contain the information required by Rule 23(c)(2)(B) and the Procedural Guidance. *See* Procedural § 3 (Notice); Azari Decl., Exs. B-D. The Summary Email Notice and Summary Postcard Notice will provide unique identification numbers to potential Settlement Class Members and direct them to the Settlement Website where they can identify their settlement distribution, make a claim, and obtain coupon relief,

- 21 -

and gather additional information about the Settlement.

These notice provisions satisfy Rule 23 and will provide the Settlement Class with a fair opportunity to review and respond to the proposed Settlement.

**D.    The Court Should Appoint Interim Co-Lead Counsel as Settlement Counsel.**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g). All Rule 23(g) factors weigh in favor of appointing Hagens Berman Sobol Shapiro LLP as Settlement Class Counsel. If appointed, counsel will continue to vigorously pursue this action and devote all necessary resources toward obtaining the best possible result for the Settlement Class.

**E.    Proposed Schedule for Notice and Final Approval**

| Event | Proposed Deadline |
|---|---|
| Entry of Order Granting Preliminary Approval and Directing Notice | Subject to Court's Discretion |
| Notice Campaign and Claims Period Begins ("Notice Date") | 60 Days from production of information from SDC stored by Salesforce Inc. |
| Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards | 35 Days from Notice Date |
| Exclusion and Objection Deadline | 65 Days from Notice Date |
| Motion for Final Approval and Response to Objections | 85 Days from Notice Date |
| Claims Period Closes | 120 Days from Notice Date |
| Final Approval Hearing | At least 135 Days from Notice Date (at the convenience of the Court) |

## V.    CONCLUSION

Plaintiffs respectfully request that the Court approve the proposed Settlement Class, enter the accompanying Proposed Order preliminarily approving the Settlement and directing notice to the Settlement Class, appoint Hagens Berman Sobol Shapiro LLP as Class Counsel, and set a date for a hearing on the final approval of the Settlement.

DATED: August 29, 2024

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
Joseph M. Kingerski (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com
Email: joeyk@hbsslaw.com

Rio Pierce (SBN 298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Counsel for Plaintiffs*

'