**PAUL HASTINGS**

January 31, 2024

**The Honorable Vince Chhabria**
**U.S. District Court, Northern District of California**

Re:   Supplemental Brief re: Jan. 26, 2024 Order (*Simon* ECF No. 418; *Snow* ECF No. 530)

Dear Judge Chhabria:

*Snow* Exhibit 40 offers additional evidence, consistent with the evidence Align offered in its Motion for Summary Judgment ("Motion"), that Align terminated interoperability because of the patent litigation against 3Shape and its anticipation that 3Shape would raise equitable defenses if interoperability were not terminated. Align CEO Joe Hogan states that he "did push on [the need to terminate] pretty hard" but ultimately "[w]as convinced it had to be done." Ex. 40 at 1. Indeed, Mr. Hogan encourages using 3Shape's infringement as a selling point, since termination cannot be undone in light of the patent suits: "Look at this as a chance to put your reps in front of customers and ask how any company can violate 26 discrete filings of IP accidentally." *Id*. The inferences that can be drawn from Exhibit 40 are akin to those that can be drawn from Align's other submitted evidence: that Align terminated interoperability (at least in part) because it anticipated equitable defenses to patent infringement, and it had business issues with 3Shape, including infringement of Align's patents. These doom Plaintiffs' claims because Plaintiffs conceded that if anticompetitive malice was not the "sole reason" for termination, they "lose." *See* Jan. 25, 2024 Hr'g Tr. ("Tr.") at 40:18-24. It is blackletter law that, "[w]here a monopolist's refusal to aid a competitor is based partially on a desire to restrict competition, [courts] determine antitrust liability by asking whether there was a legitimate business justification for the monopolist's conduct." *Oahu Gas Serv., Inc. v. Pac. Res., Inc.*, 838 F.2d 360, 368 (9th Cir. 1988).

**I.   The Court May Infer That Align Terminated Interoperability Due to Patent Litigation and 3Shape's Anticipated Equitable Defenses Therein; This Creates an Insurmountable, At Minimum, Mixed Motive that Warrants Summary Judgment.**

The reasonable inferences that *can* be drawn from Exhibit 40 are consistent with, and support, Align's rationales for termination of interoperability, and are as follows:

i.   **Inference 1: Align publicly stated that "it terminated interoperability because of patent litigation" (*Snow* Ex. 40 at 4).** This is entirely consistent with Align's actual reason for termination, as reflected in copious other unrebutted and public evidence:

- Align's December 2017 message to doctors and press release. Pearl Ex. 34 (*Simon* ECF No. 360-35) ("Align . . . announced today that due to 3Shape's infringing conduct and the resulting litigation against [3Shape,] the company terminated . . . interoperability");

- Align's post-termination internal FAQs, which stated that "[d]ue to 3Shape's infringing conduct and the resulting litigation, we terminated our interoperability contract with 3Shape and will no longer be able to accept scan submissions for Invisalign clear aligner treatment and retention cases from TRIOS scanners in the United States effective January 17, 2018." Pearl Ex. 39 (*Simon* ECF No. 361-40);

**PAUL HASTINGS**

January 31, 2024
Page 2

- 3Shape's briefing in the ITC. Pearl Exs. 3, 43 (*Simon* ECF Nos. 360-4, 360-44) ("Align has also waived its right to pursue its infringement claims . . .");

- 3Shape's internal acknowledgement, confirmed by its Rule 30(b)(6) witness, that Align had to terminate interoperability in the U.S. in light of the patent litigation before the ITC. Pearl Exs. 1, 2 at 60:7-61:4 (*Simon* ECF Nos. 361-4, 361-5);

- The testimony of Align CEO Joe Hogan. Pearl Ex. 6 (*Simon* ECF No. 361-8);

- Align's May 2018 statement at the AAO conference. Lambert Ex. 44 (*Simon* ECF No. 394-45) ("we had to make the decision in the United States to not take 3Shape scans because it's a rule at one of the forums where we are. It's a technical, legal reason").

As the Court recognized, Align is relying on non-privileged evidence to establish its valid business justification. *See* Order Denying Mot. to Preclude (*Simon* ECF No. 227) (noting it is "unlikely . . . that questions relating to the legitimacy of the positions Align took regarding its patents cannot be adjudicated without reference to privileged materials").

ii. **Inference 2: 3Shape made clear that it would "vigorously defend itself against Align's patent claims."** Align reasonably anticipated that 3Shape would assert all possible defenses, including equitable defenses (which 3Shape did then actually assert).

iii. **Inference 3: Hogan "[w]as convinced [termination] had to be done" after "push[ing] on [the need to terminate] pretty hard."** And 3Shape actually argued that Align's acceptance of scans for even three months after initiating the patent cases amounted to a waiver of Align's valuable patent claims. *See* Pearl Ex. 3 at 70 (*Simon* ECF No. 360-4) ("Align's conduct, including the continued authorization of Trios scans stemming from [interoperability] after filing suit was similarly inconsistent with its intent to enforce its rights").

iv. **Inference 4: Align wanted to beat 3Shape on the merits in the marketplace.** Align is entitled to want to beat a competitor in the marketplace, because "even the intent to harm a competitor" is "not sufficient alone to establish [refusal to deal] liability," because "[c]ompetitors are not required to engage in a lovefest." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) (citations omitted).

The following inferences are not reasonable and ***cannot*** be drawn from Exhibit 40:

i. ***Cannot*** **infer that Align's concern about 3Shape's defenses was pretextual.** Exhibit 40 nowhere suggests that Align's concern for 3Shape's defenses was pretextual. Unlike the testimony regarding pretext in *Kodak*, where a Kodak employee represented that he had never heard of a patent-based rationale,[1] Exhibit 40 indicates that a patent-based rationale was in fact on the minds of Align executives at the time of termination. Nor does the statement that "[w]e are hurting them right now" undermine that inference. The decision

---

[1] *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1219 (9th Cir. 1997) (citing testimony by Kodak employee "that patents 'did not cross [his] mind' at the time Kodak began the parts policy").



January 31, 2024
Page 3

        to terminate occurred four months before that statement. But even if it had not, the statement would not dispel a patent-based rationale, but at best would add an *additional* rationale. And if there are two rationales, Plaintiffs cannot prevail.

    ii.    ***Cannot* infer that the patent litigation itself was pretextual.** Plaintiffs have made no attempt to show sham patent litigation or *Walker Process* fraud nor could they prove such a theory in light of the Align-3Shape settlement and, in fact, have disavowed such theories. Tr. at 6:5-19 ("So for purposes of this case, I have to assume that . . . lawsuit was legitimate."). Plaintiffs also cannot challenge Align's patent suits through an unpled and unproven "patent misuse" theory. Patent misuse is an equitable defense to an infringement claim, not an affirmative claim and not a way around the *Noerr-Penington* doctrine. In any event, their "patent" expert refused to offer an opinion on patent misuse by Align. Pearl Ex. 73, ¶ 63 (*Simon* ECF No. 361-68). For good reason: "It is not misuse of patent rights for a patentee to deal only with those with whom it pleases," and not an infringer. *Sheet Metal Duct, Inc. v. Lindab, Inc.*, No. CIV. A. 99-6299, 2000 WL 987865 (E.D. Pa. July 18, 2000) (citing *W .L. Gore & Assocs. v. Carlisle Corp.,* 529 F.2d 614, 624 (3d Cir. 1976).

    iii.    ***Cannot* draw negative inference based on the privilege**. Neither the Court nor a jury may draw negative inferences from Align's invocation of the attorney-client privilege. *See, e.g.*, *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) ("[B]ecause of the constitutional nature of the right implicated, an adverse inference from an assertion of one's privilege not to reveal information is too high a price to pay."). A negative inference would "intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004).

        Align established in its Motion through the above, non-privileged evidence (including press releases, public statements, and 3Shape's own documents) that it terminated interoperability after it filed the patent suits because Align feared 3Shape's equitable defenses. Plaintiffs have no evidence whatsoever to rebut this (and actual evidence supports Align's position) and Exhibit 40 does not help them on pretext. Nothing more is needed for the Court to decide summary judgment in Align's favor because Plaintiffs are, at best, left with a mixed motive case where only one motive is posited by Plaintiffs to be impermissible among multiple other permissible motives. Plaintiffs conceded at oral argument that a refusal to deal that is based on both permissible and impermissible motives does not result in antitrust liability. *See* Tr. at 40:18-24 (*Simon* Plaintiffs conceding that "if no reasonable juror could conclude that the sole reason for termination of interoperability was this, sort of, anticompetitive purpose, then you lose"); *Snow* Opp. Br. at 16 (conceding that patent rationale must play "no part" in Align decision making).[2] That concession is required by binding Ninth Circuit law. As explained in *Oahu Gas*, a duty to deal will "arise *only* when there is no justification for refusing to aid a competitor." 838 F.2d at 368. By contrast, "[w]here a monopolist's refusal to aid a competitor is based partially on a desire to restrict competition, we determine antitrust liability by asking whether there was a legitimate business justification for the

---

[2] Align maintains that *Qualcomm*, *Aerotec*, and *MetroNet* established a test based on whether there is a "conceivable rationale." *See* SJ Br. at 3. But Align prevails under any standard.



January 31, 2024
Page 4

monopolist's conduct." *Id.*; *see also Allied Orthopedic Appliances, Inc. v. Tyco Health Care Grp. L.P.*, No. CV 05-06419 MRP (AJWx), 2008 WL 7346921, at *11, *20 (C.D. Cal. July 9, 2008) (granting summary judgment under *Oahu* based on existence of legitimate rationale for conduct).

This rule has been consistently applied in refusal to deal cases and Section 2 cases more broadly. *See, e.g.*, *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1259 (9th Cir. 1990) (concluding that evidence of a defendant's desire to "wound" a competitor with allegedly anticompetitive hirings was insufficient as the evidence also showed that the defendant's "primary motivation was to obtain a productive employee for itself"); *High Tech. Careers v. San Jose Mercury News*, No. CIV. 90-20579 SW, 1995 WL 115480, at *5 (N.D. Cal. Mar. 14, 1995) (instructing jury: "Even if you find that the Mercury News was partially motivated to restrain competition, there is no antitrust liability if there was any legitimate business reason for the Mercury News' refusal to deal."); Model Jury Instrs. in Civ. Antitrust Cases, Ch. 3 § 2 (Am. Bar Ass'n June 2016), ABA-JI-CIVANTI 3.B.2 (mixed motive instruction in refusal to deal cases).

Exhibit 40 and similar evidence leave undisputed that the patent litigation and Align's anticipation of equitable defenses were reasons for termination. That is determinative.

**II.    Align Did Not Impliedly Waive Privilege Based on This Document (or Others), Making Preclusion Unwarranted and Improper.**

Plaintiffs have not established, but may argue, implied waiver and preclusion. *See Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (setting out implied waiver elements). Align has not taken "an affirmative act" that puts the privilege information "at issue" because it does not "attempt to justify its [behavior] on the basis of its counsel's recommendations." *Id.* at 1327.[3]

The decision in *FTC v. Qualcomm* rejecting the FTC's implied waiver argument is directly comparable to this case. The Court explained that Qualcomm did not intend to "offer testimony or other evidence that its patents are fundamental or important *because of the privileged advice*, nor would it "offer any testimony that relies on privileged documents or the legal advice they embody." No. 17-CV-00220-LHK, 2018 WL 6460529, at *2 (N.D. Cal. Dec. 10, 2018). This case is similar: Align has not put forward an advice-of-counsel defense. It cannot be that the privilege is waived or preclusion results any time a defendant provides a rationale for its conduct for which it received some legal advice. This would implicate waiver and preclusion issues in a wide range of cases as there will almost always be attorney advice behind decisions to file suits or enter or exit contracts.

Although it is improper to draw a negative inference based on Align's assertion of privilege, if the Court intends to do so, it should require additional briefing in light of the cases' posture—discovery is closed and Plaintiffs never moved to compel regarding privilege redactions. To be clear, neither Exhibit 40 nor the privileged communication therein is necessary to grant summary judgment (it was offered by *Snow* only in opposition on an issue other than refusal to deal).

---

[3] Access to the information is not "vital" to Plaintiffs because the *merits* of Align's patent claims are not at issue. As the Court observed, experts "pontificating" on the strength of equitable defenses is not the proper focus. Tr. at 55.

January 31, 2024
Page 5

Sincerely,

*/s/ James M. Pearl*

Bo Pearl
of PAUL HASTINGS LLP

BP