Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com

Rio Pierce (SBN 298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MISTY SNOW, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br> v.<br><br>ALIGN TECHNOLOGY, INC.,<br><br>         Defendant. | Case No. 3:21-cv-03269-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**<br><br>Date:  November 20, 2025<br>Time:  2:00 PM<br>Judge:  Hon. Vince Chhabria<br>Location: Courtroom 4 – 17th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 20, 2025, at 2:00 PM or as soon thereafter as the matter may be heard by the Honorable Vince Chhabria of the United States District Court for the Northern District of California, located in Courtroom 4, at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs will and hereby do move the Court for an award of attorneys' fees, reimbursement of expenses, and service awards. This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations in support of the motion, argument by counsel at the hearing before this Court, any papers filed in reply, such oral and documentary evidence as may be presented at the hearing of this motion, and all papers and records on file in this matter.

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ................................................................................................ 1

II.   THE WORK UNDERTAKEN BY CLASS COUNSEL ......................................................... 2

    A.   Class Counsel conducted a thorough investigation to bring novel claims against Align. ............................................................................................. 2

    B.   Class Counsel engaged in substantial discovery efforts on behalf of the Settlement Class. ................................................................................................ 3

        1.   Class Counsel completed substantial written and document discovery. ............................................................................................. 3

        2.   Class Counsel took and defended 22 depositions. ............................................ 4

    C.   Class Counsel and their experts undertook a large amount of expert discovery and analysis critical to the litigation of the case. ........................................ 4

    D.   Class Counsel settled strategically with Align to maximize recovery for the Settlement Class. .................................................................................... 5

III.   ARGUMENT ............................................................................................................................... 5

    A.   Class Counsel request a reasonable percentage of the fund. ...................................... 6

        1.   Class Counsel achieved exceptional results for the Settlement Class. ...................................................................................................... 7

        2.   This case posed significant risks and challenges. ............................................ 7

        3.   The market rate for antitrust class actions supports the fee request. ....................................................................................................... 8

        4.   The burdens faced by Class Counsel support the fee request. ........................ 8

        5.   Class Counsel's litigation on a contingency basis supports the fee request. ....................................................................................................... 9

    B.   A lodestar cross-check confirms the reasonableness of the requested fees. ........................................................................................................................... 9

    C.   Class Counsel's litigation expenses are reasonable and reimbursable. .................... 10

    D.   Service fees of $7,500 are warranted. ....................................................................... 12

IV.   CONCLUSION ........................................................................................................................ 13

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Animation Workers Antitrust Litig.*,
 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ...................................................................10

*In re Anthem, Inc. Data Breach Litig.*,
 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .....................................................................6

*In re Apple Inc. Device Perf. Litig.*,
 2021 WL 1022866 (N.D. Cal. Mar. 17, 2021) .....................................................................6

*Brown v. Hain Celestial Grp., Inc.*,
 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ......................................................................12

*Brown v. Tetra Tech, Inc.*,
 2025 WL 1400295 (E.D. Cal. May 14, 2025) ....................................................................12

*Cameron v. Apple Inc.*,
 2022 WL 22954126 (N.D. Cal. June 10, 2022) ..................................................................11

*In re Capacitors Antitrust Litig.*,
 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...........................................................5, 9, 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2016 WL 3648478 (N.D. Cal. July 7, 2016) ........................................................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .......................................................................8

*In re Corel Corp., Inc. Secs. Litig.*,
 293 F. Supp. 2d 484 (E.D. Pa. 2003) ...................................................................................7

*de Mira v. Heartland Emp. Serv., LLC*,
 2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .....................................................................6

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
 307 F.3d 997 (9th Cir. 2002) ...............................................................................................5

*In re Google Play Dev. Antitrust Litig.*,
 2024 WL 150585 (N.D. Cal. Jan. 11, 2024) ......................................................................11

*In re High-Tech Emp. Antitrust Litig.*,
 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .......................................................................9

*In re High-Tech Emp. Antitrust Litig.*,
 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .......................................................................7

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975) ..................................................................................................10

*In re Lidoderm Antitrust Litig.*,
   2018 WL 11375216 (N.D. Cal. Sept. 20, 2018) ........................................................................8

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ..........................................................................7

*McDonald v. CP OpCo, LLC*,
   2019 WL 2088421 (N.D. Cal. May 13, 2019) ........................................................................12

*Meijer, Inc. v. Abbott Labs.*,
   2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........................................................................8

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
   *aff'd*, 768 F. App'x 651 (9th Cir. 2019) .................................................................7, 9, 11, 12

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .............................................................................................6, 10

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2022 WL 2803114 (S.D. Cal. July 15, 2022) .........................................................................11

*Resurrection Bay Conserv. Alliance v. City of Seward*,
   640 F.3d 1087 (9th Cir. 2011) ................................................................................................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..................................................................................................12

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ....................................................................................................9

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ..................................................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................................................................8

*Veridian Credit Union v. Eddie Bauer LLC*,
   2019 WL 5536824 (W.D. Wash. Oct. 25, 2019) ....................................................................12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................................................9

**RULES**

Fed. R. Civ. P. 23 ..............................................................................................................................1

## OTHER AUTHORITIES

Davis & Kohles, *Report: Class Action Filings in Federal Court* (2021), *available at*:
  https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782 ................................................. 8

Davis & Kohles, *Report: Class Action Filings in Federal Court* (September 2023),
  *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586022 ........................... 6

Theodore Eisenberg *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L.
  Rev. 937, 952 (2017) .............................................................................................................. 8

## I. PRELIMINARY STATEMENT

After more than three years of active litigation, Plaintiffs reached a settlement with Align that secures a $31.75 million cash fund on behalf of a class of individuals who purchased clear aligner treatment from the now-defunct SmileDirectClub ("SDC"). The $31.75 million cash fund is non-reversionary, and a sizable portion of the Settlement Class,[1] numbering more than 200,000 individuals, will receive direct payments without submitting claims. In addition to the automatic payments, more than 117,000 potential individual class members have already submitted claims, and the claims period will remain open until the end of October. In total, more than 300,000 individuals are already likely to receive payment as a result of this settlement, representing approximately 25% of the class.

This Court preliminarily approved the Settlement on May 28, 2025 and, in accordance with the Court's Order, Class Counsel now move for (a) an award of attorneys' fees in the amount of 25% of the settlement fund; (b) reimbursement of litigation expenses totaling $2,805,247.67; and (c) service awards of $7,500 for each of the three class representatives. These are reasonable requests that warrant approval under Rule 23 and prior decisions approving similar requests within this judicial district.

The requested fee award is in line with this Circuit's 25% benchmark. In addition, the requested fees would result in a 1.19 lodestar multiplier, which is a fraction of the multipliers regularly approved in this district. A modest multiplier is justified here. The Settlement's $31,750,000 million common fund represents up to 17.5% of the Settlement Class's single damages, which is comparable to the range of

---

[1] The settlement class is defined as follows:

> All persons in the United States that purchased, paid and/or provided reimbursement for some or all of the purchase price for SmileDirectClub aligners acquired for personal use during the period beginning October 22, 2017 until August 18, 2022 (the "Class Period"). Excluded from the Settlement Class are: (i) Defendant, its subsidiaries, affiliate entities and employees, (ii) any current or former Officers and directors of Align; (iii) any firm or entity in which any Defendant has or had a controlling interest; (iv) Defendant's liability insurance carriers; (v) all federal or state government entities or agencies; (vi) Counsel for Plaintiffs and Defendants, including all employees; (vi) the judge presiding over the case and his immediate family members and staff; and (vii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such. Also excluded from the Settlement Class are any persons or entities that exclude themselves by submitting a request for exclusion that is accepted by the Court.

*See* ECF No. 675 at 2.

settlements in antitrust cases approved in this district.

Further, Counsel achieved these results despite facing significant risks and challenges. Plaintiffs presented a novel market allocation claim under Section 1 of the Sherman Act based on substantial independent research and investigation. Notwithstanding the Court's initial skepticism of this claim (*see* ECF No. 96 at 7), Class Counsel went on to litigate the case with dogged and efficient work, culminating in a comprehensive class certification motion supported by detailed expert reports: on the eve of the class certification hearing, the Court indicated that it was "inclined to deny" Align's motion to exclude Plaintiffs' expert. *See* ECF No. 594. Recognizing the strength of their case, but also the risks of a negative outcome (including the possibility that the class could be significantly narrowed through arbitration), Class Counsel reached a settlement on favorable terms before a determination on class certification.

As for expenses, Class Counsel seek reimbursement only for expenditures reasonably incurred to prosecute the action. Most expenses were for three different experts who developed the economic and factual foundation for Plaintiffs' case and, in doing so, positioned Plaintiffs to secure a favorable settlement. Each of these experts did extensive work, including preparing detailed expert reports and sitting for deposition. Class Counsel's request for reimbursement is supported by detailed invoices substantiating the expenses and their reasonableness.

Class Counsel's request for $7,500 service awards is likewise reasonable in light of each class representative's commitment to the Class and investment of time in this case, including responding to extensive discovery requests and sitting for depositions. Further, the requested service awards are in line with those routinely awarded in this district.

For these reasons, Plaintiffs respectfully request that their motion be granted in full.

## II.   THE WORK UNDERTAKEN BY CLASS COUNSEL

### A.   Class Counsel conducted a thorough investigation to bring novel claims against Align.

Class Counsel's initial Section 1 claim against was predicated on extensive analysis of Align's conduct and applicable antitrust law. Pierce Decl. ¶ 8. Specifically, after Class Counsel filed their initial complaint in May 2021 against Align alleging only a monopolization scheme under Section 2 of the

Sherman Act,[2] they began investigating Align's relationship with SDC—and subsequently moved to amend their complaint in October 2021 to allege an illegal market allocation agreement between the two companies in violation of Section 1 of the Sherman Act. *See* ECF No. 61. After successfully defeating Align's motion to dismiss that claim (*see* ECF Nos. 96, 97), as well as its motion for reconsideration of the Court's motion to dismiss order (*see* ECF No. 115), Class Counsel went onto to file—again over Align's objection—an unusually detailed amended complaint that drew on documents and deposition testimony to describe the history, purpose, and effect of this agreement. *See* ECF Nos. 294 (Fifth Amended Complaint), 365 (order granting leave to amend).

**B.    Class Counsel engaged in substantial discovery efforts on behalf of the Settlement Class.**

**1.    Class Counsel completed substantial written and document discovery.**

Plaintiffs propounded detailed written discovery; altogether, the parties propounded more than 674 document requests and interrogatories. Class Counsel also issued subpoenas to third parties for data and documents, most notably including a subpoena to Align's co-conspirator, SmileDirectClub. Pierce Decl. ¶¶ 11-14. Class Counsel also responded to written discovery propounded by Align.

The parties' broad discovery requests generated a massive discovery record that Class Counsel analyzed to develop their claims. In total, Plaintiffs obtained documents from multiple Align custodians and several third parties; more than 500,000 documents constituting approximately 2.5 million pages were ultimately produced in this litigation. Align and SDC also produced extensive transactional dataset that Plaintiffs and their experts extensively analyzed. *Id.* ¶¶ 11-14. Class Counsel spent thousands of hours analyzing Align's (and third parties') documents and discovery responses.

To obtain this discovery, Plaintiffs brought and prevailed, at least in part, on four contested motions to compel (with some of the results summarized below) that resulted in Plaintiffs obtaining critical discovery from Align and SDC related to their Section 1 claims.

| Discovery letter brief | Date filed | Outcome |
|---|---|---|
| Joint Discovery Letter Brief Regarding Plaintiffs' Requests for Production, ECF No. 169 | Sept. 23, 2022 | Granted in part, ECF No. 176 |
| Motion to Compel Additional Section 1-Related Discovery, ECF No. 185 | Oct. 6, 2022 | Granted in part, ECF No. 231 |

---

[2] Plaintiffs' monopolization claims under Section 2 (and related state laws) were generally litigated on a separate track; the Court granted Align's motion for summary judgment on those claims on February 21, 2024 (ECF No. 548).

| **Discovery letter brief** | **Date filed** | **Outcome** |
|---|---|---|
| Joint Letter Brief Regarding Plaintiffs' Requests for Production from Non-Party SmileDirectClub, Inc., ECF No. 204 | Oct. 18, 2022 | Granted in part, ECF No. 231 |
| Joint Discovery Letter Brief Regarding Plaintiffs' Requests for Production from Non-Party SmileDirectClub, Inc., ECF No. 307 | April 5, 2023 | Granted, ECF No. 320 |

These motions necessitated large amounts of time for meet-and-confers, briefing, and hearing preparation. And the underlying discovery disputes touched on issues critical to the case. For instance, following protracted negotiations with Align, Plaintiffs successfully moved to compel Align to run a significant number of new search terms across a variety of new custodians—a request that led to the production of documents, and later deposition testimony, critical to Plaintiffs' class certification motion and expert reports. Pierce Decl. ¶ 13. Similarly, the resolution of Plaintiffs' discovery disputes with SDC required substantial, contentious negotiations and multiple rounds of motion practice, and ultimately resulted in Judge Hixson finding that SDC made a "significant" breach of its agreement to produce documents to Plaintiffs—and granting in full Plaintiffs' request that it produce relevant documents that also proved critical to Plaintiffs' case. *See* ECF No. 320.

### 2. Class Counsel took and defended 22 depositions.

Plaintiffs took or defended 22 depositions in connection with their Section 1 claim, including twelve fact witness depositions and four expert depositions. These depositions included a number of high-level Align and SDC representatives, including the CEOs of both companies. Pierce Decl. ¶ 11. In addition, Plaintiffs served 30(b)(6) deposition notices on both Align and SDC with 18 and 28 topics, respectively, and deposed their corporate designees in both individual and 30(b)(6) capacities. They also prepared extensively for, and defended, three expert and three class representative depositions. *Id.*

### C. Class Counsel and their experts undertook a large amount of expert discovery and analysis critical to the litigation of the case.

As with many antitrust actions, Plaintiffs' affirmative case required extensive expert analysis of the market and economic effects of the challenged conduct. Over the course of the litigation, Class Counsel worked closely with a team of consulting and testifying experts, including an economist (Dr. William Vogt), a marketing expert (Professor Narasimha Mummalaneni), and an expert on investments and strategic transactions (Max Holmes). *See id.* ¶¶ 16-17.

These experts' work culminated in four comprehensive combined merits and class certification reports that were served prior to class certification. The reports totaled hundreds of pages exclusive of backups. Dr. Vogt addressed both liability and class certification issues, including the relevant antitrust market, common evidence of Align's conduct, and antitrust impact, and constructed several classwide damages models. Professor Mummalaneni analyzed SDC's pricing strategy and marketing strategy, and responded to the opinions of Align's experts on these topics. Finally, Mr. Holmes analyzed the commercial agreements between Align and SDC—as well as comparable commercial agreements between other companies—and responded to the opinions of Align's expert on this topic. After reports were submitted, all three experts were deposed by seasoned antitrust counsel. *See id.*

### D. Class Counsel settled strategically with Align to maximize recovery for the Settlement Class.

When the parties reconvened for mediation in early 2024, discovery (both fact and expert) had developed to the point where Class Counsel fully understood the strengths and challenges of the case. As Plaintiffs previously explained in their Renewed Motion for Preliminary Approval, Plaintiffs' case had a number of strengths (*see* ECF No. 628 at 12–21), including both (1) strong evidence that the written agreement prohibiting Align from competing with SDC (the "restrictive covenant") was intended to, and in fact did, prevent Align from entering the market for direct-to-consumer aligners, and thus allowed SDC to raise prices above competitive levels; and (2) strong grounds for class certification, which this Court appeared to recognize when, on the eve of the class certification hearing, it indicated it was "inclined to deny" Align's motion to exclude Plaintiffs' expert. *See* ECF No. 594. But Plaintiffs also faced substantial challenges, including the risk that Align would succeed in significantly narrowing the class by moving to enforce class members' arbitration and/or class waiver provisions under certain states' laws. *See* ECF No. 628 at 19–20. By settling, Class Counsel ensured that all class members nationwide receive meaningful and immediate relief.

### III. ARGUMENT

In the Ninth Circuit, district courts may use either the "percentage-of-the-fund" or "lodestar" method to calculate reasonable attorneys' fees. *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Where, as here, the settlement provides a cash recovery or common fund, the percentage-of-the-fund methodology is "preferred." *In re Capacitors Antitrust Litig.*, 2018 WL

- 5 -

4790575, at *2 (N.D. Cal. Sept. 21, 2018) ("*Capacitors*"). The benefits of the percentage-of-the-fund method are threefold. First, it ensures that "Class Counsel are incentivized to achieve the best possible result." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018). Second, it is consistent "with contingency fee calculations in the private market." *In re Apple Inc. Device Perf. Litig.*, 2021 WL 1022866, at *2 (N.D. Cal. Mar. 17, 2021). Third, it "reduc[es] the burden on the courts that a complex lodestar calculation requires." *Id.*

While the percentage-of-the-fund method is appropriate in this case, Class Counsel's fee request is equally reasonable using the lodestar approach, as shown below.

### A. Class Counsel request a reasonable percentage of the fund.

When applying the percentage-of-the-fund method, the Ninth Circuit has established a benchmark percentage of 25 percent to be used as the "starting point" for analysis. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949, 955 (9th Cir. 2015). "That percentage amount can then be adjusted upward or downward depending on the circumstances of the case." *de Mira v. Heartland Emp. Serv., LLC*, 2014 WL 1026282, at *1 (N.D. Cal. Mar. 13, 2014). Courts in this district have recognized that "in most common fund cases, the award *exceeds* the benchmark." *Id.* (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)). In the 2022 Antitrust Annual Report, scholars from UC San Francisco found that among antitrust class action settlements surveyed between 2009 and 2022, the median fee awarded for settlements between $10 and $49 million was 30 percent.[3]

The requested fee award here is 25 percent, or approximately $7.9375 million (excluding interest) of the $31.75 million cash Settlement Fund. This is well within, and in fact modestly lower than, the range of approved amounts, and is reasonable under all applicable considerations identified by the Ninth Circuit: "[1] [T]he extent to which class counsel achieved exceptional results for the class, [2] whether the case was risky for class counsel, [3] whether counsel's performance generated benefits beyond the cash settlement fund, [4] the market rate for the particular field of law (in some circumstances), [5] the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and [6] whether the case was handled on a contingency basis." *Online DVD*, 779 F.3d at 954–55.

---

[3] *See* Davis & Kohles, *2022 Antitrust Annual Report: Class Action Filings in Federal Court* at 32 (September 2023), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4586022.

### 1. Class Counsel achieved exceptional results for the Settlement Class.

If the Settlement Class were to obtain class certification, survive summary judgment, and prevail on all claims at trial, its members would stand to recover between $181 million and $485 million in single damages. *See* ECF No. 540, Ex. 5 at 380-82. The $31.75 million common fund thus represents between 6.5 and 17.5 percent of those single damages.

This is an excellent recovery. A 2015 study of 71 antitrust settlements shows a weighted mean recovery of 19 percent of single damages. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *7, n.19 (N.D. Cal. July 7, 2016). The recovery here is in line with that mean. Courts in this district "routinely approve" settlements with recoveries below 15 percent of single damages. *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015). Even in megafund cases, "20% recovery of damages or less[] … have justified upward departures from the 25 percent benchmark." *See In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (citing cases) ("*NCAA*"). In fact, courts have awarded fees of 30 percent and more for settlements recovering less than 20 percent of class damages.[4]

### 2. This case posed significant risks and challenges.

"Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020). "The 'best' case can be lost and the 'worst' case can be won, and juries may find liability but no damages. None of these risks should be underestimated." *Id.*

As set forth in more detail in Plaintiffs' Renewed Motion for Preliminary Approval, the risks were particularly weighty here. To survive summary judgment and recover at trial, Plaintiffs would need to overcome numerous material defenses Align was positioned to mount, including on issues related to procompetitive justifications, damages, and the viability of Plaintiffs' claims under both the per se rule and the rule of reason. ECF No. 628 at 16–21. Plaintiffs also faced the risk that their nationwide class

---

[4] *See* Order Granting Award of Attys.' Fees, Reimb. of Expenses and Incentive Payments, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819-CW (N.D. Cal. Oct. 14, 2011), ECF No. 1407 (33 percent awarded to IPP counsel); *Id.* at ECF No. 1375 (showing that 33 percent awarded, $41.322 million, was 15 percent of possible damages estimated by IPPs' expert in *SRAM*); *In re Corel Corp., Inc. Secs. Litig.*, 293 F. Supp. 2d 484, 489-90, 498 (E.D. Pa. 2003) (1/3 fee awarded from settlement fund that comprised about 15 percent of damages).

would be significantly narrowed if Align succeeded in compelling arbitration against and/or enforcing class action waivers against certain class members based on language in their contracts with SDC—which in practice could have limited the class to SDC purchasers residing only in a subset of states and thus significantly reduced the damages available to classmembers. *Id.* at 19–20. While Class Counsel believe their antitrust theories are sound, nothing is certain in litigation. Adverse findings on any number of issues could have led to zero recovery for the Settlement Class.

Class Counsel's ability to secure a large settlement fund in the face of these risks supports the requested fees.

### 3. The market rate for antitrust class actions supports the fee request.

An analysis for the 2020 Antitrust Annual Report[5] found that among antitrust class action settlements between 2009 and 2020, the median fee awarded for funds in the $10-$49 million range was 31 percent—and only in the $250-$499 million range (and higher) did the median fee percentages drop to 25 percent. A prior 2017 study of 19 antitrust settlements with a mean recovery of $501 million and a median recovery of $37 million likewise found that the mean and median fee awards were 27 percent and 30 percent, respectively. *See* Theodore Eisenberg *et al.*, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2017). These studies comport with decisions in this district, where above-benchmark fees are often awarded in antitrust class actions.[6] Plaintiffs' request for 25% of the Settlement Fund is thus well within the range of approved amounts for comparable settlements both nationally and in this district.

### 4. The burdens faced by Class Counsel support the fee request.

This litigation has been pending for more than three years. Class Counsel has advanced millions of dollars out-of-pocket, devoted substantial time to this litigation (approximately 11,747 hours), and

---

[5] Davis & Kohles, *2020 Antitrust Annual Report: Class Action Filings in Federal Court* (2021), *available at*: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3898782.

[6] *See, e.g.*, *In re Lidoderm Antitrust Litig.*, 2018 WL 11375216, at *3 (N.D. Cal. Sept. 20, 2018) (27 percent); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (27.5 percent); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (28.6 percent); *Meijer, Inc. v. Abbott Labs.*, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (33 percent).

forewent other profitable work to prosecute this action. Pierce Decl. ¶ 19, Exs. 1-2. These are substantial burdens even for established class action firms.

### 5. Class Counsel's litigation on a contingency basis supports the fee request.

A fair fee award should consider the contingent nature of the representation. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). As courts recognize, "contingent fees are good for clients and the public alike" and there should be "a significant upside fee for successful contingent representations." *NCAA*, 2017 WL 6040065, at *4. This matter was litigated purely on a contingent basis, with no upfront retainer or allowance for expenses. *See* Pierce Decl. ¶ 26. While this incentivized efficiency and prioritized results, Class Counsel was faced with a real risk of receiving no reimbursement at all.

## B. A lodestar cross-check confirms the reasonableness of the requested fees.

Class Counsel have a combined lodestar of $6,643,132.50 in connection with the Section 1 portion of this case. Pierce Decl. ¶¶ 19-22, Exs. 1-2.[7] The 25% (or approximately $7.9375 million before interest) fee request represents a 1.19 multiplier of this lodestar amount, which is well within the range of multipliers approved in this judicial district and in other class action settlements.[8] The Ninth Circuit has affirmed a 6.85 multiplier, holding that it "falls within the range of multipliers that courts have allowed." In *Vizcaino*, a leading Ninth Circuit case on attorneys' fees, the Court affirmed a fee award with a 3.66 multiplier. *See* 290 F.3d at 1050-51; *see id.* at 1051 n.6 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)) (cleaned up).[9]

Class Counsel's lodestar calculation here is also conservative. It does not include time spent on

---

[7] To determine this total, Class Counsel carefully reviewed the billing records of all timekeepers on the case to allocate time to the Section 1 portion of the case. *Id.*

[8] Class Counsel's lodestar is properly based on current rather than historical hourly rates. *See Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016); *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016).

[9] *See also Capacitors*, 2018 WL 4790575, at *6 ("[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases such as this."); *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *11 (N.D. Cal. Sept. 2, 2015) (multiplier of 2.2 "in line with the vast majority of megafund settlements.").

this fee motion, and the lodestar will increase through final approval, distribution of the settlement funds, and any appeals. The lodestar also reflects Class Counsel's sustained efforts to manage attorney time and eliminate unnecessary work. Class Counsel maintained contemporaneous billing records throughout this litigation and has deleted any duplicative and non-compensable time. *See* Pierce Decl. ¶ 19. And finally, Class Counsel's billing rates do not exceed prevailing rates in this market. *See In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (holding as of 2016 that hourly rates ranging from $275 to $1,200 were "fair, reasonable, and market-based").

A multiplier of 1.19 is further supported by the *Kerr* "reasonableness" factors courts often evaluate in this context.[10] This action involved novel issues arising from the application of antitrust law to a non-compete agreement between two horizontal competitors (Factor 2), demanding substantial attorney time (Factor 1) as well as specialized legal and economic acumen (Factor 3). Class Counsel are among the most respected class action law firms in the country (Factor 9) and, given the demands of this case, reallocated resources that would otherwise be devoted to other matters (Factor 4). *See* Pierce Decl. ¶ 37. Class Counsel's fee request is consistent with awards in comparable cases (Factors 5 and 12) and the Class's recovery—the most critical consideration—is in line with the benchmark for antitrust class actions (Factor 8).[11]

With all applicable *Kerr* factors supporting a multiplier of at least 1.19, a fee award in the amount requested will not overcompensate Class Counsel for their labors.

**C.  Class Counsel's litigation expenses are reasonable and reimbursable.**

In common fund cases, "counsel should receive reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement." *Capacitors*, 2018 WL 4790575, at *6. As the Ninth Circuit has recognized, "litigation expenses make the entire action possible." *Online DVD*, 779 F.3d at 953.

---

[10] These factors derive from the Ninth Circuit's decision in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

[11] *Kerr* Factors 6 and 10—the contingent nature of the fee and "desirability" of the case—have been questioned by the Supreme Court. *See Resurrection Bay Conserv. Alliance v. City of Seward*, 640 F.3d 1087, 1095 n.5 (9th Cir. 2011). Plaintiffs' foregoing summary accordingly omits these factors, as well as Factors 7 and 11—"time limitations imposed by the client or the circumstances" and "the nature and length of the professional relationship with the client"—which do not readily apply here.

Here, Class Counsel's unreimbursed expenses of $2,805,247.67 were reasonably incurred and necessary for the litigation of the case. Pierce Decl. ¶¶ 25-33, Ex. 3. Expert witnesses constitute the largest expenditures, $2,613,920.51, or approximately 93% percent of all expenses incurred. *Id.* ¶¶ 29-31, Ex. 4. Expert analysis was critical to prosecuting this action and the comprehensive class certification and merits reports prepared by Plaintiffs' three experts—which together spanned more than five hundred pages—were a driver of the Settlement. Plaintiffs' expert fees are in line with those in other antitrust cases; courts have recognized these are a "a substantial but necessary burden in any antitrust action." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *5 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (approving $3,184,274.38 in expenses where "primary" cost was experts). For example, a court in this district recently approved $4,422,740.98 in costs, including approximately $3.8 million in expert costs, as part of pre-class certification settlement of antitrust claims. *See In re Google Play Dev. Antitrust Litig.*, 2024 WL 150585, at *4 (N.D. Cal. Jan. 11, 2024). Other courts have routinely granted similar amounts of expert costs in antitrust cases, including those that settled pre-class certification. *Cameron v. Apple Inc.*, 2022 WL 22954126, at *9 (N.D. Cal. June 10, 2022) (finding $3,500,000 in costs, including approximately $2,600,000 in expert costs, "reasonable, fair, and adequate" as part of pre-class certification settlement of antitrust claims); *In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 2803114, at *3 (S.D. Cal. July 15, 2022) ($3,226,002.90 in expert costs in antitrust action "in line with those approved by courts in this District").

Other notable expenses include the creation and maintenance of an electronic document database, which hosted the voluminous discovery record, and deposition costs. *Id.* ¶¶ 32-33.[12] Plaintiffs have also excluded all costs solely associated with their separate Section 2 claim (such as expert fees related solely to that claim or costs related to depositions taken solely in the Section 2 action) and equally divided costs shared between the two claims (such as costs associated with document storage). *Id.* ¶¶ 31-33. Plaintiffs chose this approach for equally dividing costs associated with document storage because the documents produced in both the Section 1 and Section 2 cases were available for Plaintiffs to use (and were in fact used) in litigating the Section 1 claim.

---

[12] Invoices for these primary expense categories are appended to the Pierce Declaration at Exhibits 4 and 5, and receipts for all expenses are available on request.

This action could not have been litigated, much less to successful resolution, without these critical expenditures. *See id.* Class Counsel respectfully request that they be reimbursed in full.

### D. Service fees of $7,500 are warranted.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). They serve to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* at 958-59.

Plaintiffs request modest service awards for each of the three class representatives in the amount of $7,500 each. "[Service] *awards* are fairly typical in class action cases."[13] In the Ninth Circuit, service awards "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."[14] Plaintiffs' request for $7,500 awards is reasonable and in line with awards regularly granted in this judicial district and Circuit.[15]

In this case, $7,500 service awards are well-deserved. All three class representatives took their responsibilities seriously and devoted substantial time to the case, with each class representative spending between 40-50 hours on the case. Align deposed each class representative, and each spent several sessions preparing for these depositions with counsel. Defendants also propounded 168 document requests and between 18 and 20 interrogatories to each class representative. In response, class representatives produced numerous documents, including sensitive medical records. The class representatives provided valuable input throughout the case, reviewed pleadings, and, in consultation with counsel, reviewed and approved of the Settlement. In light of the value of the settlement proceeds and the class representatives' service to the Settlement Class, the requested awards are reasonable. Pierce Decl. ¶¶ 34-36; Casad Decl. ¶¶ 4-10; Bozian Decl. ¶¶ 4-10; Eaton Decl. ¶¶ 4-10.

---

[13] *Rodriguez*, 563 F.3d at 958 (emphasis in original).

[14] *Id.* at 958-59.

[15] *See, e.g., Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *9 (N.D. Cal. Feb. 17, 2016) ($7,500 awards); *NCAA*, 2017 WL 6040065, at *11, *aff'd,* 768 F. App'x 651 (9th Cir. 2019) ($20,000 award); *McDonald v. CP OpCo, LLC*, 2019 WL 2088421, at *8 (N.D. Cal. May 13, 2019) ($10,000 award); *see also Brown v. Tetra Tech, Inc.*, 2025 WL 1400295, at *1 (E.D. Cal. May 14, 2025) ($10,000 awards); *Veridian Credit Union v. Eddie Bauer LLC*, 2019 WL 5536824, at *3 (W.D. Wash. Oct. 25, 2019) ($10,000 award).

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the accompanying proposed order awarding $7.9375 million in attorneys' fees, $2,805,247.67 in costs and expenses, and $7,500 service awards.

DATED: August 1, 2025

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/* *Steve W. Berman*
Steve W. Berman (*pro hac vice*)
Theodore Wojcik (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: tedw@hbsslaw.com

Rio Pierce (SBN 298297)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
Email: riop@hbsslaw.com

*Counsel for Plaintiffs*

'